1  J. KEVIN LILLY, Bar No. 119981
   klilly@littler.com
2  SCOTT M. LIDMAN, Bar No. 199433
   slidman@littler.com
3  ELIZABETH NGUYEN, Bar No. 238571
   enguyen@littler.com
4  SAM SANI, Bar No. 273993
   ssani@littler.com
5  LITTLER MENDELSON, P.C.
   2049 Century Park East
6  5th Floor
   Los Angeles, CA  90067.3107
7  Telephone:  310.553.0308
   Facsimile:   310.553.5583
8
   Attorneys for Defendants
9  ASHLEY FURNITURE INDUSTRIES,
   INC., STONELEDGE FURNITURE, LLC,
10 AND JAGATH DASWATTA

11                  UNITED STATES DISTRICT COURT

12                 CENTRAL DISTRICT OF CALIFORNIA

13 | BOZENA KLUNE,                    | Case No.
14 |            Plaintiff,            | **DEFENDANTS' NOTICE TO**
15 |     v.                           | **FEDERAL COURT OF REMOVAL**
   |                                  | **OF CIVIL ACTION FROM STATE**
16 | ASHLEY FURNITURE                 | **COURT PURSUANT TO 28 U.S.C. §§**
   | INDUSTRIES, INC., a corporation; | **1332, 1441, 1446**
17 | STONELEDGE FURNITURE, LLC,       |
   | a limited liability company; JAG | **CLASS ACTION FAIRNESS ACT**
18 | DASWATTA, an individual; and     |
   | DOES 1 through 50, inclusive,    | Trial Date:  None Set
19 |                                  |
20 |            Defendant.            |

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants Ashley Furniture Industries, Inc. ("Ashley") and Stoneledge Furniture, LLC ("Stoneledge") (Ashley and Stoneledge are collectively referred to herein as "Defendants")[1] hereby remove the above-captioned action from the Los Angeles Superior Court in the State of California to the United States District Court for the Central District of California.

This removal is based on 28 U.S.C. §§ 1441, and 1446.  This Notice is based upon the original jurisdiction of this Court over the parties under 28 U.S.C §1332(d) (Class Action Fairness Act).

## STATEMENT OF JURISDICTION

1.    This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA").  *See* 28 U.S.C. section 1332(d)(2).   In relevant part, CAFA grants district courts original jurisdiction over class actions filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant and where the amount in controversy for the putative class members in the aggregate exceeds the sum or value of $5,000,000, exclusive of interest and costs.  As set forth below, this case meets each CAFA requirement for removal, and is timely and properly removed by the filing of this Notice.  Specifically, this Court has jurisdiction over this case under CAFA because it is a civil class action wherein: (1) the proposed class contains at least 100 members; (2) Defendants are not a state, state official or other governmental entity; (3) there is diversity between at least one class member and Defendants; and (4) the amount in controversy for all class members exceeds $5 million.

---

[1] Plaintiff worked as a Sales Associate for Stoneledge.  Accordingly, the putative class members are Sales Associates employed in Stoneledge's eighteen (18) California locations.  Declaration of Troy Muller ("Muller Decl.") ¶ 9.  Ashley did not employ Plaintiff or any of Sales Associates in California during the relevant time period.

2.      Indeed, a putative class action alleging wage and hour claims virtually identical to the instant class action (entitled *Vaquero v. Ashley Furniture Indus., Inc., et al*, United States District Court, Central District of California Case No. CV 12-8590 PA (MANx) ("*Vaquero*"))[2] filed against these same Defendants was **successfully removed to federal court under CAFA** on October 5, 2012. *See* Complaint in *Vaquero* and Notice of Removal in *Vaquero*, attached as Exhibits A and B to the Declaration of Elizabeth Nguyen ("Nguyen Decl."), filed concurrently herewith.  In fact, Defendants' Removal in the *Vaquero* action withstood a Motion to Remand filed by plaintiff Vaquero.  Specifically, in adjudicating Vaquero's Motion to Remand, the Honorable Percy Anderson of the United States District Court, Central District, (1) applied the more stringent "legal certainty standard" (which is now inapplicable) in analyzing whether Defendants' Removal established the requisite amount in controversy,[3] and (2) still found that "[e]ven considering only [] two [of plaintiff Vaquero's seven causes of action], Defendants have shown to a legal certainty that the amount in controversy exceed $5,000,000." *See* In Chambers-Court Order, dated December 3, 2012, attached as Exhibit C to Nguyen Decl., at pp. 3-5.

3.      This Court thus has supplemental jurisdiction over Plaintiff's remaining individual state law causes of action and The Labor Code Private Attorneys

---

[2] In *Vaquero*, the plaintiff initially alleged seven causes of action based on California Labor Code violations, all of which are also alleged in this case. *See* Nguyen Decl., ¶ 2, Exh. A.  Moreover, *Vaquero* involves a putative class of Stoneledge's Sales Associates employed in California who worked under a pay plan which primarily compensates them only with sales commissions during the period of time from August 24, 2008 through the present, which overlaps with the putative class that Plaintiff Bozena Klune seeks to represent in this case. Nguyen Decl., ¶ 2, Exh. A, ¶ 22; Klune Complaint, ¶ 83.

[3] The Ninth Circuit has since dismissed the "legal certainty" standard in favor of the more lenient "preponderance of the evidence" standard when assessing the amount in controversy. *See Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014) (confirming that in assessing the "amount in controversy," the "'legal certainty' test is no longer good law in light of [the Supreme Court's ruling in *Std. Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345 (2013)], and that the preponderance of the evidence standard applies instead").

General Act of 2004 ("PAGA") cause of action pursuant to 28 U.S.C. Section 1367(a), in that Plaintiff's state law causes of action form part of the same case or controversy under Article III of the United States Constitution as those claims for relief over which the Court has original jurisdiction.

## VENUE

4.     This action was filed in Los Angeles Superior Court.   Venue properly lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. sections 84(a), and 1441(a) and 1446. Venue of this action is also proper pursuant to 28 U.S.C. section 1391, providing that an action may be venued in a judicial district where a substantial part of the event or omissions giving rise to the claim occurred.  *See* 28 U.S.C. § 1391(a).

## PLEADINGS, PROCESS AND ORDERS

5.     On April 21, 2014, Plaintiff Bozena Klune ("Plaintiff") filed a class action complaint in the Superior Court for the County of Los Angeles entitled *Bozena Klune, an individual, Plaintiff, v. Ashley Furniture Industries, Inc., a corporation; Stoneledge Furniture, LLC, a Limited Liability Corporation; Jag Daswatta, an individual; and DOES 1 through 50, inclusive*, Los Angeles Superior Court Case No. BC543294 (herein referred to as the "Complaint").  Plaintiff purports to represent herself and "[a]ll current, former, and future California based salespersons employed by the Employer Defendants in its California retail furniture stores at any time within the applicable statute of limitations period, going back at least four years, and from the filing of the Complaint to the time of trial of this matter." Complaint, ¶¶ 75, 83.

6.     Plaintiff asserts the following causes of action in her Complaint:[4]

---

[4] Defendants note that the titles and numbering of Plaintiff's causes of action on the caption-page of the Complaint do not correspond with the same information found in the sections of the Complaint that discuss the specific causes of action.  For purposes of the instant Removal, Defendants rely on the titles and numbering of Plaintiff's causes of action found in the sections of the Complaint that discuss these claims, not the caption page.

LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

(1) Violations of Labor Code section 96(d), 98.6, 232, 232.5, 1102.5(c) (Individual); (2) Wrongful Termination in Violation of Public Policy or Statute (Individual); (3) Harassment Based on Age, Sex, National Origin/Ancestry, Medical Conditions, and Actual and Perceived Physical Disabilities (Government Code section 12940(j)) (Individual); (4) Discrimination and Retaliation Based on Age, Sex, Race, National Origin/Ancestry, Medical Conditions, and Actual and Perceived Physical and mental Disabilities (Government Code section 12940(a), 12940(h)) (Individual); (5) Failure to Accommodate (Government Code section 12940(m)) (Individual); (6) Failure to Engage in the Interactive Process (Government Code section 12940(n)) (Individual); (7) Failure to Prevent Discrimination and Harassment (Government Code section12940(k)) (Individual); (8) Breach of Contract (Individual); (9) Estoppel (Individual); (10) Negligent Misrepresentation (Individual); (11) Assault and Battery (Individual); (12) Defamation (Individual); (13) Failure to Pay Statutorily Mandated Overtime Wages (Individual/Class); (14) Failure to Provide Adequate Rest Periods and/or Proper Compensation in Lieu Thereof (Individual/Class); (15) Failure to Provide Adequate Meal Periods and/or Proper Compensation in Lieu Thereof (Individual/Class); (16) Failure to Indemnify and Reimburse Expenditures and/or Losses (Individual/Class); (17) Waiting Time Penalties (Individual/Class); (18) Failure to Keep Accurate Payroll Records (Individual/Class); (19) Failure to Furnish Accurate Itemized Wage Statements (Individual/Class); (20) Unlawful, Unfair, and Fraudulent Activity (Business and Professions Code section 17200) (Representative/Class) ("UCL" claim); (21) California Labor Code Private Attorney General Act ("PAGA") (Individual and Representative).  A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

       7.     Defendants' agent for service of process was served on April 23, 2014 with the Complaint, together with the Summons and other pleadings.  True and correct copies of the Summons and accompanying documents are attached collectively as **Exhibit B**: Summons, Civil Case Cover Sheet and Civil Case Cover Sheet

LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

Addendum and Statement of Location, Complaint, Superior Court of California, County of Los Angeles Notice of Case Assignment – Class Action Cases, Superior Court of California, County of Los Angeles Alternative Dispute Resolution (ADR) Information Package, and Voluntary Efficient Litigation Stipulations.

8.     On May 13, 2014, Defendants were served with a Notice of Minute Order and Initial Status Conference Order, a true and correct copy of which is attached hereto as **Exhibit C.**

9.     On May 22, 2014, Defendants and individual Defendant Jagath Daswatta filed an Answer to the Complaint, a true and correct copy of which is attached hereto as **Exhibit D**.

10.     On May 22, 2014, Defendants filed a Notice of Related Case, a true and correct copy of which is attached hereto as **Exhibit E**.

11.     To Defendants' knowledge, no further process, pleadings, or orders related to this case have been filed in Los Angeles County Superior Court.

## ALL NAMED DEFENDANTS CONSENT TO AND JOIN THE INSTANT REMOVAL

12.     Defendants hereby join in and consent to this Notice of Removal.

13.     The other named defendant who has been served with the Complaint is Jagath Daswatta ("Daswatta"), an individual.  Daswatta hereby joins in and consents to the removal of this action to federal court.

14.     Since the Doe defendants have not yet been served, they need not join or consent to Defendants' notice of removal.  *Salveson v. Western States Bankcard Ass'n*, 731 F.2d 1426, 1429 (9th Cir. 1984) *superseded in part on other grounds by statute as stated in Ethridge v. Harbor House Restaurant*, 861 F.2d 1389 (9th Cir. 1988) (named defendants not yet served in state court action need not join the notice of removal).  Furthermore, CAFA permits any defendant to unilaterally remove the action if requirements of CAFA for removal are met, as they are here.  *See* 28 U.S.C. § 1453(b).

**TIMELINESS OF REMOVAL**

15.   An action may be removed from state court by filing a notice of removal, together with a copy of all process, pleadings, and orders served on the defendant, within thirty days of defendant receiving the initial pleading.   *See* 28 U.S.C. § 1446(a), (b).   Removal of this action is timely because this Notice has been filed within thirty days of April 23, 2014, the date of service of the Summons and Complaint.   *See* 28 U.S.C. § 1446(b); *see also* **Exhibit B**.   As such, this Notice of Removal is timely.

**JURISDICTION PURSUANT TO CAFA**

16.   This Court has jurisdiction over this case under the CAFA.   CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, and where the matter in controversy exceeds $5,000,000, exclusive of interest and costs.   *See* 28 U.S.C. § 1332(d).   CAFA authorizes removal of such actions in accordance with 28 U.S.C. Section 1446.   As set forth below, this case meets each CAFA requirement for removal, and is timely and properly removed by the filing of this notice.

17.   This Court has original jurisdiction over this action pursuant to CAFA because: (1) the defendants are not States, State officials, or other governmental entities; (2) at least one member (if not all) of Plaintiff's putative class is a citizen of a state different any defendant; (3) it is a class action filed on behalf of more than 100 putative class members (*See* Complaint, ¶ 73); and (4) the amount in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.   *See* 28 U.S.C. § 1332(d).

**A.   Defendants Are Not A Governmental Entity.**

18.   None of the Defendants are a State, State official or any other governmental entity.

**B.   CAFA Diversity of Citizenship Exists Because Plaintiff Is A**

LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

**California Citizen and Defendants Stoneledge And Ashley Are Citizens of Wisconsin.**

19.  CAFA diversity jurisdiction exists if "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. §1332(d)(2)(A), 1453.

20.  **Plaintiff is a citizen of California.**  For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled.  *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088 (9th Cir. 1983); *see also LeBlanc v. Cleveland*, 248 F.3d 95, 100 (2d Cir. 2001) (citizenship determined at the time the lawsuit is filed); *see also Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 10 (1st Cir. 1991).  A person's domicile is the place he or she resides with the intention to remain, or to which he or she intends to return.  *See Kanter v. Warner–Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

21.  Plaintiff was at the time of the filing of this action, and currently is, a resident and citizen of the State of California.  Complaint, ¶ 19 (Plaintiff alleges she "is now and/or at all times relevant within the applicable statute(s) of limitations was a resident of the City of Lancaster, County of San [sic] Los Angeles, State of California"); *see Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (residency can create a rebuttable presumption of domicile supporting diversity of citizenship); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, *22 (E.D. Cal. 2008) (place of residence provides "prima facie" case of domicile).

22.  **Defendant Ashley is a citizen of Wisconsin.**  For purposes of 28 U.S.C. Section 1332, a corporation is deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business. *See*

LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

28 U.S.C. § 1332(c)(1). As clarified by the United States Supreme Court in *Hertz Corp. v. Friend*, 559 U.S. 77, 130 S. Ct. 1181; 175 L. Ed. 2d 1029 (2010), "the phrase 'principal place of business' in § 1332(c)(1) refers to the place where a corporation's high level officers direct, control, and coordinate the corporation's activities, *i.e.*, its 'nerve center,' which will typically be found at its corporate headquarters."

23. At the time the action was commenced, Defendant Ashley was, and still is incorporated under the laws of the State of Wisconsin and is therefore a citizen of the State of Wisconsin. *See* 28 U.S.C. § 1332(c)(1); Muller Decl., ¶¶ 5-6.

24. Ashley has its headquarters at One Ashley Way, Arcadia, Wisconsin. Muller Decl., ¶ 5.

25. Ashley's operations management, human resources, finance, information technology, distribution operations, legal and sales and marketing are managed from the Arcadia headquarters. Muller Decl., ¶¶ 5-6.

26. Most of the corporate-wide decisions relating to Ashley are made from Arcadia. Muller Decl., ¶ 6. The types of corporate decisions made in Arcadia include: decisions regarding corporate policy; decisions regarding the purchase, financing and leasing of real properties; legal decisions; significant decisions regarding contracts and other purchasing; decisions regarding Ashley's press releases and public affairs; decisions regarding banking relationships and cash management accounts; decisions regarding payroll; decisions regarding revenue management; decisions regarding safety and security policy-making; and policy decisions regarding advertising and marketing. *Id.* Ashley's "nerve center" and, thus, its principal place of business, is located in Arcadia, Wisconsin. *See Hertz*, 130 S. Ct. at 1192.

27. Accordingly, Defendant Ashley is a citizen of the State of Wisconsin and diversity of citizenship exists as between Ashley and Plaintiff.

28. **Defendant Stoneledge is a citizen of Wisconsin.** "[T]he citizenship of an LLC for purposes of the diversity jurisdiction is the citizenship of its members." *Cosgrove v. Bartolotta*, 150 F3d 729, 731 (7th Cir. 1998); *GMAC Comm'l*

*Credit LLC v. Dillard Dept. Stores, Inc.*, 357 F3d 827, 829 (8th Cir. 2004); *Johnson v. Columbia Properties Anchorage, LP*, 437 F3d 894, 899 (9th Cir. 2006).

29.     At the time the action was commenced, Defendant Stoneledge was, and still is, a Wisconsin limited liability company with its principle place of business and headquarters located in Arcadia, Wisconsin.  Stoneledge Furniture LLC consists of one member - Ashley Furniture Industries, Inc. - which was at all times a citizen of the State of Wisconsin. Muller Decl., ¶¶ 5-8.

30.     Most of the corporate-wide decisions relating to Stoneledge are made from Arcadia. Muller Decl., ¶ 8.

31.     Because Defendant Stoneledge has one member – Ashley – and that member is a citizen of the State of Wisconsin, Stoneledge is deemed a citizen of Wisconsin and diversity of citizenship exists as between Stoneledge and Plaintiff.

32.     This action satisfies the CAFA diversity requirements because Plaintiff is a citizen of the State of California, Defendant Ashley is a Wisconsin corporation and Defendant Stoneledge is a Wisconsin LLC.  Therefore, the minimal diversity requirement of 28 U.S.C. § 1332(d)(2)(A) is satisfied.

**C.     <u>Plaintiff Alleges Claims On Behalf Of More Than 100 Putative Class Members.</u>**

33.     The CAFA provides that "the number of members of all proposed plaintiff classes in the aggregate [not be] less than 100."  28 U.S.C. § 1332(d)(5)(B). CAFA defines "class members" as those "persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action." 28 U.S.C. § 1332(d)(1)(D).

34.     Plaintiff alleges that her lawsuit is brought on a class-wide basis, in which she seeks to represent "[a]ll current, former, and future California based salespersons employed by the Employer Defendants in its California retail furniture stores at any time within the applicable statute of limitations period, going back at least four years, and from the filing of the Complaint to the time of trial of this

LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

matter." Complaint, ¶¶ 75, 83.

35.    Plaintiff alleges that "the class size to be more than 100 current and/or former employees employed by the Employer Defendants." Complaint, ¶ 73. In fact, Stoneledge employed approximately 935 California Sales Associates during the four-year period of time before the filing of this action from April 21, 2010 through April 18, 2014 ("Putative Class Members"). *See* Muller Decl., ¶ 13.  CAFA's numerosity requirement is thus satisfied.  *See* 28 U.S.C. § 1332(d)(5)(B).

### D.    The Amount In Controversy Exceeds $5 Million.

36.    Defendants deny the validity and merit of Plaintiff's claims, the legal theories upon which they are purportedly based, and the claims for monetary and other relief that flow from them.  Nevertheless, Plaintiff's claims for monetary relief as alleged in the Complaint place more than $5,000,000 in controversy, exceeding the CAFA jurisdictional minimum.

37.    The CAFA requires the "matter in controversy" to exceed "the sum or value of $5,000,000 exclusive of interest and costs." 28 U.S.C. § 1332(d)(2).  "The claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds" this amount.  28 U.S.C. § 1332(d)(6).  "In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. Mar. 25, 2002).

38.    A defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum.  *See Rodriguez v. AT&T Mobility Services, LLC*, 728 F.3d 975, 981 (9th Cir. 2013).  Plaintiff's attempt to evade federal jurisdiction by alleging the "aggregate amount in controversy, including attorneys' fees, for all Class Members is below the $5,000,000 threshold for federal jurisdiction under the Class Action Fairness Act" falls flat.  *See* Complaint, ¶ 25. In fact, the

LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

United States Supreme Court decision in *Std. Fire Ins. Co. v. Knowles* established that class action plaintiffs cannot avoid federal jurisdiction under CAFA merely by stipulating that total class damages will not exceed the $5,000,000.00 threshold. *Std. Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1347-49 (2013) (holding that "a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified" and therefore because the plaintiff's "precertification stipulation does not bind anyone but himself, [the plaintiff] has not reduced the value of the putative class members' claims").

39.    After *Std. Fire Ins. Co.*, the Ninth Circuit Court of Appeals affirmed the "preponderance of the evidence" standard applies even if Plaintiff alleges the amount in controversy is less than $5 million.  *See Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014) (confirming that the "'legal certainty' test is no longer good law in light of *Standard Fire*, and that the preponderance of the evidence standard applies instead"); *see also Rodriguez v. AT&T Mobility Services, LLC*, 728 F.3d 975, 981 (9th Cir. 2013) (confirming "preponderance of the evidence" standard applies even if Plaintiff alleges the amount in controversy is less than $5 million).

40.    Here, Plaintiff asserts claims for herself and the putative class members for alleged unpaid overtime wages, missed rest periods, missed meal periods, inaccurate wage statements, waiting time penalties, and attorneys' fees based on the allegations that Defendants violated various wage and hour laws.  The amount in controversy for each of these claims is discussed below.

### 1.    Unpaid Overtime Wages.

41.    Plaintiff's thirteenth cause of action alleges a violation of California Labor Code sections 510 (Unpaid Overtime).

42.    Under the preponderance of evidence test, Defendants may estimate violation rates based on the allegations in the Complaint.  *See Lippold v. Godiva Chocolatier, Inc.*, 2010 U.S. Dist. LEXIS 47144 (N.D. Cal., Apr. 15, 2010) (permitting assumption that plaintiffs worked "13 hours a day every day" based on

LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

their allegation that employees "regularly and/or consistently" worked in excess of 12 hours a day); *Wilson v. Best Buy Company, Inc.*, 2011 U.S. Dist. LEXIS 14400, at *5-6 (E.D. Cal., Feb. 8, 2011) (denying motion to remand and finding that defendant's estimate of one hour of overtime per week was supported by plaintiff's allegation of working more than eight hours in a day and in excess of forty hours in a week); *Lyon v. W. W. Grainger, Inc.*, 2010 U.S. Dist. LEXIS 50979, at *10 (N.D. Cal., Apr. 29, 2010) (assuming 2.5 hours of overtime based on allegations that class members "regularly" worked more than 40 hours per week), petition for interlocutory appeal denied; and *Gardner v. GC Services, LP*, 2010 U.S. Dist. LEXIS 67912, at *9 (S.D. Cal., July 6, 2010) (accepting assumption of 30 minutes of overtime per day).

43.     In the Complaint, Plaintiff alleges that "[i]n one or more workweeks during the relevant statute of limitations period, Plaintiff and the Class worked more than forty (40) hours during the workweek and eight (8) hours per day, but were not properly compensated . . . at **one and one half or two times the regular rate of pay, or at all for overtime**[.]" Complaint, ¶ 221 (emphasis added).  In support of the unpaid overtime wages claim, Plaintiff alleges that "the Employer Defendants[5] in the past, and/or on a continuing basis violated wage and hours laws, including but not limited to **regularly engaging** in . . . [f]ailing to pay . . . wages for all hours worked[.]" Complaint, ¶¶ 70, 220 (emphasis added).  Plaintiff's description of her alleged statutory damages asserts that as "a direct result of the Employer Defendants' wrongful conduct . . . Plaintiff and . . . the Class Members are owed . . . (i) overtime wages, (ii) double time wages[.]" Complaint, ¶¶ 81-82, 220.

44.     Plaintiff asserts the relevant time period covering the unpaid overtime wage claims at issue in this case is from April 21, 2010 (for the putative class) through the date of trial.  Complaint, ¶ 84.

45.     During the time period from April 21, 2010 through March 29,

---

[5] Plaintiff defines "Employer Defendants" to include Ashley and Stoneledge. Complaint, ¶ 4.

LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

2014, the Putative Class Members were paid pursuant to a commission plan and were classified by Stoneledge as exempt from overtime under the commission sales exemption under applicable law.   Under the commission plan, the Putative Class Members were paid by commissions – with certain exceptions, including the time Putative Class Members participated in Orientation and some other training; provided, however, that if a Sales Associate did not earn enough commission to trigger payment in a given week under the relevant commission agreement, that Sales Associate was at all times paid on average a draw on commissions that was greater than $12.00 for each hour worked in a given week. [6] Muller Decl., ¶ 14.   Because the Putative Class Members were properly classified as exempt and not paid overtime wages during this time period, Plaintiff's unpaid overtime wages claim effectively places each and every overtime hour worked in controversy.

46.   During the time period beginning March 30, 2014 through April 12, 2014,[7] the putative Class Members were paid an hourly wage of $10.00 for each hour, plus, among other things, overtime and sales incentives. Muller Decl., ¶ 15.

47.   The Putative Class Members employed by Defendant Stoneledge during the time period between April 21, 2010 and March 29, 2014 collectively worked approximately 45,579 workweeks. Muller Decl., ¶ 18.   As discussed above, Defendants properly classified the Putative Class Members as exempt from overtime wages during this time period.   As such, Plaintiff's unpaid overtime wage claim effectively places each and every overtime time worked at issue.   During this time

[6]  As commissioned employees, the putative class members' actual effective rate of pay would be adjusted based on the amount of commissions earned.  However, for purposes of removal, Defendants have elected to use the extremely conservative estimate of $12.01 per hour as the operative hourly rate of pay.

[7]  Although Defendants have identified 935 putative class members for the Class Period from April 21, 2010 through **April 18, 2014**, Defendants have, for purposes of this Removal, reviewed electronic timekeeping data and employment/payroll records for the time period from April 21, 2010 through **April 12, 2014**. *See, e.g.,* Muller Decl., ¶¶ 13, 18.  Accordingly, the amount in controversy would be even higher if Defendants' analysis included a review of the same data and records up to the time of Defendants' filing the instant Removal on May 23, 2014.

LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

13.

period, the Putative Class Members collectively worked approximately 370,169.27 hours in excess of 8 hours in a day and approximately 391.34 hours in excess of 12 hours in a day. *Id.*   Defendants deny the validity and merit of the putative class members' overtime claims.   However, for purposes of removal only, based upon a review of the available data and applying an hourly rate of $12.01, overtime rate of $6.005 ($12.01 x .5), and double overtime rate of $12.01 ($12.01 x 1), Defendants calculate that the amount in controversy for this claim is **$2,227,566.46** [(370,169.27 hours in excess of 8 in one day x .5 x $12.01) + (391.34 hours in excess of 12 in one day x 1 x $12.01) = $2,227,566.46].   By relying on the actual data in calculating the amount in controversy, Defendants have easily met the lower preponderance of the evidence standard.

48.   Notably, Defendants have applied the half-time rate for calculating overtime wages for purposes of the instant removal ($12.01 x .5), not the one and a half time rate Plaintiff places at issue in the Complaint.   Accordingly, the amount in controversy of **$2,227,566.46** for the unpaid overtime wage claims is conservatively at least 1/3 of the total amount Plaintiff places in controversy because the half time rate is 1/3 of the one and one half time rate Plaintiff alleges should apply.   Nevertheless, Defendants apply the lower half time rate for purposes of calculating the overtime claim here because this is the methodology approved by the Court in *Vaquero* in its denial of the motion for remand.

## 2.   Missed Rest Breaks.

49.   Plaintiff's fourteenth cause of action alleges violations of California Labor Code section 226.7 (Unpaid Rest Period Premiums).

50.   Under the preponderance of evidence test, Defendants may estimate violation rates based on the allegations in the Complaint.   Here, Plaintiff's allegations on behalf of herself and the Putative Class Members include that the Defendants "repeatedly," "knowing[ly]," and "willful[ly]" violated California wage and hours laws, as a result of Defendants' "ongoing wrongful scheme, policy and/or

LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

practice." *See* Complaint, *passim*; s*ee also Jasso v. Money Mart Express, Inc. et al.*, 2012 U.S. Dist. LEXIS 27215, at *12-19 (N.D. Cal., Mar. 1, 2012) (denying the plaintiff's motion to remand and finding that even under the preponderance of the evidence standard the defendant demonstrated the amount in controversy to a legal certainty using once per week violation rates and that such weekly violation rates were properly applied given the complaint's allegations of violations occurring "at all material times," the allegation that "Defendants engaged in a uniform policy and systematic scheme of wage abuse against their hourly-paid or non-exempt employees," and that this "scheme involved, *inter alia*, failing to pay them for all hours worked, missed meal periods and rest breaks in violation of California law").

51.     In addition to *Jasso*, courts have held that descriptive allegations of how often violations occur may be relied on to support a frequency rate of at least once per week. *See Ray v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 53155, at *16-17  (C.D. Cal., May 9, 2011) (denying motion to remand premised upon finding that defendant's estimate of one hour of unpaid overtime compensation per week for each class member was "reasonable and conservative" based on plaintiff's allegation of "consistent" overtime work); *Witkowsky v. Home Depot USA, Inc.*, 2009 U.S. Dist. LEXIS 109320, at *5-6 (C.D. Cal., Nov. 5, 2009) (finding that plaintiff's claim that defendant "systematically" overcharged for floor installation constituted an allegation that the defendant overcharged the customer every time a transaction occurred); *Alvarez v. Ltd. Express*, LLC, 2007 U.S. Dist. LEXIS 58148, at *8-9 (S.D. Cal., Aug. 8, 2007) (finding that despite plaintiff's failure to specify a frequency rate, she had "effectively" alleged that defendant did not allow any of its employees to take meal and rest periods and accepted a 100% violation rate); *Muniz v. Pilot Travel Centers, LLC*, 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal., Apr. 30, 2007) (finding 100% violation rate based on plaintiff's choice not to include "fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100% used by defendant in its calculations"); *Navarro v. Servisair, LLC*, 2008 U.S.

LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

Dist. LEXIS 62513 (N.D. Cal. Aug. 14, 2008) (approving use of a 100% violation rate where plaintiffs alleged that they "regularly" worked through their meal periods);.

52.     Here, Plaintiff alleges that the "Employer Defendants . . . failed to authorize and permit net 10 minute, off-duty rest periods" and therefore "they are liable . . . for at least one (1) additional hour of pay . . . for each workday that the full off-duty rest periods were not provided . . ." Complaint, ¶ 232.  Plaintiff alleges that "the Employer Defendants in the past, and/or on a continuing basis violated wage and hours laws, including but not limited to **regularly engaging** in . . . Failing to pay premium pay for [] rest break violations . . . Failing to authorize and permit timely, paid rest periods . . . Failing to authorize and permit 'duty free' rest periods[.]" Complaint, ¶¶ 70, 228 (emphasis added).

53.     Plaintiff further alleges that the "Employer Defendants . . . [a]pply[] improper meal and rest break policies and practices, and thereby repeatedly fail[] to provide meal and rest breaks as required by California law[.]" Complaint, ¶¶ 76-77, 228.  Plaintiff's description of her alleged statutory damages asserts that as "a direct result of the Employer Defendants' wrongful conduct, Plaintiff and . . . the Class Members have been deprived of, and continue to be deprived of, their wages" and "are owed . . . premium pay for failing to provide proper meal and rest break periods[.]"  Complaint, ¶¶ 81-82, 228.

54.     Accordingly, Plaintiff's allegations reasonably support a frequency rate of at least one missed rest period per week for purposes of calculating the amount in controversy.  *See Jasso*, 2012 U.S. Dist. LEXIS 27215.

55.     Like Plaintiff's unpaid overtime wage claim, Plaintiff asserts the relevant time period covering the missed rest period claims is from April 21, 2010 (for the putative class) through the date of trial.   Complaint, ¶ 81-82, 89, 228, 273, 278.

56.     The Putative Class Members employed by Stoneledge during the time period beginning April 21, 2010 through March 29, 2014 collectively worked approximately 45,579 workweeks and were paid on average a draw on commissions

LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

that was greater than $12.00 for each hour worked in a given week. Muller Decl., ¶ 18.  The putative Class Members employed by Stoneledge during the subsequent time period beginning March 30, 2014 through April 12, 2014 collectively worked approximately 768 workweeks and were paid an hourly wage of $10.00, plus, among other things, overtime and sales incentives. Muller Decl., ¶¶ 15, 18.  Defendants deny the validity and merit of the putative class members' rest break claims.  However, for purposes of removal only, applying one missed rest break per workweek and an hourly rate of (1) $12.01 for the time period April 21, 2010 through March 29, 2014 and (2) $10.00 for the time period from March 30, 2014 through April 12, 2014, the amount in controversy for this claim is **$555,083.79** [($12.01 (one hour for a missed rest break) x 45,579 workweeks) + ($10.00 (one hour for a missed rest break) x 768 workweeks)].

57.    The amount could be even higher if Plaintiff and the Putative Class Members seek recovery for more than one missed rest per workweek.  Indeed, by alleging that the the Putative Class Members were "regularly" failed to permit timely paid rest breaks, Plaintiff places four rest breaks per employee per workweek at issue.  As such, the amount in controversy on Plaintiff's rest period claim ranges between **$555,083.79** (applying one missed rest break per workweek per employee) and **$2,220,335.10** (applying four missed rest breaks per workweek per employee ($555,083.79 x 4 = $2,220,335.10).

### 3.    Missed Meal Periods.

58.    Plaintiff's fifteenth cause of action alleges violation of California Labor Code sections 226.7 and 512 (Unpaid Meal Period Premium).  Plaintiff alleges that "Employer Defendants . . . failed to regularly provide proper meal period . . . to Plaintiff and other California workers similarly situated" and therefore Defendants "are liable to Plaintiff and other California workers similarly situated for one hour of additional pay at the regular rate of compensation for each workday that the full off-duty meal periods were not provided[.]" *See* Complaint, ¶¶ 236-238. In support of

LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

Plaintiff's missed meal period claims, she  alleges that

> the Employer Defendants in the past, and/or on a continuing basis violated wage and hours laws, including but not limited to **regularly engaging** in . . . Failing to provide first periods, and/or timely first meal periods . . . Failing to provide required second meal periods . . . Failing to obtain informed waivers of the right to premium pay for meal periods missed after the 10th hours and before the 12th hours of work . . . Failing to pay premium pay for meal period [] violations . . . Failing to provide "duty free" meal periods.

Complaint, ¶¶ 70, 233 (emphasis added).

59.    Plaintiff further alleges that the "Employer Defendants . . . [a]pply[] improper meal and rest break policies and practices, and thereby repeatedly fail[] to provide meal and rest breaks as required by California law[.]" Complaint, ¶¶ 76-77, 233.  Plaintiff's description of her alleged statutory damages asserts that as "a direct result of the Employer Defendants' wrongful conduct, Plaintiff and . . . the Class Members have been deprived of, and continue to be deprived of, their wages" and "are owed . . . premium pay for failing to provide proper meal and rest break periods[.]" *See* Complaint, ¶¶ 81-82.  Accordingly, Plaintiff's allegations reasonably support a frequency rate of at least one missed meal per week for purposes of calculating the amount in controversy.  *See Jasso*, 2012 U.S. Dist. LEXIS 27215 and Paragraphs 36-37, above (collecting cases).

60.    Like Plaintiff's missed rest period claim, she alleges the relevant time period on her rest period claims is April 21, 2010 to the present.  Complaint, ¶¶ 87-88, 273, 278.

61.    As discussed above, the putative Class Members employed by Stoneledge (1) during the time period beginning April 21, 2010 through March 29, 2014 collectively worked approximately 45,579 workweeks and were paid on average a draw on commissions that was greater than $12.00 for each hour worked in a given week, and (2) during the subsequent time period beginning March 30, 2014 through April 12, 2014 collectively worked approximately 768 workweeks and were paid an

LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

hourly wage of $10.00, plus, among other things, overtime and sales incentives. Defendants deny the validity and merit of the putative class members' meal period claims.  However, for purposes of removal only, applying one missed meal break per workweek and an hourly rate of (1) $12.01 for the time period April 21, 2010 through March 29, 2014 and (2) $10.00 for the time period from March 30, 2014 through April 12, 2014, the amount in controversy for this claim is **$555,083.79** [($12.01 (one hour for a missed meal period) x 45,579 workweeks) + ($10.00 (one hour for a missed rest break) x 768 workweeks)].

62.    Like Plaintiff's missed rest period claim, the amount could be even higher if Plaintiff and the Putative Class seek to recover for more than one missed meal period per workweek.

### 4.    Waiting Time Penalties.

63.    Plaintiff's seventeenth cause of action alleges violation of Labor Code sections 201 - 203 (Final Wages Not Timely Paid).  Plaintiff alleges that "[a]t the time of her termination, the Employer Defendants . . . failed to pay Plaintiff for all wages[.]" Complaint, ¶ 251.  Plaintiff further alleges that Defendants "willfully failed and refused, and continue[] to willfully fail and refuse, timely to pay compensation and wages . . . upon termination of employment . . . [and] to pay final compensation and wages upon termination or resignation to other similarly situated employees . . . during the relevant statutory period." Complaint, ¶¶ 253-255.  In support of the fifteenth cause of action, Plaintiff alleges that Defendants failed to pay Plaintiff and the putative class members "full compensation owed in prompt and timely manner upon termination of employment[.]" Complaint, ¶¶ 77, 250.  Plaintiff alleges that "Defendants have willfully failed and refused, and continue to fail and refuse to timely pay wage due . . . to Plaintiff and . . . former Class Members at the conclusion of their employment with the Employer Defendants.  Accordingly, these former employees are entitled to statutory penalties[.]"  *See* Complaint, ¶¶ 81-82, 250.

64.    Plaintiff seeks to certify a waiting time penalty subclass going back

LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

19.

four years prior the filing of the Complaint.  Complaint, ¶ 85 ("[a]ll current, former, and future California based salespersons employed by the Employer Defendants in its California retail furniture stores at any time within the applicable statute of limitations period, going back at least four years, and from the filing of the Complaint to the time of trial of this matter who did not timely receive all wages upon leaving employment with the Employer Defendants.")  However, the statute of limitations on waiting time penalty claim is three years. *See Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389 (2010).  As such, Defendants calculation of the amount in controversy on this claim is based on a three year limitation period, not the longer four year period Plaintiff places at issue.

65.     While Defendants deny the validity and merit of the Putative Class Members' waiting time penalties claims, for purposes of removal only, Defendants determine the amount in controversy by applying the maximum penalty authorized under Labor Code section 203 of 30 days' pay.  Approximately 413 of the Putative Class Members separated their employment during the time period beginning April 21, 2011 and up to and including March 29, 2014, and five of them separated their employment during the time period from March 30, 2014 through April 12, 2014. Muller Decl., ¶ 19.  Applying an hourly rate of (1) $12.01 for the time period April 21, 2010 through March 29, 2014 and (2) $10.00 for the time period from March 30, 2014 through April 12, 2014, the amount in controversy for this claim is **$1,202,431.20** [(30 days x 8 hours per day x $12.01 x 413) + (30 days x 8 hours per day x $10.00 x 5) = 1,202,431.20).

### 5.     Alleged Wage Statement Violations.

66.     Plaintiff's nineteenth cause of action alleges violation of Labor Code section 226(a) (Non-Compliant Wage Statements).  Plaintiff alleges that the "Employer Defendants [] knowingly and intentionally failed to furnish, and/or continue to knowingly and intentionally fail to furnish, Plaintiff and/or other California workers similarly situated with accurate and/or timely, itemized

LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

statements[.]" Complaint, ¶ 266.  In paragraphs incorporated by reference into the nineteenth cause of action, Plaintiff alleges that "the Employer Defendants in the past, and/or on a continuing basis violated wage and hours laws, including but not limited to **regularly engaging** in the following conduct: . . . Violating Cal. Lab. Code § 226's pay-stub requirements[.]" Complaint, ¶¶ 70, 263 (emphasis added).  Plaintiff further alleges that the "Employer Defendants, have and continue to violate and maintain illegal work policies and/or practices . . . that uniformly affect the Class, including . . . Failing to provide accurate itemized wage statements as required by California law." Complaint, ¶¶ 76, 263.

67.   Plaintiff's description of her alleged statutory damages asserts that as "a direct result of the Employer Defendants' wrongful conduct, Plaintiff and . . . the Class Members have been deprived of, and continue to be deprived of, their wages" and "are owed . . . damages for failure to provide accurate itemized wage statements[.]" Complaint, ¶¶ 81-82, 263.

68.   Plaintiff seeks to certify a wage statement penalty subclass going back four years prior the filing of the Complaint.  Complaint, ¶ 95 (All current, former, and future California based salespersons employed by the Employer Defendants in its California retail furniture stores at any time within the applicable statute of limitations period, going back at least four years, and from the filing of the Complaint to the time of trial of this matter who did not receive proper itemized wage statements as required by Cal. Lab. Code § 226(a)).

69.   However, the statute of limitations for this claim is one year.  *See Singer v. Becton, Dickinson and Co.*, 2008 U.S. Dist. LEXIS 56326, *11-14 (S.D. Cal. July 23, 2008).  As such, Defendants apply a one year limitations period on this claim for purposes evaluating the amount in controversy for removal.

70.   Of the approximate 935 Putative Class Members, approximately 611 of them received wage statements from Stoneledge throughout the approximate one year period between April 21, 2013 and April 12, 2014.  Muller Decl., ¶ 20.

21.

Because the Putative Class Members were paid on a weekly basis during this time period, approximately 19,168 wage statements are at issue.  Muller Decl., ¶ 20.

71.    Labor Code section 226(c) provides for penalties in the amount of "fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."

72.    Defendants deny the validity and merit of the putative class members' alleged wage statement violations.  However, for purposes of removal and based upon a review of the available data, Defendants calculate as follows: (1) during the time period between April 21, 2013 and April 12, 2014, 611 Putative Class Members received a wage statement; (2) of those 611 Putative Class Members, 255 each received at least 41 wage statements during the relevant time period, which means they would each be entitled to the maximum aggregate penalty amount of $4,000.00 per person (*e.g.* 1 x $50.00 (penalty for initial violation)) + (40 x $100.00 (penalty for subsequent violation) = $4,050); (3) of the remaining 356 putative Class Members, Stoneledge issued a total of 356 initial wage statements and 6,057 subsequent wage statements.  Accordingly, the total amount in controversy for this claim is **$1,643,500.00** [(255 x $4,000.00 (maximum aggregate penalty)) + (356 x $50.00 (penalty for initial violation)) + (6,057 x $100.00 (penalty for subsequent violation)).  Muller Decl., ¶ 20.

### 6.    Attorneys' Fees.

73.    Plaintiff also seeks an award of attorneys' fees and costs.  *See* Complaint, ¶¶ 82, 122, 141, 149, 156, 163, 173, 227, 242, 249, 255, 261, 268, 291, and Prayer for Relief, ¶¶ 5, 21.  In determining whether a complaint meets the amount in controversy requirement, a court should also consider attorneys' fees. *See, e.g.*, *Bell v. Preferred Life*, 320 U.S. 238 (1943); *Goldberg v. C.P.C. Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982) (attorneys' fees may be taken into account to determine

LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

jurisdictional amounts).  "[I]t is well established that the Ninth Circuit 'has established 25% of the common fund as a benchmark award for attorney fees.'" *Jasso*, 2012 U.S. Dist. LEXIS 27215, at *20-21 (confirming that "Attorneys' fees are properly included in the amount in controversy for purposes of evaluating diversity jurisdiction") (collecting cases).  The amount in controversy for Plaintiff's claim for attorneys' fees is therefore **$1,545,916.31** [$6,183,665.24 (total amount in controversy on the unpaid overtime, missed meal periods, missed rest periods, waiting time penalties, and wage statement claims) x .25].

### 7.    Total Amount in Controversy.

74.    Based on the foregoing, the total amount in controversy for the Class on their claims for unpaid overtime, double overtime, meal and rest breaks, waiting time penalties, and wage statement violations, plus the claim for attorneys' fees, is no less than **$7,729,581.55**, as summarized below:

| Plaintiff's Claim | Amount In Controversy |
|---|---|
| Unpaid Overtime and Double Overtime | **$2,227,566.46** |
| Unpaid Rest Break Premium (applies 1 violation per workweek) | **$555,083.79**[8] |
| Unpaid Meal Period Premium (applies 1 violation per workweek) | **$555,083.79** |
| Waiting Time Penalties | **$1,202,431.20** |
| Wage Statement Violation | **$1,643,500.00** |
| **Amount In Controversy Subtotal** | **$6,183,665.24** |
| Attorneys' Fees (applies 25% of total recovery) | **$1,545,916.31** |
| **Amount In Controversy Grand Total** | **$7,729,581.55** |

75.    As discussed above, the methodology applied here is the same

---

[8] The minimum amount in controversy on this claim is **555,083.79.**  Based on Plaintiff's allegations that the Putative Class Members were regularly denied rest breaks, the amount in controversy ranges between **$555,083.79** (applying one missed rest break per workweek per employee) and **$2,220,335.10** (applying four missed rest breaks per workweek per employee).

LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

methodology approved and affirmed by the court in *Vaquero* under the more stringent "legal certainty" standard for purposes of evaluating the amount in controversy. Because this methodology satisfied the higher standard, Defendants have clearly established by a preponderance of the evidence that CAFA jurisdiction is satisfied.

76.    Notably, this figure is conservative because it only applies one missed meal period per workweek and one missed rest period per workweek even though Plaintiff alleges Defendants "regularly" engaged in the failure to provide meal and rest breaks suggesting a higher violation rate is actually in controversy. Moreover, this figure does not take into account the amount in controversy at issue on Plaintiff's class claim for the failure to indemnify and reimburse expenses under Labor Code section 2802. *See* Complaint, ¶¶ 244-249.  As such, the total amount in controversy easily exceeds the **$7,729,581.55** established in the instant Notice of Removal if a higher violation rate were applied for missed meal and rest period claims and Plaintiff's reimbursement  claim on behalf of the Putative Class was quantified.

77.    Removal of this action is therefore proper as the aggregate value of Plaintiff's class claims for unpaid overtime, statutory penalties, and attorneys' fees is well in excess of the CAFA jurisdictional requirement of $5 million.  *See* 28 U.S.C. § 1332(d)(2).

## SUPPLEMENTAL JURISDICTION

78.    In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution.  28 U.S.C. § 1367(a).

79.    Additionally, where the amount-in-controversy requirement for diversity jurisdiction is satisfied as to plaintiff's claim, the district court may adjudicate other state law claims for lesser amounts if they are part of the "same Article III case or controversy," including claims by co-plaintiffs against the same

LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

defendant, and claims by unnamed members of a class on whose behalf the action is brought.  *See Exxon Mobil Corp., v. Allapattah Servs.*, 545 U.S. 546, 549, 566-67 (2005), *superseded by statute on other grounds* (holding that the "threshold requirement of section 1367(a) is satisfied in cases . . . where some, but not all, of the plaintiffs in a diversity action allege a sufficient amount in controversy"); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 940 (9th Cir. 2001) (court may properly exercise supplemental jurisdiction over the claims of unnamed class members when the claim of an individual named plaintiff satisfies the amount-in-controversy).

80.    As described in detail above, the amount in controversy in this action based on Plaintiff's class claims for unpaid overtime, unpaid meal and rest premiums, final wages not timely paid, non-compliant wage statements, and attorneys' fees exceeds $5,000,000.00.    Plaintiff's remaining causes of action, specifically Plaintiff's individual claims arising from her employment with Stoneledge (including the first through twelfth, sixteenth, and eighteenth causes of action) and twentieth cause of action under the PAGA, form part of the same case or controversy under Article III of the United States Constitution as those causes of action for relief discussed above over which the Court has original jurisdiction.

81.    Here, Plaintiff's representative PAGA claim (twenty-first cause of action) is expressly based on purported violations of the Labor Code sections discussed in the instant Notice of Removal (unpaid overtime, missed meal periods, missed rest periods, waiting time penalties, and wage statements).  *See* Complaint, ¶¶ 285-291.  As such, it necessarily forms part of the same case or controversy as those claims giving rise to original jurisdiction under CAFA.

82.    Similarly, Plaintiff's individual claims (the first through twelfth, sixteenth, and eighteenth causes of action), each arise from her employment Stoneledge as is the case with wage and hour claims giving rise to original jurisdiction under CAFA.  Additionally, Plaintiff's individual claims concerning *inter alia* claims for wrongful termination, harassment, discrimination, and breach of contract do not

LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

involve novel or complex issues of state law, do not substantially predominate over the class claims, and no other exceptional circumstances exist to warrant declining supplemental jurisdiction. *See* 28 U.S.C. § 1367(a).

83.   Accordingly, this Court has supplemental jurisdiction over Plaintiff's remaining causes of action and the corresponding individual, class, and representative claims asserted by Plaintiff. *See* 28 U.S.C. § 1367(a).

## NOTICE TO PLAINTIFF AND THE STATE COURT

84.   Contemporaneously with the filing of this Notice in this Court, written notice of such filing will be provided to Plaintiff's counsel of record, L. Benjamin Blady of Blady Weinreb Law Group, LLP.

85.   A copy of the Notice of Removal will also be filed with the Clerk of the Superior Court of the County of Los Angeles, California.


Dated:        May 23, 2014


                              /s/ Elizabeth Nguyen
                              J. KEVIN LILLY
                              SCOTT M. LIDMAN
                              ELIZABETH NGUYEN
                              SAM SANI
                              LITTLER MENDELSON, P.C.
                              Attorneys for Defendants
                              ASHLEY FURNITURE INDUSTRIES,
                              INC., STONELEDGE FURNITURE,
                              LLC, AND JAGATH DASWATTA

Firmwide:126902312.6 061736.1013

LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

26.