I. Benjamin Blady, Esq. – State Bar No. 162470
BLADY WEINREB LAW GROUP, LLP
6310 San Vicente Boulevard, Suite 400
Los Angeles, California 90048
Telephone:  (323) 933-1352
Facsimile:   (323) 933-1353
E-mail:        bblady@bwlawgroup.com

Attorneys for Plaintiff
BOZENA KLUNE, for herself, on behalf of all others similarly situated, and on behalf of the general public

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| BOZENA KLUNE, an individual,<br><br>    Plaintiff,<br><br>vs.<br><br>ASHLEY FURNITURE INDUSTRIES, INC., a corporation; STONELEDGE FURNITURE, LLC, a limited liability company; JAG DASWATTA, an individual; and DOES 1 through 50, inclusive,<br><br>    Defendants. | CASE NO.: 2:14-cv-03986- PA (MANx)<br><br>**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION AND MOTION TO REMAND TO STATE COURT AND FOR AN AWARD OF ATTORNEY'S FEES PURSUANT TO 28 U.S.C. § 1447(c) IN THE AMOUNT OF $ 23,625; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[28 U.S.C. § 1447(c); C.D. Local Rules, Rule 7]<br><br>DATE:   July 21, 2014<br>TIME:   1:30 p.m.<br>PLACE: Courtroom 15 |

///

///

///

///

i

REPLY IN SUPPORT OF MOTION TO REMAND TO STATE COURT

{Client Files/KLUN01/002-FED/00049818.DOCX}

# **TABLE OF CONTENTS**

I.   INTRODUCTION ………………………………………………….....  1

II.  ARGUMENT ……………………………………………………..............  1

    A.   REMAND FOR DEFENDANTS' STATE COURT CONDUCT …......1

        1.   Defendants' State Court Conduct Warrants Remand ………....  1

        2.   Defendants did not seek to maintain Only the Status Quo …….  2

        3.   Removability was not subsequently apparent …………………  3

    B.   AMOUNT IN CONTROVERSEY DOES NOT EXCEED $5,000,000…………………………………………………………  3

        1.   Defendants Improperly Rely on "Information and Belief"……………………………………………………….  4

        2.   Muller's Declaration is Objectionable ………………………….  4

        3.   Defendants Fail to Establish Over $5,000,000 in Controversy ……………………………………………………  5

    C.   STATE COURT DAMAGE DEFENSES ARE PROPERLY CONSIDERED …………………………………………………………11

    D.   VAQUERO INVOLVED DIFFERENT ALLEGATIONS & LAW………………………………………………………………..12

    E.   ATTORNEYS' FEES SHOULD BE AWARDED ………………….12

III. CONCLUSION …………………………………………………………..12

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Abrego Abrego v. The Dow Chem. Co.*,
   443 F.3d 676 (9th Cir. 2006) .................................................................................. 6

*Acosta v. Direct Merchants Bank*,
   207 F. Supp. 2d 1129 (S.D. Cal. 2002) .................................................................. 1

*Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw Transit Servs., Inc.*, 05CV1199-IEG-CAB, 2009 WL 2448430
   (S.D. Cal. Aug. 10, 2009) ....................................................................................... 9

*California Republican Party v. Mercier*,
   652 F. Supp. 928 (C.D. Cal. 1986) ......................................................................... 3

*Carpenter v. Illinois Cent. Gulf R. Co.*,
   524 F. Supp. 249 (M.D. La. 1981) ......................................................................... 3

*Deaver v. BBVA Compass Consulting & Benefits, Inc.*,
   13-CV-00222-JSC, 2014 WL 2199645 (N.D. Cal. May 27, 2014) ................... 8, 9

*Fong v. Regis Corp.*,
   C 13-04497 RS, 2014 WL 26996 (N.D. Cal. Jan. 2, 2014) ........................... 4, 6, 9

*EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd.*,
   322 F.3d 635 (9th Cir. 2003) .............................................................................. 2, 3

*Foley v. Allied Interstate, Inc.*,
   312 F. Supp. 2d 1279 (C.D. Cal. 2004) .................................................................. 3

*Garibay v. Archstone Communities LLC*,
   539 F. App'x 763 (9th Cir. 2013) ........................................................................ 5, 6

*Hawaii v. Standard Oil Co. of Cal.*,
   405 U.S. 251 (1972) .............................................................................................. 11

*Hutto v. Davis*,
   454 U.S. 370 (1982) ................................................................................................ 1

*Kim v. Mosaic Sales Solutions Holding Co.*,
   2:10-CV-03186-MCE-GG, 2011 WL 775895
   (E.D. Cal. Feb. 28, 2011) ........................................................................................ 8

*Lamke v. Sunstate Equip. Co., LLC*,
   319 F. Supp. 2d 1029 (N.D. Cal. 2004) ............................................................... 11

*Letuligasenoa v. Int'l Paper Co.*,
   5:13-CV-05272-EJD, 2014 WL 2115246
   (N.D. Cal. May 20, 2014) .................................................................................. 6, 7

*Lyon v. W.W. Grainger Inc.*,
   C 10-00884 WHA, 2010 WL 1753194 (N.D. Cal. Apr. 29, 2010) ........................ 8

*Martin v. Franklin Capital Corp.*,
    546 U.S. 132 (2005) .................................................................................... 12

*Mora v. Harley-Davidson Credit Corp.*,
    1:08-CV-01453OWWGSA, 2009 WL 464465
    (E.D. Cal. Feb. 24, 2009) ............................................................................ 4

*Resolution Trust Corp. v. Bayside Developers*,
    43 F.3d 1230 (9th Cir. 1994) ....................................................................... 2

*Rhoades v. Progressive Cas. Ins. Co., Inc.*,
    2:10-CV-1788-GEB-KJM, 2010 WL 3958702
    (E.D. Cal. Oct. 8, 2010) ............................................................................... 4

*Roth v. Comerica Bank*,
    799 F. Supp. 2d 1107 (C.D. Cal. 2010) ....................................................... 4

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
    303 U.S. 283 (1938) ..................................................................................... 1

*Standard Fire Ins. Co.*,
    133 S. Ct. at 1348 ............................................................................. 5, 7, 11

*Texas Wool and Mohair Mktg. Assoc. v. Standard Accident Ins. Co.*,
    175 F.2d 835 (5th Cir.1949) .................................................................... 1, 2

*Valdez v. Allstate Ins. Co.*,
    372 F.3d 1115 (9th Cir. 2004) ..................................................................... 4

*Wisconsin Dep't of Corr. v. Schacht*,
    524 U.S. 381 (1998) ................................................................................... 11

*Woods v. CVS Pharmacy, Inc.*,
    CV 14-0259 PA RZX, 2014 WL 360185
    (C.D. Cal. Jan. 30, 2014) ............................................................................. 5

**STATE CASES**

*United Parcel Serv., Inc. v. Superior Court*,
    196 Cal.App.4th 57 (2011) .......................................................................... 8

**FEDERAL STATUTES**

28 U.S.C. § 1447(c) ................................................................................................ i

**STATE STATUTES**

Cal. Lab. Code § 203 .......................................................................................... 10

Cal. Lab. Code § 226 ............................................................................................ 9

Cal. Lab. Code § 226(a)(2) ................................................................................... 9

Cal. Lab. Code § 226.7 .................................................................................... 7, 8

## STATE RULES

Cal. Rules of Court 3.760(a) ................................................................................. 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND PRELIMINARY ARGUMENT

Defendants' Opposition demonstrates multiple grounds for remand. First, under Ninth Circuit authority, Defendants' state court conduct is sufficient for waiver, as it was not to maintain the status quo. Second, Defendants have **not** established by a preponderance of the evidence that the amount in controversy (AIC) exceeds $5,000,000. Third, state court damage defenses are properly considered.

Defendants' Opposition also demonstrates that the court should grant Plaintiff attorney fees either because the removal is not "objectively reasonable," or unusual circumstances (e.g., violating state court's stay order, and *withholding* facts).

## II. ARGUMENT

### A. REMAND FOR DEFENDANTS' STATE COURT CONDUCT

Defendants' state court conduct was not to maintain the status quo, sought affirmative aid, and removal did not become subsequently apparent.

#### 1. Defendants' State Court Conduct Warrants Remand

First, the U.S. Supreme Court spoke on the issue in *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 291 (1938), where it explained: because "the defendant *must* file his petition before the time for answer *or forever lose his right to remove*" that "the status of the case disclosed by the plaintiff's complaint is controlling in the case of removal." Here, the motion to remand should be granted under *St. Paul*. See, e.g., *Hutto v. Davis*, 454 U.S. 370, 375 (1982) (per curiam) ("[A] precedent of this [Supreme] Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be.")

Second, remand is mandated by other federal court authority. See, *Acosta v. Direct Merchants Bank*, 207 F. Supp. 2d 1129 (S.D. Cal. 2002), citing *Texas Wool and Mohair Mktg. Assoc. v. Standard Accident Ins. Co.*, 175 F.2d 835, 838 (5th Cir.1949). Relying on Ninth Circuit authority, the *Acosta* court held that the dispositive factor is assessing waiver for removal is whether Defendants' state court

conduct was "solely for the purpose of preserving the status quo." *Id.* at 1133.

In finding waiver and remanding the action, *Acosta* explained, at 1133, "neither [defendant] DNB's state court Answer or Cross Complaint reserved any right state court to later remove the case to state court.  If anything, DNB's offensive state court tactic to both file an Answer and Cross Complaint clearly showed an intent to reach the merits of the dispute before a state, and not federal tribunal." The *Acosta* court further held the "voluntary nature of DMB's previous state court filings confirms that DMB waived the right to removal."  DMB could "have removed the case without filing any pleadings in state court." *Id.* at 1133.

Here, the court should remand because Defendants' state court answer was *not* "solely for the purpose of preserving the status quo," "voluntary" invoked state court jurisdiction, and failed to reserve any right to remove.  To be clear, Defendants' voluntary conduct violated the state court's May 6, 2014, stay order solely for their advantage.  The 29th Defense also sought the state court's aid to impose several liability on others.  (See *Acosta*, 207 F. Supp. 2d at 1132, citing *Texas Wool & Mohair Mktg. Ass'n*, 175 F.2d 835.)

### 2. Defendants did not seek to maintain Only the Status Quo

Defendants' voluntary affirmative conduct violating the state court's stay does **not** fit within Ninth Circuit authority permitting pre-removal conduct only to preserve the "status quo." Unlike the circumstances in Defendants' authority, here (1) Defendants were not "taking *necessary action* to avoid a judgment being automatically entered against [them]," which might be insufficient to "manifest an intent to litigate in state court," and (2) Plaintiff is not relying on prior out of court communications purportedly implying Defendants would not later remove. *Resolution Trust Corp. v. Bayside Developers*, 43 F.3d 1230, 1240 (9th Cir. 1994) (petition for rehearing held insufficient for waiver where the "petition specifically stated that the RTC intended to remove and had made the petition solely for the defensive purpose of preserving the *status quo* pending removal"); *EIE Guam Corp.*

*v. Long Term Credit Bank of Japan, Ltd.*, 322 F.3d 635, 649 (9th Cir. 2003) (out of court statements prior to joining removal are insufficient for waiver). (Opp., at 3.)

Similarly, *California Republican Party v. Mercier*, 652 F. Supp. 928 (C.D. Cal. 1986) does *not* support any state court conduct other than to maintain the status quo. (See, Opp., at 3.) In footnote four, the *California Republican Party* court cited *Carpenter v. Illinois Cent. Gulf R. Co.*, 524 F. Supp. 249, 251 (M.D. La. 1981) for the general rule that "[t]he weight of authority also indicates that filing a responsive pleading does **not** constitute an acceptance of the state court's jurisdiction, despite the Party's contention to the contrary." However, *Carpenter*, at 251 explained that just filing an answer asserting a general denial did not result in waiver, since (1) there "has been no experimentation in state court by the defendant which only filed an answer asserting a *general denial*," and (2) "there is *no* request for affirmative relief." Here, in contrast, Defendants' violation of the state court's stay order was *not* to preserve the status quo, and their 29th defense seeks affirmative aid.

### 3. Removability was not subsequently apparent

Defendants also cannot find refuge in their authority finding: "Acts before removability becomes apparent cannot waive removability." *California Republican Party*, 652 F. Supp. at 932; *Foley v. Allied Interstate, Inc.*, 312 F. Supp. 2d 1279, 1285 (C.D. Cal. 2004) (joining party did not waive right to remove where it "believed time to remove had elapsed and was unaware of the removal action at the time [counsel] undertook actions in state court"). Here, *Muller's* declaration was executed *prior* to the execution and filing of the state answer. (Muller Dec., at 5).

### B.  AMOUNT IN CONTOVERSY DOES NOT EXCEED $5,000,000

Defendants' Opposition incredulously argues that their removal was proper based on (1) "information and belief"; (2) a declaration from a finance executive who lacks the personal knowledge of human resources matters; (3) mischaracterization of Plaintiff's limiting allegations on overtime to draw weeks, as somehow being "illusory," by speculating that Plaintiff "may" make different

allegations in the *future*; and (4) new *higher* rest break contentions speculating about a 100% violation rate (four per week) compared to the removal (one per week).

### 1. **Defendants Improperly Rely on "Information and Belief"**

Defendants offer **no** ground to distinguish *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). In *Valdez*, 372 F.3d at 1117, the Ninth Circuit held a defendant's removal based on "information and belief . . . hardly constitutes proof by a preponderance of the evidence." Here, Plaintiff's allegations upon which Defendants' removed are pled on "information and belief." (See, Complaint, ¶ 70, ln. 15; ¶ 76, ln. 16). Thus, Defendants' entire removal should fall.

### 2. **Muller's Declaration is Objectionable**

Defendants' authority does not support the admissibly of Muller's declaration. In each of Defendants' cases, the declarants were Human Resources or Administration executives who averred to matters within their charge. See, e.g., *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1127-28 (C.D. Cal. 2010) (declarant in "charge of administrative management" and thus "the court concludes the testimony is based on *personal knowledge*"); *Mora v. Harley-Davidson Credit Corp.*, 1:08-CV-01453OWWGSA, 2009 WL 464465, at *4 n. 1 (E.D. Cal. Feb. 24, 2009) (director of customer solutions testimony concerning customer account records was "competent to speak to the account records based on his experience, position with the company, account records and *personal knowledge* . . . ."); *Rhoades v. Progressive Cas. Ins. Co., Inc.*, 2:10-CV-1788-GEB-KJM, 2010 WL 3958702 (E.D. Cal. Oct. 8, 2010) (human resources consultant's declaration was sufficient to support estimate of employees in proposed class). (Opp., at 15). This limitation on admissibility is confirmed by Defendants' citation to *Fong v. Regis Corp.*, C 13-04497 RS, 2014 WL 26996, at *2-4 (N.D. Cal. Jan. 2, 2014) (declaration of "Director of Employee Services" who is "responsible for preparation of" payroll data is sufficient for "personal knowledge".)

Here, Muller's declaration is objectionable, in part, because Defendants' concede their finance executive was completely uninvolved with human resources or administration. Muller does **not** have any of the responsibilities establishing personal knowledge, such as responsibility for hiring, firing, paying, scheduling, or providing meal and rest periods to California employees. (Muller, ¶ 2; Removal, p. 8, ¶ 26.) Thus, again Defendants' entire removal should fall.

### 3. Defendants Fail to Establish Over $5,000,000 in Controversy

Defendants fail to establish that the amount in controversy is over $5,000,000. Not only are Defendants' prior assertions in their Removal that the amount in controversy is $7,729,581.55 unsupportable (Removal, at 23), but also their *newly* minted and speculative assertions of a four times multiple violation rate for rest breaks is even more unsupportable. (Opp., at 17).

*Overtime During Weeks Employees were Paid a Draw*: It is improper for Defendants to assume "the broadest interpretation of the class . . . with providing a sufficient basis for doing so." *Woods v. CVS Pharmacy, Inc.*, CV 14-0259 PA RZX, 2014 WL 360185 (C.D. Cal. Jan. 30, 2014); *Garibay v. Archstone Communities LLC*, 539 F. App'x 763 (9th Cir. 2013) (improper for Defendants to assume facts without providing supporting evidence). Speculation about what Plaintiff "may" allege in the *future* simply has **no** bearing on removal. *Standard Fire Ins. Co.*, 133 S. Ct. at 1348 ["federal jurisdiction cannot be based on contingent future events."]). Here, Defendants' speculative assumption that Plaintiff may place all workweeks into dispute in the future is absurd. (Opp., at 17.) Defendants' brazenly ignore Plaintiff's allegations expressly limiting the overtime claim to weeks the putative class members were paid a draw. Defendants' unsupported speculation about what Plaintiff may allege in the future is utterly immaterial.

Furthermore, Defendants' back up argument that the AIC should be based on Plaintiff's estimated thirty percent of draw weeks is undercut by their continued failure to provide summary judgment *evidence* of the actual percentage available

1  from electronic payroll records. Defendants' own authority rejects reliance on a
2  Plaintiff's pay records to speculate as to the violation rate for a putative class. See,
3  *Fong*, at * 2-4 ("such methodology is unpersuasive;" Defendant cannot "in good
4  faith suggest that all members might recover" as Plaintiff, especially since "the
5  employer is in a superior position to review" payroll records).

6        Thus, since Defendants have **not** provided relevant payroll information
7  concerning the percentage of draw weeks, Defendants have not established as in
8  controversy any material portion of the $2,227,556.46 they claimed in removal.
9  However, assuming, *arguendo*, Defendants could present evidence establishing up
10 to 30% of the work weeks were draw weeks, the amount in controversy would still
11 need to be reduced by at least $1,559,289.52 from $2,227,556.46 to **$668,266.93**.

12       *Rest Break Claim*: Without any support or new evidence, and based on an
13 utterly different rest break theory alleged in *Vacquero II* (derivative of the duty to
14 pay minimum wage based all hours), Defendants seek to disingenuously assert a
15 **100%** violation rate, and thus expand their prior removal contention that the rest
16 break claim concerns one violation per week for $555,083.79 in controversy by a
17 multitude of **four** to **$2,220,335.16** or a 100% violation rate (4 days per week).

18       However, Defendants' *new* contention disregards that it is Defendants'
19 "burden of setting forth, *in the removal petition itself*, the underlying facts
20 supporting the amount in controversy . . . ." *Abrego Abrego v. The Dow Chem. Co.*,
21 443 F.3d 676 (9th Cir. 2006). Defendants cannot "assume [] that each employee
22 would be entitled to the maximum statutory penalty" without providing evidence
23 supporting that assertion." *Garibay v. Archstone Communities LLC*, 539 F. App'x
24 763 (9th Cir. 2013); *Letuligasenoa v. Int'l Paper Co.*, 5:13-CV-05272-EJD, 2014
25 WL 2115246, at *7-8 (N.D. Cal. May 20, 2014) (rejecting substantial *increase* in
26 waiting time claim in Opposition as "flawed for the same reasons [i.e. that 'each
27 employee would be able to recover the maximum thirty days of penalties']." *Here*,
28 Defendants' removal initially contended "**one** missed rest period per week for

purposes of calculating the amount in controversy." (Removal, at 16, citing to *Jasso*). Defendants **now** *speculatively* seek to expand the multiple by *four* to a 100% violation rate without any shred of **new** supporting facts. (Opp., at 11). Defendants' conjure such speculation from the *Vaquero II* plaintiffs' purported different minimum wage contentions for all hours worked since "Defendant's compensation formula did not compensate . . . separately for rest periods." (Opp., at 12). However, Defendants cannot *speculate* that in the future "Plaintiff **may** assert the same theory here." (Opp., at 12; *Standard Fire Ins. Co.*, 133 S. Ct. at 1348). There is **nothing** in the record to support that Plaintiff *may* assert such a duplicative theory, and **nothing** of the sort was ever discussed during the meet and confer process. Thus, there is **no** basis for Defendants to expand the number of rest breaks from one per week in the Notice of Removal to four days per week.

  Moreover, Defendant's Opposition advises that "sales associates generally worked a 4 day week," **not** five days. Given a four day work week (instead of five days), this would plainly support a one fifth or 20 percent reduction of the claimed AIC in Defendants' Removal from $555,083.79 to **$444,067.03**

  *Meal Break Claim*: Defendants also contended in removal that the meal break claim placed $555,083.79 into controversy based on "one missed meal period per week for purposes of calculating the amount in controversy." (Removal, at 18, citing to *Jasso*). As Defendants contend that "sales associates generally worked a four day week," it is also reasonable on this meal break claim to reduce the AIC by the equivalent of 20% or one fifth from $555,083.79 to **$444,067.03**.

  *Probability of Double Counting Meal/Rest Violations*: For purposes of removal, Defendants fail to consider the 25% probability (one out of four) of double counting premium pay for meal and rest break violations. As recently as May 2014, a federal district ruling on a motion to remand held: "Cal. Lab. Code § 226.7 limits employees denied meal periods, rest periods, or both to a single recovery of an additional hour's wages per day." *Letuligasenoa*, 2014 WL, at *6 (NO. 5:13-CV-

{Client Files/KLUN01/002-FED/00049818.DOCX}

7
REPLY MEMORANDUM IN SUPPORT OF MOTION TO REMAND

05272-EJD), citing *Lyon v. W.W. Grainger Inc.*, C 10-00884 WHA, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010). The California Supreme Court "has not decided in a published opinion whether Cal. Lab. Code § 226.7 permits two premium payments per work day rather than just one ...." *United Parcel Serv., Inc. v. Superior Court*, 196 Cal.App.4th 57, 63 (2011). Here, since Defendants provide that "sales associates generally worked a 4 day week," this results in a 25% chance weekly of duplicative violations. Thus, this court may reduce the AIC on the meal/rest break claims by 25% of $444,067.03 which is **$111,016.75**.

*Waiting Time Penalties*: Defendants' Opposition seeks to flip the burden of proof on waiting time penalties to Plaintiff. Defendants may not rely on "speculative and self-serving assumptions about key unknown variables." *Garibay*, at *1. Defendants disingenuously ignore the impact of part time former employees simply arguing Plaintiff did **not** allege how many members of the putative class were part time (i.e., worked less than 8 hours per day). Cf., *Kim v. Mosaic Sales Solutions Holding Co.*, 2:10-CV-03186-MCE-GG, 2011 WL 775895 (E.D. Cal. Feb. 28, 2011) ("In determining the average daily pay, Defendant assumes that all formerly employed Class members worked eight-hour days. However, this assumption is not supported by the evidence that Defendant provides.") (Motion, at 18). Defendants' own authority rejects such assumptions on removal. *Deaver v. BBVA Compass Consulting & Benefits, Inc.*, 13-CV-00222-JSC, 2014 WL 2199645 (N.D. Cal. May 27, 2014) ("Defendants assume that the non-exempt opening employees were all full time .... There is no evidence in the record, however to support this assumption .....") (Opp., at 14). Yet, Defendants refuse to provide the number of part time former employees (and average daily work hours), despite its materiality to the AIC (Number of Days x average daily part time hours x part time hourly rate). It is simply not the Court's or Plaintiff's obligation to *speculate* as to the impact of former part time employees on reducing the AIC for 203 penalties.

*Wage Statement Violations*: Defendants have *not* established their contention

of a 100 percent wage statement violation rate, or that they properly calculated "subsequent" penalties at $100 for over 96 percent of the pay periods. *First*, Defendants disregard the alleged failure to report "hours worked" on wage statements is derivative of the overtime claim for draw weeks. See Motion, at 6 ["Plaintiff's wage statement claims are derivative of draw week claims"]; Cal. Lab. Code § 226(a)(2) [employer has obligation to "record total hours worked" *except* for employee who is exempt from payment of overtime]. Thus, unlike Defendants' cases, Plaintiff is plainly not alleging violations for *each* employee for *each* pay period. Cf., *Deaver*, at * 5 ("Plaintiff does not disavow this earlier detailed allegation" of unpaid time based on computer start up applied "for each and every one of the Class Members"). Further, even Defendants' cases would reject assumptions of a 100% wage statement violation rate when not "supported directly by, or reasonably inferred from, the allegations in the complaint." Cf., *Fong*, 2014 WL, at * 2-4 (rejecting "such methodology" where "the employer is in a superior position to review" average payroll data for the putative class). Defendants' "granular proof" objection is not applicable since the class wide draw week percentage should be plainly discernable from payroll data. Cf., *Fong v. Regis Corporation*, 2014 WL 26996, at * 6. (Opp., at 15; Eg., Muller Decl., at ¶¶16-20).

Second, Defendants' contention that the $100 dollar "subsequent" penalty in Cal. Lab. Code § 226 applies to 96.32% of pay periods ignores that the triggering notice of violation must come from a court or commissioner. *Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw Transit Servs., Inc.*, 05CV1199-IEG-CAB, 2009 WL 2448430 (S.D. Cal. Aug. 10, 2009) held:

> For the purposes of subsequent violation penalties, the issue is *not* whether Laidlaw willfully violated the Labor Code, but rather whether a court or commissioner had notified it of any violation. The parenthetical language from *Amaral* supports this conclusion: "whether or not the commissioner or court chooses to impose penalties ...." *Id*. This language indicates the court believed notice would issue from either a commissioner or court.

Here, Defendants have provided **no** evidence a court or commissioner notified them of any violation, and thus the "subsequent" violation penalty of $100 should be reduced to $50 (50%) in determining the AIC for purposes of removal.

Thus, Defendants' assertion that the AIC on the wage statement claim is $1,643,500 must be reduced as follows. *First*, like the overtime claim, Defendants have not established the true purported AIC by failing to provide evidence of the percentage of draw weeks. *Second*, even if Defendants had provided electronic payroll data showing 30% of the class pay-periods were draw pay-periods, this would still reduce the AIC by at least 70% or $1,150,450 to $493,050. *Third*, this AIC would have to be reduced by another 48.2% for improperly using "subsequent" violations for 96.32 % of the pay periods to $237,650.10. (.482 = 96.32% "subsequent" pay periods [16,002/16,613] x 50 percent [$50/$100]).

*Total Amount in Controversy is below $5,000,000, Even Before Consideration of State Court Damage Defenses*: Defendants have not shown by a preponderance of the evidence that the AIC exceeds $5,000,000. Instead, the amount appears to be below $5,000,000, even with speculative assumptions:

| Class Claim | D's Removal | D's Evidence | Potential Estimate |
|---|---|---|---|
| Overtime | $2,227,566.46 | $ 0 | $668,269.64 (***Speculative*** 30% draw weeks) |
| Rest Breaks | $555,083.79 (1 missed week) | $0 | $444,067.03 (4/5 multiplier for 4 day week) |
| Meal Periods | $555,083.79 (1 missed week) | $0 | $444,067.03 (4/5 multiplier) |
| Probability of Double Counting Meal & Rest | (1 out of 4) | $0 | <$111,016.75> ($444,067.03 X 1/4 multiplier) |
| Cal. Lab. Code § 203 | $1,202,431.2 | $0 | ***Speculative*** w/o part time reduction |
| Wage Statement | $ 1,643,500 | $0 | $237,650.10 ($ 1,643,500 x.3 ***Speculative*** draw weeks x .482) |

| | | | |
|---|---|---|---|
| AIC Including *Speculative* Draw Week Overtime and § 203 | $6,183,665.24 | $0 | $ 2,885,468.25 ($ 1,683,037.05+ 1,202,431.24) |
| Attorneys' Fees With *Speculation* | $1,545,916.31 | | $ 721,367.06 |
| Total AIC | $7,729,581.55 | | $ 3,606,835.31 |

### C. STATE COURT DAMAGE DEFENSES ARE CONSIDERED

It is plainly proper for a district court to consider the impact of Defendants' damage defenses *pled in state court* on a remand motion. (Motion, at 21-22; cf. *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 390 (1998) ("for purposes of removal jurisdiction, we are to look at the case as of the time it was filed in state court—prior to the time the defendants filed their answer in federal court.") Moreover, *Lamke v. Sunstate Equip. Co., LLC*, 319 F. Supp. 2d 1029, 1033 (N.D. Cal. 2004) (Motion, at 22) rejects Defendants' contention that potential affirmative damage defenses are *not* considered under a preponderance of evidence for remand:

> Because the Ninth Circuit [in *Riggins*] examined the facts and circumstances with respect to an arguable defense of statute of limitations, even in the context of the more demanding "legal certainty" test, it follows a fortiorari that this Court should engage in an inquiry into the facts with respect to mitigation of damages under the preponderance of the evidence test applicable here [on removal].

*Defendants' Release or Set-Off Defense*: Defendants' disregard their twelfth defense that members of the class have released their claims, merely mentioning it in the Opposition. (Motion, at 7 and 24, fn. 6; Opp. at 20, lns. 7-8). However, release defenses are pertinent to the AIC because they either (1) impact the number of putative class members, or (2) reduce damages for such putative members.

*Duplicative Remedies to the Certified Vacquero I Class*: *Standard Fire Ins. Co.*, 133 S. Ct., 1348 held that "federal jurisdiction cannot be based on contingent future events." Thus, the AIC should <u>not</u> include "duplicative remedies" sought in a *certified* class since Rule 23 is to "effectively prevent duplicative recoveries". *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 266 (1972).

*Duplicative Remedies to State Court Putative Class*: Under California Rules of Court, a putative class is treated as certified until cortication is denied. Cal. Rules

of Court 3.760(a)("The rules in this chapter apply to each class action . . . until the court finds the action is not maintainable as a class action or revokes a prior class certification.") Thus, the AIC should not include duplicative remedies sought in a pending putative state court action because otherwise jurisdiction would be based on a "future contingency" of non-recovery in the state action.

### D.   VAQUERO INVOLVED DIFFERENT ALLEGATIONS & LAW

Defendants have provided **no** basis to analogize removal here to *Vacquero*. *Vacquero* was based on different allegations, law and argument. First, *Vacquero's* analysis of PAGA penalties is *now* plainly immaterial. Second, Vacquero did *not* specifically object to Defendants' assumptions, or set forth how Defendants improperly speculated. For example, unlike in *Vacquero*, Plaintiff's overtime claim here is limited to draw weeks. Third, Vacquero did not consider other arguments, such as waiver, and the impact of damage defenses. Fourth, Defendants' removal here fails under a "preponderance of the evidence." (Motion, at 14, fn. 13).

### E.   ATTORNEYS' FEES SHOULD BE AWARDED

An award of fees is proper if the removal is not "objectively reasonable," **or** there are other "unusual circumstances." *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005). The removing party's "failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees." *Id*. at 141. Here, the removal was objectively unreasonable based upon Defendants' conduct, Plaintiff's limiting allegations and Defendants' speculative assumptions. Further, Defendants fail to disclose multiple facts necessary to determine jurisdiction.

## II.   CONCLUSION

Thus, the Court should remand this action, and grant attorney fees of $23,625.

DATED: July 7, 2014                                    **BLADY WEINREB LAW GROUP, LLP**

/s/ I. Benjamin Blady
I. Benjamin Blady
Attorneys for Plaintiff Bozena Klune, for herself, on behalf of all others similarly situated, and on behalf of the general public