J. KEVIN LILLY, Bar No. 119981
klilly@littler.com
SCOTT M. LIDMAN, Bar No. 199433
slidman@littler.com
ELIZABETH NGUYEN, Bar No. 238571
enguyen@littler.com
SAM SANI, Bar No. 273993
ssani@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
Telephone:   310.553.0308
Facsimile:   310.553.5583

Attorneys for Defendants
ASHLEY FURNITURE INDUSTRIES,
INC., STONELEDGE FURNITURE, LLC,
AND JAGATH DASWATTA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOZENA KLUNE,<br><br>                    Plaintiff,<br><br>        v.<br><br>ASHLEY FURNITURE INDUSTRIES, INC., a corporation; STONELEDGE FURNITURE, LLC, a limited liability company; JAG DASWATTA, an individual; and DOES 1 through 50, inclusive,<br><br>                    Defendant. | Case No.  2:14-cv-03986-PA-FFMx<br>Honorable Percy Anderson<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS ASHLEY FURNITURE INDUSTRIES, INC. AND STONELEDGE FURNITURE, LLC'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>**[FED. R. CIV. P. 56]**<br><br>**DATE:  March 16, 2015**<br>**TIME:  1:30 p.m.**<br>**DEPT: 15**<br><br>Complaint Filed:        04/21/2014<br>Trial Date:                May 19, 2015 |

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

MPA ISO DEFS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I.   SUMMARY OF ARGUMENT ................................................................. 1

II.  STATEMENT OF RELEVANT FACTS .................................................. 2

    A.   Stoneledge Furniture, LLC ......................................................... 2

    B.   Plaintiff's Employment with Stoneledge .................................... 3

    C.   Plaintiff Was Paid Under A Lawful Commission Plan ............... 3

    D.   Plaintiff's Compensation During Her Employment .................... 4

    E.   Plaintiff Conceded She Was Required To Accurately Record Her Time, And She Did So ............................................................ 4

    F.   Stoneledge's Rest Break Policies and Plaintiff's Rest Breaks ................ 4

    G.   Stoneledge's Meal Break Policies and Plaintiff's Meal Breaks .............. 5

    H.   Stoneledge's Employee Reimbursement Policies and Plaintiff's Alleged Expenses ....................................................................... 6

    I.   Plaintiff Has No Knowledge of Stoneledge's Policies And Practices Or Sales Associates' Experiences at Stores Other Than the Palmdale Store ...................................................................... 8

    J.   Plaintiff Seeks PAGA Penalties Only On Behalf of Three Individuals ................................................................................. 8

    K.   The Certified Wage Statement Class in the Vaquero Action ................. 9

III. LEGAL ARGUMENT ........................................................................... 9

    A.   Legal Standard for Summary Judgment ..................................... 9

    B.   Plaintiff's Overtime Claim Fails Because She Is Exempt Under The Commissioned Sales Exemption ......................................... 10

        1.   Plaintiff's principal function was to sell furniture on commission ........................................................................ 11

        2.   Plaintiff's weekly earnings exceeded one and one-half times the minimum wage.................................................... 11

        3.   More than one-half of Plaintiff's earnings represent commissions................................................................... 12

    C.   Plaintiff's Rest Break Claim Fails as a Matter of Law Because Stoneledge Authorized and Permitted Plaintiff to Take Legally Compliant Rest Breaks.................................................. 13

LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

i.

# TABLE OF CONTENTS
## (continued)

**Page**

D.      Plaintiff's Meal Break Claim Fails Because Stoneledge Provided Plaintiff Legally Compliant Meal Breaks ................................................. 14

E.      Plaintiff's Reimbursement Claim Fails as a Matter of Law Because Plaintiff Did Not Incur Reimbursable Expenses in Direct Consequence of the Discharge of Her Duties as a Sales Associate ........ 17

F.      Plaintiff's Claims For Penalties Pursuant to Labor Code Sections 203, 226, and 1174.5 Fail as a Matter of Law Because Stoneledge Did Not Knowingly, Intentionally, or Willfully Violation Any of These Provisions ............................................................................... 19

     1.      Section 203 waiting-time penalties ................................................ 19

     2.      Sections 226 and 1174 penalties .................................................... 20

G.      Plaintiff's Unfair Competition Claim Fails as a Matter of Law ............ 21

H.      Plaintiff's PAGA Claim Fails as a Matter of Law ................................ 22

I.      Ashley Never Employed Plaintiff ......................................................... 24

IV.     CONCLUSION ............................................................................................... 24

LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Agnew v. Cameron*,
  247 Cal. App. 2d 619 (1967) .............................................................................. 11

*Alcantar v. Hobart Serv.*,
  No. 11-CV-1600-PSG, 2013 WL 228501 (C.D. Cal. Jan 22, 2013) ................. 23

*Amaral v. Cintas Corp. No. 2*,
  163 Cal. App. 4th 1157 (2008) .......................................................................... 19

*Andresen v. International Paper Co.*,
  No. 2:13-cv-02079-CAS(AJWx), 2014 WL 5419426 (C.D. Cal. Oct. 21,
  2014) ................................................................................................................... 19

*Angie Singletary v. Teavana Corporation*,
  No. 5:13-CV-01163-PSG, 2014 WL 1760884 (N.D. Cal. Apr. 2, 2014) .......... 20

*Arias v. Superior Court*,
  46 Cal. 4th 969 (2009) ....................................................................................... 21

*Brinker Restaurant Corp. v. Sup. Ct.*,
  53 Cal. 4th 1004 (2012) ..................................................................... 15, 16, 17

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................................. 9

*Cochran v. Schwan's Home Serv., Inc.*,
  228 Cal. App. 4th 1138 (2014) .......................................................................... 19

*Coverdell v. Dept. of Social & Health Serv.*,
  834 F.2d 658 (9th Cir. 1987) ............................................................................... 9

*Dalton v. Lee Publ'ns, Inc.*,
  No. 08-CV-1072-BTM-(NLS), 2011 WL 1045107 (S.D. Cal. Mar. 22, 2011) . 20

*Elliot v. Spherion Pacific Work, LLC*,
  572 F. Supp. 2d 1169 (2008) ........................................................................ 22, 21

*Erichs v. Venator Group, Inc.*,
  128 F. Supp. 2d 1255 (N.D. Cal. 2001) ............................................................. 11

LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Gattuso v. Harte-Hanks Shoppers, Inc.*,
  42 Cal. 4th 554 (2007) ............................................................................... 17

*Grissom v. Vons Companies, Inc.*,
  1 Cal. App. 4th 52 (1991) ........................................................................... 17

*Hadjavi v. CVS Pharmacy, Inc.*,
  No. CV 10-04886 SJO, 2011 WL 3240763 (C.D. Cal., July 25, 2011) ............ 13

*Hobbs-Rines v. Seagate Technologies, LLC*,
  No: C-08-05430-SI, 2009 WL 513496 (N.D. Cal. Mar. 2, 2009) ..................... 22

*Hurst v. Buczek Enters., LLC*,
  No. C-11-1379-EMC, 2012 WL 1564733 .......................................................... 20

*Irwin v. Mascott*,
  94 F. Supp. 2d 1052 (N.D. Cal. 2000) ............................................................. 22

*Jones v. Spherion Staffing*,
  LLC, No. LA-CV-11-06462-JAK-JCx, 2012 WL 3264081 (C.D. Cal. 2012) .. 20

*Keyes Motors, Inc. v. Division of Labor Standards Enforcement*,
  197 Cal. App. 3d 557 (1987) ........................................................................... 10

*Kimoto v. McDonald's Corp.*,
  No. CV 06-3032 PSG, 2008 WL 4069611 (C.D. Cal. Aug. 28, 2008) .............. 21

*Kirby v. Immoos Fire Protection Inc.*,
  53 Cal. 4th 1244 (2012) ................................................................................. 20

*Martinez v. Combs*,
  49 Cal. 4th 35 (2010) ...................................................................................... 24

*Muldrow v. Surrex Solutions Corp.*,
  208 Cal. App. 4th 1381 (2012) .................................................................. 11, 12

*Murphy v. Kenneth Cole Prods., Inc.*,
  40 Cal. 4th 1094 (2007) ................................................................................. 14

*Peabody v. Time Warner Cable, Inc.*,
  59 Cal. 4th 662 (2014) ............................................................................... 11, 12

LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

# TABLE OF AUTHORITIES
## (continued)

Page

*Pedroza v. Petsmart, Inc.*,
   No. CV-11-298-GHK-(DTBx), 2012 WL 9506073 (C.D. Cal. June 14,
   2012) ....................................................................................................................20

*Porch v. Masterfoods USA, Inc.*,
   685 F. Supp. 2d 1058 (C.D. Cal. 2008)......................................................14, 15

*Reber v. AIMCO*,
   No. CV-07-0607-DOC-(RZx), 2008 WL 4384147 (C.D. Cal. Aug. 25, 2008).21

*Ricardo Bermudez Vaquero v. Ashley Furniture Industries, Inc., et al.*,
   No. CV-12-8590-PA-MANx ("*Vaquero*")..................................................2, 9, 21

*S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*,
   48 Cal. 3d 341 (1989) ..........................................................................................24

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010)..............................................................................................22

*Stafford v. Dollar Tree Stores, Inc.*,
   No. 2:13-CV-1187-KJM-CKD, 2014 WL 6633396 (E.D. Cal. Nov. 20,
   2014) ....................................................................................................................22

*Stuart v. RadioShack Corp.*,
   641 F. Supp. 2d 901 (N.D. Cal. Apr. 30, 2009) ...........................................18, 19

*Tetsuo Akaosugi v. Benihana Nat'l Corp.*,
   No. C-11-01272-WHA, 2012 WL 3999855 (N.D. Cal. Sept. 7, 2012) .............20

*Ulin v. Alaea-72, Inc.*,
   No. C-09-3160-EDL, 2011 WL 723617 (N.D. Cal. Feb. 23, 2011) ..................20

*United Steelworkers of Am. v. Phelps Dodge*,
   865 F.2d 1539 (9th Cir. 1989) ...............................................................................9

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S.Ct. 2451 (2011)...........................................................................................22

*White v. Starbucks Corp.*,
   497 F. Supp. 2d 1080 (N.D. Cal. 2007).................................................................14

LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704-2225
559.244.7500

v.

MPA ISO DEFS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES
### (continued)

**Page**

**STATUTES**

Business and Professions Code section 17200 *et seq*. ("UCL") ...............1, 2, 21, 22

CAL. CODE REGS., tit. 8, § 11070, subd. 2(H)........................................................ 10

CAL. CODE. REG.  Tit 8, § 13520 .......................................................................... 19

CAL. LAB. CODE § 2699.3(a)................................................................................. 23

CAL. LAB. CODE § 2699.3(c)................................................................................. 22

CAL. LAB. CODE. § 2802(a)............................................................................. 17, 18

Cal. Lab Code §  512 ...................................................................................... 14, 16

Cal. Labor Code § 203 ............................................................................................ 19

Cal. Labor Code § 2265 .......................................................................................... 19

Cal. Labor Code § 226.7 ......................................................................................... 13

Cal. Labor Code § 226(e) ....................................................................................... 20

Cal. Labor Code §  1174.5 ...................................................................................... 19

Cal. Labor Code § 2802................................................................................ 17, 18, 19

FED. R. CIV. P. 23............................................................................................... 2, 22

FED. R. CIV. P. 23(a) ......................................................................................... 2, 22

FED. R. CIV. P. 56(c) .............................................................................................. 9

LITTLER MENDELSON, P.C.
5200 North Palm Avenue
Suite 302
Fresno, CA 93704.2225
559.244.7500

MPA ISO DEFS' MOTION FOR SUMMARY JUDGMENT

## I.    SUMMARY OF ARGUMENT

Plaintiff Bozena Klune ("Plaintiff"), a former Sales Associate, has brought suit against Defendants Ashley Furniture Industries, Inc. ("Ashley") and Stoneledge Furniture, LLC ("Stoneledge") (Ashley and Stoneledge are collectively referred to herein as "Defendants") alleging individual and representative wage and hour claims. After the Court struck Plaintiff's class action claims and remanded her non-wage and hour claims, Plaintiff's remaining claims pending before this Court are individual claims for (1) failure to pay overtime wages, (2) failure to provide adequate meal and rest periods, (3) failure to indemnify and reimburse expenditures and/or losses, (4) waiting time penalties, (5) failure to maintain accurate payroll records, (6) failure to furnish accurate itemized wage statements, (7) unfair competition pursuant to Business and Professions Code section 17200 *et seq.* ("UCL"), and a representative claim under the California Private Attorneys General Act ("PAGA").

The uncontroverted facts demonstrate that Plaintiff was exempt from overtime wages as a commissioned sales employee because: (i) Plaintiff's weekly earnings exceeded one and one-half times the minimum wage; (ii) Stoneledge's commission compensation structure was a bona fide commission plan; and (iii) more than one-half of Plaintiff's earnings regularly represented commissions.

The uncontroverted facts also confirm that Stoneledge had legally compliant meal and rest break policies applicable to both Plaintiff and the Sales Associates she seeks to represent.  Plaintiff's time punch data, which she admitted accurately reflects the time worked, show that her first meal breaks far exceeded the 30 minutes required under California law, lasting on average close to **one hour**.  Plaintiff lawfully and voluntarily waived her second meal break in writing.  If Plaintiff missed any break, it was entirely voluntary.

Plaintiff's expense reimbursement claim also fails as a matter of law because Plaintiff admitted that (1) she was not required to incur the alleged expenses, (2) she never received approval for alleged expenses, (3) she did not submit a request for

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

reimbursement pursuant to Stoneledge's written policy, and (4) she does not have records of her alleged expenses.[1]

Plaintiff's claim for waiting time penalties, inaccurate payroll records, and inaccurate wage statement penalties claims fail as a matter of law because the underlying alleged Labor Code violations giving rise to these ancillary claims fail. These claims for penalties also fail because Stoneledge has a good faith belief that it properly classified Plaintiff and provided compliant meal and rest breaks.  Plaintiff's wage statement claim fails for the additional reason that Plaintiff is a member of the certified wage statement class in *Ricardo Bermudez Vaquero v. Ashley Furniture Industries, Inc., et al.*, No. CV-12-8590-PA-MANx ("*Vaquero*"), and thus her duplicative individual claim must be dismissed.

Plaintiff's representative PAGA claims fail as a matter of law because (1) Plaintiff's underlying wage and hour claims fail and she is therefore not "aggrieved", (2) the PAGA claim must be certified under Federal Rules of Civil Procedure, Rule 23 and Plaintiff failed to timely certify this claim, (3) Plaintiff cannot prove California Labor Code violations on behalf of other allegedly "aggrieved" employees, and (4) Plaintiff failed to exhaust PAGA's administrative requirements.

Lastly, Plaintiff's claims fail as a matter of law because Ashley never employed Plaintiff.  At all relevant times, Plaintiff was employed by Stoneledge.

For the reasons discussed herein, Defendants respectfully request the Court grant summary judgment, or, in the alternative, partial summary judgment on each claim or issue herein.

## II.     STATEMENT OF RELEVANT FACTS

### A.     Stoneledge Furniture, LLC.

Stoneledge is a retail furniture company.  (Statement of Uncontroverted Fact ("SUF") 1.)  It operates 23 Ashley Furniture HomeStore retail furniture stores in

---

[1] Plaintiff's individual UCL claim fails for the same reasons her other claims fail.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

California.  (SUF 2.)  Stoneledge employs several job positions at its retail stores, including Sales Associates.  (SUF 3)

### B.    Plaintiff's Employment with Stoneledge.

Ashley Furniture Industries, Inc. did not employ Plaintiff.  (SUF's 4-15.) Plaintiff was employed by Stoneledge at its Palmdale, California Ashley Furniture HomeStore location ("Palmdale Store") from August 29, 2011 through May 18, 2013. (SUF 15.)  Plaintiff, a Sales Associate, was primarily engaged to sell furniture and related accessories to retail customers.  (SUF 16.)

### C.    Plaintiff Was Paid Under A Lawful Commission Plan.

Except for an initial two week training period for which Plaintiff was paid an hourly rate and overtime, Stoneledge compensated Plaintiff pursuant to Stoneledge's Sales Associate Commissions Compensation Pay Agreement ("Commission Compensation Agreement").  (SUF 18.)  She received weekly commission based on a percentage of the price of her delivered sales.  (SUF 19.)  In any week that Plaintiff did not earn commissions of at least $12.00 multiplied by the number of hours that Plaintiff worked in that week (referred to as the "**Guaranteed Minimum Weekly Pay**"), Stoneledge paid Plaintiff the **Guaranteed Minimum Weekly Pay** as an advance on future commissions.  (SUF 20.)  Plaintiff understood that she would be paid at least $12.00 per hour for each hour worked (i.e. the Guaranteed Minimum Weekly Pay).  (SUF 21.)

In any week that Plaintiff earned commissions greater than the Guaranteed Minimum Weekly Pay, Stoneledge recovered any prior advances paid to Plaintiff, if any.  (SUF 22.)  Even in weeks that Stoneledge received advances previously paid, Stoneledge never paid Plaintiff less than the Guaranteed Minimum Weekly Pay in any week.  (SUF 23.)  In any week where (1) Plaintiff earned a commission greater than the Guaranteed Minimum Weekly Pay and (2) Plaintiff paid off the advances she had received in prior weeks, Plaintiff received the remaining commissions that she earned in that week if her remaining commissions exceeded the Guaranteed Minimum

3.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

Weekly Pay.  (SUF 24.)

### D.   Plaintiff's Compensation During Her Employment.

Plaintiff worked a total of 80 weeks at Stoneledge, excluding the first two training weeks of her employment.  (SUF 25.)  In 53 of these 80 weeks, Plaintiff received commission payments that were greater than the Guaranteed Minimum Weekly Pay, after accounting for Stoneledge's recovery of advances during certain weeks.  (SUF 26.)  Plaintiff testified that she "sold a lot" of merchandise as a Sales Associate and that she was the best performing Sales Associate at the Palmdale store.  (SUF 28.)   Plaintiff never told anyone at Stoneledge that she had any trouble understanding her pay stub.  (SUF 29.)   Plaintiff also testified that she believed Stoneledge paid her all of the wages she thought she was owed at the time of her termination.  (SUF 30.)

### E.   Plaintiff Conceded She Was Required To Accurately Record Her Time, And She Did So.

At all times during Plaintiff's employment, all Sales Associates were required to accurately record all of their working time.  (SUF 31.)  Plaintiff understood that Stoneledge's policy required her to accurately record all her time, that she was strictly prohibited from falsifying her time records, and that it was her responsibility to swipe in and out of the Palmdale store's time clock machine at the start and end of her work days and meal breaks.  (SUF's 32-34.)  Plaintiff admitted that she accurately recorded her time during her employment.  (SUF 35.)

### F.   Stoneledge's Rest Break Policies and Plaintiff's Rest Breaks.

Stoneledge's rest break policies authorized and permitted California Sales Associates to take two to three rest periods of at least 10 minutes during each shift depending on the length of the shift.  (SUF's 36-37.)  Stoneledge discussed rest break topics with Plaintiff during her orientation.  (SUF 37.)   Plaintiff understood that during her employment Sales Associates could take 15-minute rest breaks.  (SUF 38.)  Plaintiff admitted she took rest breaks during her employment and she sometimes

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

4.

MPA ISO DEFS' MOTION FOR SUMMARY JUDGMENT

went to her car during her work shift to take medication for her medical condition. (SUF's 39-40.)  Plaintiff witnessed other Sales Associates who took fifteen-to-twenty-minute smoking breaks outside of the store more than ten times a day. (SUF 41.) Indeed, other Sales Associates took two to three fifteen-minute rest breaks each day in the store's break room, and/or they left the store to get lunch or coffee.  (SUF 42.)

## G.    Stoneledge's Meal Break Policies and Plaintiff's Meal Breaks.

Stoneledge's meal break policies provided for at least a 30-minute unpaid meal break for every five hours of work during each shift, and allowed Sales Associates who did not want to take a second meal break when working shifts less than 12 hours to waive the second meal break. (SUF's 17, 43.)  Stoneledge discussed meal break topics with Plaintiff during her orientation.  (SUF 44.)  Plaintiff conceded she was scheduled to take and took one hour meal breaks when she worked at the Palmdale store.  (SUF's 46-47.)

Plaintiff's time punch data shows that, on average, she punched out for more than 57 minutes in her first punched-out period of time during any shift that she was punched in for longer than five hours.  (SUF 50.)  Plaintiff understood that she needed to swipe out and back in of the Palmdale store's time-clock machine at the start and end of her meal breaks.  (SUF 51.)  Other California Sales Associates confirmed that they were "always able to take an hour for lunch," and that they did not perform any work while on their meal break.  (SUF 52.)  Another California Sales Associate confirmed that if a customer arrived at the Stoneledge store when the Sales Associate was going to take his meal break, he would ask another Sales Associate to help the customer or he would ask the customer to return after his meal break.  (SUF 53.)

Plaintiff admitted that she received Stoneledge's Meal Period Waiver For 10-12 Hour Shift ("Second Meal Period Waiver").  (SUF 54.)  The Second Meal Period Waiver provides two options: "Option 1: <u>Waive Meal Period</u>", and "Option 2: <u>Decline to Waive Meal Period</u>."  (SUF 55.)  Plaintiff chose to waive the second meal period by signing "Option 1."  (SUF 56.)  Plaintiff's time punch data shows (1) that Plaintiff did

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

5.

MPA ISO DEFS' MOTION FOR SUMMARY JUDGMENT

not work any shift over twelve hours during her employment and (2) that, on average, Plaintiff punched out for more than 32 minutes in her second punched-out period during any shift where she was punched in for longer than ten hours.  (SUF's 57, 58)

Plaintiff took her meal breaks when she was scheduled to do so if she was not working with a customer.  (SUF 59.)  When Plaintiff was with a customer at the time that she was scheduled to take her meal break, Plaintiff chose not to transfer the customer to another Sales Associate and decided to forgo taking a meal break because she preferred to earn the commission from the sale to the customer than take a meal break.  (SUF 60.)  Plaintiff **does not recall ever complaining to** anyone at Stoneledge about not receiving a meal break.  (SUF 61.)

## H.   Stoneledge's Employee Reimbursement Policies and Plaintiff's Alleged Expenses.

Stoneledge's Employee Handbook provides that an employee's supervisor must "pre-approve[] in writing" travel expenses for business purposes in "advance of the travel[,]" and that reimbursement is "contingent upon [the employee's] submission of a properly completed expense report form, fully documented by accompanying receipts."  (SUF's 17, 63.)  Plaintiff received a reimbursement for driving mileage during her employment.  (SUF 64.)

Plaintiff testified that she incurred expenses for the cost of (1) stamps and flyers, (2) driving to potential customers, (3) making calls from her personal phone, and (4) taking potential customers out to lunch.  (SUF 65)  Stoneledge did not require Plaintiff: (1) to buy stamps or create flyers for customers, (2) to drive to potential customers, (3) to make customer follow-up calls from her home phone or cell phone, or (4) to take potential customers out to lunch, as part of Plaintiff's performance of her duties as a Sales Associate.  (SUF 66.)  As a result, none of the expenses can be considered "reasonable business expenses" as a matter of law.  (SUF 66.)  Plaintiff concedes that her supervisor instructed her that Stoneledge would not reimburse her for the stamps, or flyers, or for taking potential customers out to lunch.  (SUF's 67,

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

MPA ISO DEFS' MOTION FOR SUMMARY JUDGMENT

68.)  Plaintiff also never received approval from her supervisor for gas mileage or wear and tear reimbursement before she allegedly drove to potential customers.  (SUF 69.)

Plaintiff did not submit to Stoneledge (1) any receipts or records concerning her gas mileage or wear and tear of her car, (2) any cell phone bills, or (3) any receipts for lunches with potential customers.  (SUF 70.)  Plaintiff does not have any receipts or records (1) concerning how much gas she used in connection with her allegedly driving to potential customers, or (2) concerning her alleged lunches with potential customers.  (SUF 71.)  Plaintiff also admitted that she was guessing the amount of alleged expenses she incurred for taking potential customers out to lunch and making customer follow-up calls on her cell phone.  (SUF 72.)  Plaintiff also does not know how much wear and tear was caused to her car as a result of driving to potential customers.  (SUF 73.)

Plaintiff testified that she received a weekly list of customers to whom Stoneledge had delivered products, and to whom Plaintiff had to make customer follow-up calls.  (SUF 74.)  Stoneledge provided these weekly customer lists to California Sales Associates so that they could call the customers to thank them for their purchase and to continue the relationship with the customers. (SUF 75.)  Plaintiff made customer follow-up calls from the Palmdale store every week and Stoneledge never directed Plaintiff in writing to make these calls from home.  (SUF 76.)  As part of the customer follow-up calls, Plaintiff needed to access the computer at the Palmdale store to identify information about customers' transactions.  (SUF 77.)  Plaintiff understood that if she did not complete the calls, then she would not be able to go on the sales floor when she came to work.  (SUF 78.)  To the extent she made any follow-up calls from home or from her cell phone, she did so at her own discretion like her decision not to take the meal breaks provided to her.  Plaintiff's unilateral decision to make her follow-up calls from home rather than at the store was solely within Plaintiff's discretion because she wanted to maximize her time on the

sales floor.  Other Sales Associates made their customer follow-up calls from the stores as contemplated by Stoneledge's policies.  (SUF 79.)  Stoneledge has never had a policy of requiring Sales Associates to make such calls from home or from their cell phone.  (SUF 80.)

## I. Plaintiff Has No Knowledge of Stoneledge's Policies And Practices Or Sales Associates' Experiences at Stores Other Than the Palmdale Store.

Plaintiff only worked at Stoneledge's Palmdale store.  (SUF 82.)  As such, Plaintiff does not know (1) how many other Sales Associates worked for Stoneledge in California during her employment (SUF 83), (2) how meal periods were provided at other stores (SUF 84), (3) whether any other Sales Associate received one hour of pay as a result of having missed a meal break during her employment (SUF 85), (4) whether other stores had meal break policies that differed from the Palmdale store's policies (SUF 86), (5) what Sales Associates at other stores did in terms of taking rest breaks (SUF 87), (6) how Stoneledge currently pays its Sales Associate (SUF 88), and (7) anything about Stoneledge's meal or rest break policies since Plaintiff stopped working for Stoneledge.  (SUF 89.)  In fact, after March 29, 2014, Sales Associates in California were paid hourly and overtime as applicable, plus incentives.  (SUF 90.)

Plaintiff also admitted that she does not know (1) whether any other Sales Associate ever submitted an expense report for reimbursement (SUF 91), (2) whether Stoneledge reimbursed other Sales Associates for any calls they made with their cell phones (SUF 92), (3) whether Sales Associates at the Palmdale store spent as much time as Plaintiff allegedly did making customer calls (SUF 93), or (4) whether any other Sales Associate prepared flyers similar to those that Plaintiff allegedly created (SUF 94.)  Plaintiff testified that she believes that "[e]very manager run [sic] different in every store."  (SUF 95.)

## J. Plaintiff Seeks PAGA Penalties Only On Behalf of Three Individuals.

Plaintiff testified that she is seeking penalties in this case only on behalf of three other former Stoneledge employees: (1) Judy Amper, (2) "Frank," (3)

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

8.

MPA ISO DEFS' MOTION FOR SUMMARY JUDGMENT

"Winston." (SUF 96.)  Plaintiff testified that she is seeking penalties on behalf of (1) Judy Amper because Plaintiff allegedly witnessed Amper get hurt by Elizabeth Bell (SUF 97), (2) on behalf of Frank because Frank was allegedly verbally abused by "Idalia" and by Elizabeth Bell (SUF 98), and (3) on behalf of Winston because "Elizabeth" allegedly screamed and yelled at Frank and stole his sales.  (SUF 99.)

**K.    The Certified Wage Statement Class in the *Vaquero* Action.**

The *Vaquero* matter pending before this Court includes a certified wage statement class that involves wage statements issued to California Sales Associates from August 24, 2008 through the present.  (SUF 100.)  It is uncontroverted that Plaintiff received papers from the *Vaquero* matter, the address on the Notice of Class Action in *Vaquero* contained her correct name and address, and that she did not opt-out. (SUF's 101-102.)

## III.    LEGAL ARGUMENT

**A.    Legal Standard for Summary Judgment.**

Summary judgment is appropriate if the pleadings, discovery responses, and declarations, if any, show there is no genuine issue of material fact.  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Coverdell v. Dept. of Social & Health Serv.*, 834 F.2d 658, 768 (9th Cir. 1987).   In a motion for summary judgment, the moving party is not required to produce evidence showing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 325.  Rather, the moving party's burden is satisfied by showing an absence of evidence to support the non-moving party's case.  *Id.*  Once the moving party shows the absence of evidence, the burden shifts to the nonmoving party to establish a genuine issue of fact.  *Id.*, 477 U.S. at 323.  Summary judgment is appropriate where the non-moving party fails to make a showing sufficient to establish a genuine issue of fact. *Id.* "A 'scintilla of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,' is not sufficient to present a genuine issue as to a material fact."  *United Steelworkers of Am. v. Phelps Dodge*, 865 F.2d 1539, 1542 (9th Cir. 1989).  As a matter of law and uncontroverted

9.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

material fact, each and every one of Plaintiff's claims fail.

**B.** **Plaintiff's Overtime Claim Fails Because She Is Exempt Under The Commissioned Sales Exemption.**

Plaintiff is not entitled to overtime wages because she was properly classified as a commissioned salesperson and thus exempt from overtime wages. Plaintiff does not appear to dispute the commission sales exemption in its entirety. (SUF 27.) Plaintiff only contests the applicability of the exemption during workweeks when Plaintiff received an advance payment. (SUF 27.) However, this is legally irrelevant because Stoneledge has a bona fide commission plan during all her 80 workweeks.

As an operator of retail furniture stores, Stoneledge falls under California Industrial Wage Order ("IWC") 7-2001. (SUF 2); *See* CAL. CODE REGS., tit. 8, § 11070, subd. 2(H) (defining "Mercantile Industry" as "any . . . business . . . operated for the purpose of . . . selling . . . goods . . . at . . . retail") Section 3(A) of IWC 7-2001 requires employers to pay overtime wages to employees working more than eight hours in a workday or forty hours in a workweek. Section 3(D) of the same wage order provides an exemption from the overtime requirement when an employee's earnings exceed one and one-half times the minimum wage if more than half of that employee's compensation represents commissions.

For an employee's wages to constitute "commissions" for the purpose of IWC 7-2001, (1) her principal function must be selling a product or service and (2) the amount of her compensation must be a percentage of the price of the product or service. *Keyes Motors, Inc. v. Division of Labor Standards Enforcement*, 197 Cal. App. 3d 557, 561-63 (1987). Based on IWC 7-2001 and *Keyes*, four elements must exist for the commissioned sales exemption to apply (1) Plaintiff's principal function must be selling a product or service, (2) Plaintiff's compensation for the sales of the product or service must be a percentage of the price of the product or service, (3) Plaintiff's earnings must exceed one and one-half times the minimum wage,

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

and (4) more than one-half of her earnings must represent commissions. *Erichs v. Venator Group, Inc.*, 128 F. Supp. 2d 1255, 1261-62 (N.D. Cal. 2001) (granting summary judgment to employer on state law overtime claim based on commissioned sales exemption). The uncontroverted facts discussed herein establish that each of these elements is satisfied and that Defendants are entitled to summary judgment on Plaintiff's overtime claim.

### 1. Plaintiff's principal function was to sell furniture on commission.

Plaintiff worked for Stoneledge as a Sales Associate and her "principal function" was to sell furniture and accessories to customers. (SUF 16.) Stoneledge paid Plaintiff based on a percentage of the price of Plaintiff's delivered sales to customers. (SUF 19.) Thus, it is undisputed that the first and second elements of the exemption were satisfied.

### 2. Plaintiff's weekly earnings exceeded one and one-half times the minimum wage.

The California Supreme Court recently established that an employer satisfies the "minimum earnings prong" of the commission exemption when the employer "*actually pays* the required minimum earnings." *Peabody v. Time Warner Cable, Inc.*, 59 Cal. 4th 662, 669-70 (2014) (emphasis in original). Stoneledge paid Plaintiff a weekly commission payment and, when necessary, the Guaranteed Minimum Weekly Pay (also referred as the "draw") in each week that Plaintiff did not earn commissions that exceeded the Guaranteed Minimum Weekly Pay as an advance on future commissions. (SUF's 19-20.) California courts have upheld the validity of such draw commission plans. *See, e.g., Muldrow v. Surrex Solutions Corp.*, 208 Cal. App. 4th 1381, 1397 (2012) (upholding draw commission plan that paid "a draw ranging from approximately $3,000 to $5,500 per month [as] an advance on commissions to be earned in the future"); *see also Agnew v. Cameron*, 247 Cal. App. 2d 619 (1967) (analyzing chargeback provisions in a draw commission plan and noting, "advances to an employee will be presumed to . . . fix the employee's minimum compensation").

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

11.

MPA ISO DEFS' MOTION FOR SUMMARY JUDGMENT

Plaintiff's contention that she is entitled to overtime "during draw weeks because the draw payment was not guaranteed, but ultimately deducted from future commissions," fails as a matter of law.  (Docket No. 52, at 6:14-22.)  Plaintiff's reliance on *Peabody v. Time Warner Cable, Inc.*, 59 Cal. 4th 662 (2014) in support of this contention is misplaced because, unlike in *Peabody*, Plaintiff had a guaranteed minimum that exceeded one and one-half times the minimum wage, satisfying the third element of the exemption.  (SUF's 19-24.)  *Peabody* involved an employer that compensated the plaintiff through a bi-weekly base salary and a monthly commission payment and the Court rejected the employer's argument that the plaintiff's "commissions, which were always paid on the final biweekly payday of each month, should be attributed to the weeks of the *preceding* month."  *Peabody*, 59 Cal. 4th 664, 668-69.  The Court held that satisfying the minimum earnings prong of the exemption "depends on the amount of the wages *actually* paid in a pay period."  *Id.* Here, unlike *Peabody*, Stoneledge always paid Plaintiff a weekly compensation of more than $12.00 per hour for each hour that Plaintiff worked.  (SUF's 19-24.)  Thus, it is undisputed that Plaintiff's weekly earnings exceeded one and one-half times the minimum wage and the third element of the exemption was satisfied.[2]

### 3.    More than one-half of Plaintiff's earnings represent commissions.

Stoneledge's Commission Compensation Agreement was a bona fide commission plan that satisfied the final prong of the exemption because Plaintiff's weekly commissions regularly exceeded the Guaranteed Minimum Weekly Pay.  *See Muldrow v. Surrex Solutions Corp.*, 208 Cal. App. 4th 1381 (2012) (rejecting plaintiff's contention that defendant's commission system was not bona fide where defendant's employee testified that he "routinely" received compensation in excess of his draws).  In 53 of the 80 weeks that Plaintiff worked for Stoneledge, or **66%** of the

---

[2] According to the Department of Labor's website, http://www.dol.gov/whd/state/stateMinWageHis.htm, the minimum wage in California in 2011, 2012, and 2013 was $8.00.  (SUF 103.)

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

weeks worked, Plaintiff received commission payments that were greater than the Guaranteed Minimum Weekly Pay, after accounting advances provided in prior weeks. (SUF's 25, 26.) To be sure, Plaintiff admitted that she **"sold a lot"** and earned so much commission that she believed she was **the best performing** Sales Associate at the Palmdale store. (SUF 28.) Thus, Stoneledge's commission compensation system was a bona fide system satisfying the fourth prong of the exemption.

To the extent that Plaintiff contends that she is entitled to overtime wages because she performed work after she clocked out for her meal break or at the end of her shift, this argument does not rescue her claim from summary judgment. Plaintiff admitted that she understood she was required to accurately record her time worked and that it was her responsibility to swipe in and out of the Palmdale store's time clock machine at the start and end of her work days and meal breaks. (SUF's 32-34.) Plaintiff also admitted that she accurately recorded her time during her employment. (SUF 35.)

Accordingly, Plaintiff's overtime claim fails as a matter of law because Plaintiff was properly classified as a commissioned sales exempt employee throughout her employment with Stoneledge, and she was properly compensated for all of her properly recorded hours.

### C. Plaintiff's Rest Break Claim Fails as a Matter of Law Because Stoneledge Authorized and Permitted Plaintiff to Take Legally Compliant Rest Breaks.

Labor Code Section 226.7 provides that "[n]o employer shall require any employee to work during any ... rest period mandated by an applicable order of the [IWC]." IWC 7-2001 section 12 requires that "[e]very employer shall *authorize and permit* all employees to take rest periods" of ten minutes for every four hours worked. However, employers are "not obligated to require employees to take such a break," but instead they "need only" to make rest breaks "available[.]" *Hadjavi v. CVS Pharmacy, Inc.*, No. CV 10-04886 SJO (RCx), 2011 WL 3240763, *3 (C.D. Cal., July 13.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

MPA ISO DEFS' MOTION FOR SUMMARY JUDGMENT

25, 2011) (confirming that employee must have been "prevented" from taking a break in order for "a potential violation" to exist); *see also Porch v. Masterfoods USA, Inc.*, 685 F. Supp. 2d 1058, 1074-75 (C.D. Cal. 2008) (confirming that "the law merely requires employers to make the rest breaks available to its employees"); *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1086 (N.D. Cal. 2007) (affirming that the "mere suggestion that [plaintiff] was coerced into foregoing breaks" was insufficient to create material dispute of fact); *see also Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1104 (2007) (a premium payment is owed only if employee was "required to work through a meal or rest period").

Here, Stoneledge's rest period policies authorized and permitted California Sales Associates to take two to three rest periods of at least 10 minutes during each shift depending on the length of the shift.  (SUF 36.)  Plaintiff received Stoneledge's rest period policy and Stoneledge discussed rest break topics with her during her orientation (SUF's 17, 36, 37.)  Plaintiff also conceded that she **understood that she could take rest breaks** and that **Stoneledge allowed Sales Associates to take fifteen-minute rest breaks**.  (SUF's 38-39.)

Plaintiff did in fact take rest breaks during her employment.  (SUF 39.)  Indeed, Plaintiff admitted that she sometimes left the store to go to her car in the middle of the workday.  (SUF 40.)  Plaintiff also witnessed other Sales Associates at the Palmdale store who took 15-20 minute smoking breaks outside of the store more than ten times a day.  (SUF 41.)  Other California Sales Associates who worked at the same time as Plaintiff took **two to three fifteen-minute rest breaks each day** in the store's break room, and/or they left the store to get lunch or coffee.  (SUF 42.)  Accordingly, there can be no dispute that Stoneledge authorized and permitted Plaintiff to take rest breaks, and thus Plaintiff's rest break claim fails as a matter of law.

**D.**  **Plaintiff's Meal Break Claim Fails Because Stoneledge Provided Plaintiff Legally Compliant Meal Breaks.**

California Labor Code section 512 and IWC 7-2001 section 11 provide that (1)

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

an employer may not employ an employee for more than 5 hours without providing the employee a 30-minute duty-free meal break and (2) may not employ an employee for more than 10 hours without providing the employee a second 30-minute duty-free meal break, except that if the total hours worked is no more than 12 hours, the second meal break may be waived by mutual consent if the first meal break was not waived. An employer satisfies its obligation "if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." *Brinker Restaurant Corp. v. Sup. Ct.,* 53 Cal. 4th 1004, 1040-41 (2012) ("Bona fide relief from duty and the relinquishing of control satisfies the employer's obligations, and **work by a relieved employee during a meal break does not thereby place the employer in violation** of its obligations and create liability for premium pay") (emphasis added); *see also Porch*, 685 F. Supp. 2d at 1069-71 (employee's claim that he skipped some meal periods does not make the defendant liable if employer provided meal periods for use by the employees).

Here, Stoneledge's meal break policies provided a 30-minute unpaid meal break for every five hours of work during each shift and allowed Sales Associates who did not want to take a second meal break when working shifts of less than 12 hours to waive the second meal break. (SUF's 43, 54, 55.) Plaintiff received Stoneledge's meal break policy and Stoneledge discussed the meal break topics during Plaintiff's orientation. (SUF's 17, 44, 54.) Plaintiff was aware of Stoneledge's meal break policy because **Stoneledge issued written warnings to Plaintiff** because she failed five times to take a timely first meal break. (SUF 49.)

Plaintiff admitted that Stoneledge provided **one-hour meal breaks** to Sales Associates. (SUF 45.) Plaintiff was scheduled to take and admitted she took one hour meal breaks.[3] (SUF's 46, 47). Plaintiff's time punch data also confirms that the

---

[3] Plaintiff presumably took advantage of her meal breaks because she was on a "special diet" during her employment. (SUF 48.)

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

15.

MPA ISO DEFS' MOTION FOR SUMMARY JUDGMENT

1   **average length of Plaintiff's first meal breaks was more than 57 minutes**.[4]  (SUF

2   50.)   Several California Sales Associates who worked at the same time as Plaintiff

3   confirmed that they were "always able to take an hour for lunch," and that they did not

4   perform any work while on their meal break.  (SUF 52.)

5        Plaintiff also agreed in writing to waive her second meal break.  (SUF's 54-56.)

6   The second meal period waiver expressly provided Plaintiff two options in separate

7   paragraphs: (1) to waive her second meal period or (2) to decline to waive her meal

8   period and Plaintiff signed the option agreeing to waive her second meal period.

9   (SUF's 55, 56.)   Plaintiff's second meal period waiver applied to each shift that she

10  worked over ten hours because Plaintiff did not work any shifts greater than twelve

11  hours.  (SUF's 56, 57); *see* CAL. LAB. CODE. § 512 ("if the total hours worked is no

12  more than 12 hours, the second meal period may be waived by mutual consent of the

13  employer and the employee").   Plaintiff's time punch data also confirms that the

14  **average length of Plaintiff's second meal break was more than 32 minutes**, which

15  demonstrates that Plaintiff understood that she could take a second meal period if she

16  decided to notwithstanding her second meal period waiver.  (SUF 58.)

17       As a matter of law, Plaintiff cannot establish a meal break claim solely based on

18  her own decision not to take the one hour meal breaks Stoneledge's policies provided.

19  To allow otherwise flies in the face of the California Supreme Court's decision,

20  *Brinker*, in which it refused to require employers to ensure meal periods are taken.

21  Any argument that Plaintiff was "required" to continue working with customers in lieu

22  or in spite of taking a meal break also fails as a matter of law because Stoneledge is

23  not required to ensure Plaintiff take her meal breaks.  *See Brinker Restaurant Corp.*,

24  53 Cal. 4th at 1040-41 (employer is "not obligated to police [employee's] meal breaks

25  [to] ensure no work thereafter is performed").   Plaintiff took her meal breaks when she

26

27  ───────────────

    [4] Plaintiff confirmed that she accurately recorded her time and that she understood that
28  she needed to swipe out of the Palmdale store's time-clock machine at the start of her
    meal breaks and to swipe back in at the end of her meal breaks.  (SUF's 31-35.)

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

1  was scheduled to do so and she was not working with a customer.  (SUF 59.)  Plaintiff

2  also confirmed that when she was scheduled to take a meal break and she was with a

3  customer, **she chose** not to transfer the customer to another Sales Associate because

4  she did not want to lose the commission on the sale, i.e., **she chose** to forgo taking her

5  meal break because **she decided** that she rather earn a commission on the sale to the

6  customer than take a meal break.[5]  (SUF 60.)

7  Put simply, Stoneledge provided Plaintiff the opportunity to take meal breaks,

8  and Plaintiff's decision to "work [] during a meal break does not thereby place

9  [Stoneledge] in violation of its obligations and create liability for premium pay[.]"  *Id.*

10  at 1041.  Indeed, Plaintiff took her meal breaks when she was scheduled to do so if

11  she was not working with a customer and another California Sales Associate who

12  worked at the same time as Plaintiff confirmed that if a customer arrived when he was

13  going to take his meal break, he would ask another Sales Associate to help the

14  customer or ask the customer to return after his meal break.   (SUF's 53, 59.)

15  Accordingly, Plaintiff's meal break claim fails as a matter of law.

**E.    Plaintiff's Reimbursement Claim Fails as a Matter of Law Because Plaintiff Did Not Incur Reimbursable Expenses in Direct Consequence of the Discharge of Her Duties as a Sales Associate.**

18  To prove her Section 2802 claim, Plaintiff must establish that her out-of-pocket

19  expenses were (1) "necessarily" incurred (2) "in direct consequence of the discharge

20  of his or her duties, or of his or her obedience to the direction of the employer[.]"

21  CAL. LAB. CODE. § 2802(a); *see Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th

22  554, 568 (2007) (confirming that the employer "may consider . . . whether each of

23  those expenses was 'necessary,' which in turn depends on the reasonableness of the

24  employee's choices"); *see also Grissom v. Vons Companies, Inc.*, 1 Cal. App. 4th 52,

25  58 (1991) ("[A]scertaining what was a necessary expenditure will require an inquiry

---

[5] Stoneledge's Human Resources Department did not receive any complaint from Plaintiff during her employment about not receiving a meal break or being prevented by work from taking a meal break.  (SUF 62.)

17.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

into what was reasonable under the circumstances.")   An employer's duty to reimburse under Labor Code section 2802 is triggered only when the employer "knows or has reason to know that the employee has incurred a **reimbursable** expense." *Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901, 903 (N.D. Cal. Apr. 30, 2009) (emphasis added).

Plaintiff testified that she allegedly incurred expenses for the cost of (1) stamps and flyers that she created and distributed, (2) gas mileage and wear and tear to her car for driving to customers, (3) customer follow-up calls made on her personal phone, and (4) for lunches with potential customers.  (SUF 65.)  Plaintiff's claim fails as a matter of law because Stoneledge did not require or even encourage Plaintiff to incur such alleged expenses as part of her performance of her duties as a Sales Associate. (SUF 66.)   Plaintiff admitted that Stoneledge did not require her to prepare or distribute flyers or to drive to potential customers and that she never received anything in writing from Stoneledge directing her to make customer follow-up calls from home. (SUF's 66, 76.) As such, these expenses were not "necessarily" incurred "in direct consequence of [Plaintiff's] discharge of [] her duties." CAL. LAB. CODE. § 2802(a).

Stoneledge's Employee Handbook makes clear that an employee's supervisor must approve travel expenses in writing in advance of the travel, and that reimbursement is "**contingent upon** [the employee's] submission of a properly completed expense report form, fully documented by accompanying receipts." (SUF 63) (emphasis added).  Plaintiff was certainly aware of Stoneledge's reimbursement practice because she received a reimbursement for driving mileage during her employment.  (SUF 64.)  Despite this policy, Plaintiff admitted that (1) she **never received approval** from her supervisor for her alleged expenses, (2) her **supervisor expressly confirmed that Stoneledge would not reimburse** her for such expenses, and/or (3) she incurred these expenses **knowing at the time that Stoneledge would not reimburse her** for those expenses.  (SUF's 67-70.)  Plaintiff also did not submit any receipts or records to Stoneledge concerning these expenses and she admitted that

18.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

MPA ISO DEFS' MOTION FOR SUMMARY JUDGMENT

**she does not have any receipts or records** for many of these expenses and she **had to guess the amount** of many of these expenses.  (SUF's 70-72.)  Thus, Stoneledge did not have a duty to reimburse these expenses because it did not "know[] or [have] reason to know" the specific basis and amount of Plaintiff's alleged expenses.  *See Stuart*, 641 F. Supp. 2d at 903.  Plaintiff's Section 2802 claim fails as a matter of law.[6]

### F.    Plaintiff's Claims For Penalties Pursuant to Labor Code Sections 203, 226, and 1174.5 Fail as a Matter of Law Because Stoneledge Did Not Knowingly, Intentionally, or Willfully Violation Any of These Provisions.

#### 1.    Section 203 waiting-time penalties

Plaintiff seeks Section 203 waiting-time penalties for "willfully" failing to pay termination wages.  A "good faith dispute" that any wages are due precludes any recovery on the part of the employee.  *See Nordstrom Comm'n Cases*, 186 Cal. App. 4th 576, 584 (2010) ("There is no willful failure to pay wages if the employer and employee have a good faith dispute as to whether and when the wages were due"); *see also Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1201-04 (2008); *see also* 8 CAL. CODE. REG. § 13520.  The good faith dispute defense can be presented for the first time during litigation.  *See Amaral*, 163 Cal. App. 4th at 1203-04 ("Precisely when the employer formulated such a defense is, it seems to us, beside the point.")

Here, Stoneledge's policy was to pay all final wages immediately to Sales Associates, including all wages owed, whether a Sales Associate is terminated voluntarily or involuntarily.  (SUF 81.)  Plaintiff testified during her deposition that **she believed that Stoneledge paid her all of the wages that she thought she was owed at the time of her termination**.  (SUF 30.)  Moreover, as described more

---

[6] To the extent Plaintiff contends she is entitled to reimbursement pursuant to *Cochran v. Schwan's Home Serv., Inc.*, 228 Cal. App. 4th 1138 (2014), this argument fails because the *Cochran* decision "did not effect a 'change in the law[,]'" but rather it "merely confirmed" that an employee may seek reimbursement from an employer "when an employer attempts to pass its operating expenses onto its employees." *Andresen v. International Paper Co.*, No. 2:13-cv-02079-CAS(AJWx), 2014 WL 5419426, *2 (C.D. Cal. Oct. 21, 2014).  There is no evidence that Stoneledge intended to pass its operating expenses onto Plaintiff.

19.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

thoroughly above, Stoneledge had a good faith belief that it had properly classified Plaintiff as a commissioned sales employee exempt from overtime wages.  Thus, Plaintiff's Section 203 claim based on her overtime claim fails as a matter of law.  *See Tetsuo Akaosugi v. Benihana Nat'l Corp.*, No. C-11-01272-WHA, 2012 WL 3999855, at \*8 (N.D. Cal. Sept. 7, 2012) (denying Section 203 claim based on a finding that there was a good faith dispute whether the defendant owed the plaintiffs any unpaid wages); *Ulin v. Alaea-72, Inc.*, No. C-09-3160-EDL, 2011 WL 723617 (N.D. Cal. Feb. 23, 2011) (denying Section 203 penalties because of "existence of a good faith dispute").  Plaintiff's Section 203 claim based on alleged meal or rest break violations also fails as a matter of law because meal and rest period premiums are not wages for the purposes of Section 203 penalties.  *See Angie Singletary v. Teavana Corporation*, No. 5:13-CV-01163-PSG, 2014 WL 1760884, at \*3-4 (N.D. Cal. Apr. 2, 2014); *Jones v. Spherion Staffing*, LLC, No. LA-CV-11-06462-JAK-JCx, 2012 WL 3264081, at \*8-9 (C.D. Cal. 2012), interpreting and applying *Kirby v. Immoos Fire Protection Inc.*, 53 Cal. 4th 1244, 1256 (2012).  Thus, even if Plaintiff succeeds on her underlying wage and hour claims, she is not entitled to Section 203 penalties as a matter of law.

### 2.     Sections 226 and 1174 penalties

Plaintiff seeks Section 1174.5 penalties for "willfully" failing to maintain payroll records, and Section 226 penalties for "knowing and intentional" failure to supply accurate itemized wage statements to Plaintiff.  It is also well established that a good faith dispute as to whether Stoneledge's conduct was a "knowing and intentional" or "willful" violation of Sections 226(a) and 1174(d) precludes recovery based on these provisions as a matter of law.  *See Pedroza v. Petsmart, Inc.*, No. CV-11-298-GHK-(DTBx), 2012 WL 9506073, at \*4-5 (C.D. Cal. June 14, 2012) (granting summary judgment on Section 226 claim because good faith dispute existed as to plaintiff's exemption and noting that "the 'good faith dispute' defense applies to Labor Code § 226(e))"); *Hurst v. Buczek Enters., LLC*, No. C-11-1379-EMC, 2012 WL 1564733, at &17 (N.D. Cal. May 2, 2012) (same); *Dalton v. Lee Publ'ns, Inc.*,

20.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

MPA ISO DEFS' MOTION FOR SUMMARY JUDGMENT

No. 08-CV-1072-BTM-(NLS), 2011 WL 1045107 (S.D. Cal. Mar. 22, 2011) (granting summary judgment on plaintiff's Sections 226 and 1174.5 claims "due to Defendant's good faith belief that Plaintiff is an independent contractor"); *Reber v. AIMCO,* No. CV-07-0607-DOC-(RZx), 2008 WL 4384147 (C.D. Cal. Aug. 25, 2008) (employer awarded summary judgment on Sections 203 and 226 claims because "a good faith dispute exists as to whether [employees] are exempt").  Plaintiff's Sections 226 and 1174 claims fail as a matter of law because, as discussed above, Stoneledge reasonably believed that Plaintiff's payroll records and wage statements were maintained and issued in accordance with California law.[7]

Plaintiff's Section 226 claim fails for the additional reason that she is a member of the certified wage statement class in the matter pending before the Court titled *Ricardo Bermudez Vaquero v. Ashley Furniture Industries, Inc., et al.*, No. CV-12-8590-PA-MANx ("*Vaquero*").  (SUF's 94-96.)  The *Vaquero* certified wage statement class involves wage statements issued to California Sales Associates from August 24, 2008 through the present, which entirely overlaps with Plaintiff's Section 226 claim from August 2011 through May 2013.  (SUF 100.)  It is uncontroverted that Plaintiff received papers from the *Vaquero* matter, the address on the Notice of Class Action in *Vaquero* contained her correct name and address, and she did not opt out.  (SUF's 101, 102.)  It is indisputable that the wage statements at issue in this matter are a part of the certified class in *Vaquero*.  Thus, the Court should dismiss the duplicative Section 226 claim.

### G.     Plaintiff's Unfair Competition Claim Fails as a Matter of Law.

Plaintiff's representative UCL claim fails as a matter of law because she failed to timely certify a class and this Court has already dismissed her class claims.  *See* Dkt. 49; *see also Arias v. Superior Court*, 46 Cal. 4th 969, 980 (2009) (affirming that

---

[7] Plaintiff also admitted that she never told anyone at Stoneledge that she had any trouble understanding her paystubs. *See Elliot, supra*, 572 F. Supp. 2d at 1180-81 (plaintiff must prove actual injury); *Kimoto v. McDonald's Corp.*, No. CV 06-3032 PSG (FMOx), 2008 WL 4069611, *6 (C.D. Cal. Aug. 28, 2008) (same).

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

to pursue a representative action under the UCL a plaintiff must satisfy class action requirements).  Plaintiff's individual UCL claim also fails as a matter of law because, as argued above, Plaintiff's underlying claims fail as a matter of law.  *See Irwin v. Mascott*, 94 F. Supp. 2d 1052, 1057 (N.D. Cal. 2000) (affirming that a UCL claim "requires a violation" of the "borrow[ed]" predicate statute and "[a] defense to the underlying offense is a defense under the [UCL]").

### H.    Plaintiff's PAGA Claim Fails as a Matter of Law.

Plaintiff's PAGA claim fails for several reasons.  First, Plaintiff's PAGA claim is derivative of her underlying wage and hour claims and thus fails for the reasons discussed above.  *Elliot v. Spherion Pacific Work, LLC*, 572 F. Supp. 2d 1169, 1181-82 (2008) (granting summary judgment on PAGA claim "wholly dependent" on failed Labor Code claims); *see also Stafford v. Dollar Tree Stores, Inc.*, No. 2:13-CV-1187-KJM-CKD, 2014 WL 6633396 (E.D. Cal. Nov. 20, 2014) (affirming that PAGA "require[s] a plaintiff to have suffered an injury"); Cal. Lab. Code § 2699.3(c).

Second, Plaintiff's PAGA claim may only be pursued through an action certified under Federal Rules of Civil Procedure, Rule 23.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2451, 2551 (2011) (noting that because a "class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only,'" representative actions must satisfy the requirements of Rule 23); *see also Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010) (affirming that "Rule 23 *automatically* applies 'in all civil actions and proceedings in the United States district courts'") (quoting Fed. R. Civ. P. 1) (emphasis in original); Fed. R. Civ. P. 23(a) (setting forth the "prerequisites" that must be satisfied before an individual may maintain a lawsuit as a "representative part[y]"). Because Plaintiff failed to comply with Local Rule 23-3, she cannot certify her PAGA claim and thus this claim fails as a matter of law.  (SUF 104.)

Third, Plaintiff cannot prove a "Labor Code violation" as to "each and every individual on whose behalf" she seeks to recover PAGA penalties.  *Hobbs-Rines v.*

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

*Seagate Technologies, LLC*, No: C-08-05430-SI, 2009 WL 513496 (N.D. Cal. Mar. 2, 2009).  Plaintiff testified that she seeks PAGA penalties only on behalf of three former Stoneledge employees based on Plaintiff's belief that they suffered **non-Labor Code violations**, such as verbal abuse.  (SUF 96-99.)  Plaintiff also lacks knowledge about Stoneledge's policies and practices at other stores and since the end of her employment, and about other Sales Associates' experiences.  (SUF's 82-94.)  Plaintiff conceded that **she believes that "[e]very manager run [sic] different in every store."**  (SUF 95.)  Moreover, as discussed above, Plaintiff's claims are based on her own personal decisions: to forgo lunch breaks because she did not want to transfer the sale to another Sales Associate to complete; to make fliers and buy stamps for fliers; to make follow-up phone calls from home or on her cell phone rather than during working hours in order to allow her to maximize time on the sale floor; and to take potential customers out to lunch.  However, Plaintiff's own decisions to engage in activity that was not required by Stoneledge's policies or practices necessarily defeats the representative claim because her own personal decisions cannot be deemed representative evidence of any other Sales Associate's choices or decisions.

Fourth, Plaintiff's letter to the Labor and Workforce Development Agency ("LWDA") does not contain sufficient "facts and theories to support the alleged [overtime, meal break, and rest break] violation[s][.]"  Cal. Lab. Code § 2699.3(a); *see Alcantar v. Hobart Serv.*, No. 11-CV-1600-PSG, 2013 WL 228501, at *3-4 (C.D. Cal. Jan 22, 2013) (concluding that allegation that the employer failed "to provide off-duty meal periods and to pay compensation for work without off-duty meal periods to its California employees" did not adequately set forth "facts and theories").

Here, Plaintiff's LWDA letter simply tracks the Labor Code's and Wage Order's legal standard without providing factual allegations to bolster these claims.  (SUF 105.)  The subject matter of Plaintiff's overtime claim in the Complaint is also not covered in the LWDA letter.  The letter asserts straightforward allegations of failure to pay overtime wages, whereas the Complaint asserts a theory that Plaintiff

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

was misclassified.   (SUF 105; Docket No. 1, Attachment No. 1 (Complaint).) Plaintiff has subverted the purpose of the PAGA notice requirement because her overtime claim in the Complaint is based on an entirely different theory (i.e., "misclassification"), as to which the LWDA was not given the opportunity to investigate.  Accordingly, Plaintiff's PAGA claim fails as a matter of law.

## I.      Ashley Never Employed Plaintiff.

Plaintiff admitted that she understood that Stoneledge was her employer, that she had never heard of Ashley Furniture Industries, Inc. before her deposition, and that she could not recall ever meeting anyone that works for Ashley or ever receiving any compensation checks from Ashley.   (SUF's 11-14.)   Thus, Plaintiff cannot establish, as a matter of law, that Ashley was her employer.  (SUF's 4-15); *see Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010) (listing factors for determining joint employment under California law); *see also S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341 (1989) (setting forth California's common law test for employment status).

## IV.      CONCLUSION

Defendants respectfully request that the Court grant summary judgment, or, in the alternative, partial summary judgment on the claims or issues the Court finds are established as a matter of law.

Dated:           February 13, 2015

                                            /S/ Sam Sani
                                    J. KEVIN LILLY
                                    SCOTT M. LIDMAN
                                    ELIZABETH NGUYEN
                                    SAM SANI
                                    LITTLER MENDELSON, P.C.
                                    Attorneys for Defendants

Firmwide:131637090.6 061736.1013

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

24.

MPA ISO DEFS' MOTION FOR SUMMARY JUDGMENT