I. Benjamin Blady, Esq. – State Bar No. 162470
BLADY WEINREB LAW GROUP, LLP
6310 San Vicente Boulevard, Suite 400
Los Angeles, California 90048
Telephone:   (323) 933-1352
Facsimile:   (323) 933-1353
E-mail:      bblady@bwlawgroup.com

Attorneys for Plaintiff
BOZENA KLUNE, for herself,
on behalf of all others similarly situated,
and on behalf of the general public

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| BOZENA KLUNE, an individual,<br><br>                    Plaintiff,<br><br>vs.<br><br>ASHLEY FURNITURE INDUSTRIES, INC., a corporation; STONELEDGE FURNITURE, LLC, a limited liability company; JAG DASWATTA, an individual; and DOES 1 through 50, inclusive,<br><br>                    Defendants. | CASE NO.: 2:14-cv-03986- PA (FFMx)<br><br>**PLAINTIFF BOZENA KLUNE'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>**[FED. R. CIV. P. 56; SCHEDULING ORDER, 4:27-28]**<br><br>DATE:   March 16, 2015<br>TIME:   1:30 p.m.<br>PLACE: Courtroom 15 |

///

///

///

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

I.    **INTRODUCTION** .................................................................................... 1

II.   **ARGUMENT RE: SUMMARY JUDGMENT STANDARD** ..................... 2

III. **STATEMENT OF FACTS** ........................................................................ 3

    A.   Ashley & Stoneledge Are Employers Under Wage Order ............................ 3
    B.   Defendants' Draw, Commission, & Compensation Policies/Practices .......... 3
    C.   Defendants' Commission Pay Plan/Practice Was Not Lawful ..................... 4
    D.   Defendants Failed to Authorize and Permit Lawful Rest Breaks ................. 4
    E.   Defendants Failed to Provide Lawful Meal Breaks ................................... 5
    F.   Policies Discouraged, or Encouraged Skipping, Meal & Rest Breaks.......... 5
    G.   Defendants' Waiver Defense for Second Meal Periods ............................... 5
    H.   Defendants Failed to Reimburse Klune for Her Reasonable Sales Related
           Expenses Incurred with Management's Knowledge.................................... 6
    I.   Defendants' Failed to Pay Reporting Time at the Regular Rate.................... 6
    J.   Defendants' Underpayment of All Vacation "Days" ................................. 7
    K.   Defendants' Underpayment of All Personal "Days" ................................. 7
    L.   Defendants' Failure to Provide Facts for Good Faith Defense .................... 7
    M.  Klune's PAGA Letter Alleges Sufficient Facts, and Klune was Not Asked
           about PAGA During Her Deposition ........................................................ 8

IV. **ARGUMENT** .......................................................................................... 9

    A.   Summary Judgment Should Be Denied on the Exemption Defense ............. 9
        1.   *Defendants Fail to Address the Elements of the Defense* ......................... 9
        2.   *Defendants' Authority is Inapposite* ....................................................12
    B.   Summary Judgment Should Be Denied on the Rest Break Claims ..............12
    C.   Summary Judgment Should be denied On the Meal Break Claim...............14
    D.   Summary Judgment Should Be Denied on the Meal/Rest Claims Because
           Ashley Discouraged, or Encouraged Skipping Breaks .............................16
    E.   Summary Judgment Should Be Denied on Waiver Defense ......................16
    F.   Summary Judgment Should Be Denied on Expense Reimbursement..........18
    G.   Summary Judgment Should Be Denied on Klune's Claims Alleging, In Part,
           Penalties under Cal. Lab. Code §§ 203, 226, and/or 1174..........................19
    H.   Summary Judgment Should Be Denied on Unfair Competition..................21
    I.   Summary Judgment Should Be Denied on Klune's PAGA Claim ..............24
    J.   Summary Judgment Should Be Denied as to Defendant *Ashley* ................25

V.   **CONCLUSION** .....................................................................................25

# <u>TABLE OF AUTHORITIES</u>

<u>Federal Cases</u>

*Aguilar v. Zep Inc.*,
    13-CV-00563-WHO, 2014 WL 4245988 (N.D. Cal. Aug. 27,
    2014) ....................................................................................................23, 27

*Alcantar v. Hobart Serv.*,
    ED CV 11-1600 PSG, 2013 WL 146323 (C.D. Cal. Jan. 14,
    2013) ...............................................................................................................30

*Archila v. KFC U.S. Properties, Inc.*,
    420 F. App'x 667 (9th Cir. 2011) ................................................................31

*Cardenas v. McLane FoodServices, Inc.*,
    796 F. Supp. 2d 1246 (C.D. Cal. 2011) .....................................................31

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).......................................................................................3

*Delagarza v. Tesoro Ref. & Mktg. Co.*,
    C-09-5803 EMC, 2011 WL 4017967 (N.D. Cal. Sept. 8, 2011)............15, 17

*Eddings v. Health Net, Inc.*,
    CV 10-1744-JST RZX, 2012 WL 994617 (C.D. Cal. Mar. 23,
    2012) ...............................................................................................................25

*Forrester v. Roth's I. G. A. Foodliner, Inc.*,
    646 F.2d 413 (9th Cir. 1981)........................................................................12

*Gonzalez v. Millard Mall Servs., Inc.*,
    09CV2076-AJB WVG, 2012 WL 3629056 (S.D. Cal. Aug. 21,
    2012) ...............................................................................................................31

*Hurst v. Buczek Enterprises, LLC*,
    870 F. Supp. 2d 810 (N.D. Cal. 2012).........................................................18

Jasper v. C.R. England, Inc.,
    CV 08-5266-GW CWX, 2012 WL 7051321 (C.D. Cal. Aug. 30,
    2012) ...............................................................................................................31

Karrer v. Best Buy Co.,
    LA CV 11-07697 JAK, 2012 WL 1957586 (C.D. Cal. May 24,
    2012) ...............................................................................................................27

*Katz v. Children's Hosp. of Orange Cnty.*,
    28 F.3d 1520 (9th Cir. 1994)..........................................................................3

Lillehagen v. Alorica, Inc.,
    SACV 13-0092-DOC, 2014 WL 6989230 (C.D. Cal. Dec. 10,
    2014) .........................................................................................................12, 16

*Maez v. Chevron Texaco Corp.*,
　　C 04-00790 JSW, 2005 WL 1656908 (N.D. Cal. July 13, 2005)...............25

McInteer v. Ashley Distribution Servs., Ltd.,
　　EDCV 13-0268 JGB, 2014 WL 4105262 (C.D. Cal. Aug. 19,
　　2014) ...................................................................................................24

Moua v. Int'l Bus. Machines Corp.,
　　5:10-CV-01070 EJD, 2012 WL 5373401 (N.D. Cal. Oct. 30,
　　2012) ...................................................................................................31

*Nissan Fire & Marine Ins. Co. v. Fritz Comp., Inc.*,
　　210 F.3d 1009 (9th Cir. 2000) .......................................................3

Plaisted v. Dress Barn, Inc.,
　　2:12-CV-01679-ODW, 2012 WL 4356158 (C.D. Cal. Sept. 20,
　　2012) ...................................................................................................30

*Porch v. Masterfoods, USA, Inc.*,
　　685 F. Supp. 2d 1058 (C.D. Cal. 2008) .........................................17

Provine v. Office Depot, Inc.,
　　C 11-00903 SI, 2012 WL 2711085 (N.D. Cal. July 6, 2012)......................26

*S. California Gas Co. v. City of Santa Ana*,
　　336 F.3d 885 (9th Cir. 2003)..........................................................3

Soto v. Castlerock Farming & Transp. Inc.,
　　CIV-F-09-0701 AWI, 2013 WL 1222055 (E.D. Cal. Mar. 25,
　　2013) ...................................................................................................19

*Stuart v. RadioShack Corp.*,
　　641 F. Supp. 2d 901 (N.D. Cal. 2009)...................................22, 26

*Takacs v. A.G. Edwards & Sons, Inc.*,
　　444 F. Supp. 2d 1100 (S.D. Cal. 2006) ..........................................11

*White v. Starbucks Corp.*,
　　497 F. Supp. 2d 1080 (N.D. Cal. 2007)..........................................16

Willner v. Manpower Inc.,
　　11-CV-02846-JST, 2014 WL 1303495 (N.D. Cal. Mar. 31, 2014)..............24

State Cases

*Agnew v. Cameron*,
　　247 Cal. App. 2d 619 (1967)...........................................................12

*Amaral v. Cintas Corp. No. 2*,
　　163 Cal. App. 4th 1157 (2008).........................................................19

*Barnhill v. Robert Saunders & Co.*,
　　125 Cal. App. 3d 1 (Cal. Ct. App. 1981) .........................................19

*Bono Enterprises, Inc. v. Bradshaw*,
　　32 Cal. App. 4th 968 (1995)............................................................13

iii

*Brinker Rest. Corp. v. Superior Court,*
   53 Cal. 4th 1004 (2012) ................................................................ 13, 14, 16

*Bufil v. Dollar Fin. Grp., Inc.,*
   162 Cal. App. 4th 1193 (2008)................................................................13

*Cicairos v. Summit Logistics, Inc.,*
   133 Cal. App. 4th 949 (2005)................................................................16

*Cnty. of El Dorado v. Schneider,*
   191 Cal. App. 3d 1263 (Cal. Ct. App. 1987) ..........................................15

*DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.,*
   30 Cal. App. 4th 54 (1994) ....................................................................17

*Embassy LLC v. City of Santa Monica,*
   185 Cal. App. 4th 771 (2010)................................................................17

*Godfrey v. Oakland Port Servs. Corp.,*
   230 Cal. App. 4th 1267 (2014)........................................................13, 14

*Grissom v. Vons Companies, Inc.,*
   1 Cal. App. 4th 52 (1991) ......................................................................18

*Hittle v. Santa Barbara Cnty. Employees Ret. Assn.,*
   39 Cal. 3d 374 (1985) ............................................................................18

*Huntington Mem'l Hosp. v. Superior Court,*
   131 Cal. App. 4th 893 (2005)................................................................23

*Mission Ins. Co. v. Brown,*
   63 Cal. 2d 508 (1965) ............................................................................17

*Morillion v. Royal Packing Co.,*
   22 Cal. 4th 575 (2000) ..............................................................11, 12, 14

*Muldrow v. Surrex Solutions Corp.,*
   208 Cal. App. 4th 1381 (2012)..............................................................12

*Murphy v. Kenneth Cole Prods., Inc.,*
   40 Cal. 4th 1094 (2007) ........................................................................17

*Peabody v. Time Warner Cable, Inc.,*
   59 Cal. 4th 662 (2014) ................................................................9, 10, 11

*Peabody,*
   59 Cal. 4th, 669- ......................................................................................9

*Sciborski v. Pac. Bell Directory,*
   205 Cal. App. 4th 1152 (2012)........................................................10, 21

*Stockett v. Ass'n of California Water Agencies Joint Powers Ins. Auth.,*
   34 Cal. 4th 441 (2004) ..........................................................................25

*Tidewater Marine W., Inc. v. Bradshaw,*
   14 Cal. 4th 557 (1996) ..........................................................................13

iv

*Waller v. Truck Ins. Exch., Inc.,*
    11 Cal. 4th 1 (1995) ....................................................................17

State Statutes

§ 2802.................................................................................................18

Cal. Bus. & Prof. Code § 17200 (West) ........................................2, 21

Cal. Lab. Code § 200 et seq. (West).................................................21

Cal. Lab. Code § 203 ...................................................... 19, 20, 21, 22

Cal. Lab. Code § 204 ..........................................................................9

Cal. Lab. Code § 204(a) (West) ..........................................................9

Cal. Lab. Code § 226 ........................................................................21

Cal. Lab. Code § 226(e)(3) ...............................................................19

Cal. Lab. Code § 226(g)....................................................................19

Cal. Lab. Code § 227.3 (West)...........................................2, 21, 22, 23

Cal. Lab. Code § 2802(a) (West) ......................................................18

Cal. Lab. Code § 2804 (West)...........................................................18

Cal. Lab. Code § 512 (West)............................................................16

CAL. LAB. CODE §§ 203, 226, AND/OR 1174.......................................i, 19

Labor Code § 226(a) .........................................................................20

Section 18 of the Labor Code............................................................25

Federal Rules

Fed. R. Civ. P. 56............................................................................... i

Fed. R. Civ. P. 56(c) ..........................................................................2

State Regulations

Cal. Code Regs. tit. 8, § 11040, subd. 5(A) ......................................23

Other Authorities

CACI no. § 336..................................................................................17

PLAINTIFF BOZENA KLUNE'S OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1    I.      **INTRODUCTION**

2          Defendants Ashley Furniture Industries, Inc. ("Ashley") and Stoneledge

3    Furniture, LLC'S ("Stoneledge") ("Defendants") Motion for Summary Judgment, or

4    Partial Summary Judgment, is without merit.  Defendants disregard their heavy

5    burden on establishing defenses on summary judgment; disregard their even higher

6    burden to establish the defenses under California law; and ignore or misstate legal

7    authority, allegations, evidence, discovery, and deposition testimony.

8          Plaintiff Klune's overtime claims are viable because Defendants have not

9    established all of the required elements of the affirmative exemption defense

10   "beyond controversy."  Defendants cannot satisfy the exemption because they cannot

11   establish they accounted for all "hours worked" as defined by California in each

12   draw [or draw repayment] workweek.  Further, Defendants unlawfully required the

13   payback of the entire draw from commissions earned in future workweeks, and/or

14   sought to recover them at the end of employment.  Defendants also charged against

15   commisisons for the cost of delivery, even though this is an ordinary business cost.

16         Klune's rest break claims are viable as Defendants (1) did not "authorize and

17   permit" legally compliant, required third rest breaks for shifts over 10 hours; (2) rest

18   breaks were not duty free as sales associates were prohibited from leaving the

19   premises without authorization or clocking out; and (3) short rest breaks of 5 to 20

20   minutes were not recorded as hours worked.  Klune's meal break claims are also

21   viable because (a) sales associates were not "free to leave" the premises without

22   authorization; (b) were only authorized by management to continue sales to

23   customers if they clocked out but continued to work; and (c) the prospective second

24   meal period waiver is unenforceable.  Defendants also discouraged, or encouraged

25   the skipping of, both rest breaks and meal breaks through tough minimum sales

26   standards, the threat of discipline or termination if not productive, and loss of sales.

27         Klune's expense reimbursement claims are viable because Defendants

28   established the minimum sales standard as "necessary" for productivity, Klune

PLAINTIFF KLUNE'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1  incurred expenses in consultation with management to increase her sales, and the

2  expenses were all reasonable.  Klune was <u>not</u> required to submit a written request.

3  Klune's claims for failure to keep accurate payroll records, and furnish

4  accurate itemized wage statements, are viable because Defendants failed to keep or

5  furnish accurate records, including all hours worked, short breaks, continued work

6  during meal periods, and an itemized breakdown of deductions from commissions.

7  Klune's Cal. Bus. & Prof. Code § 17200 claims are viable.  Initially, to the

8  extent derivative of the above, these claims are viable.  Moreover, Klune's evidence

9  supports that Defendants failed (1) to pay out all of her accrued personal days at the

10  Hnadbook's daily amount (for her 10 hour days), even though such days must be

11  treated as vacation under Cal. Lab. Code § 227.3; (2) to pay out all vacation "days"

12  at the proper daily pay amount; (3) to pay reporting time pay required by the wage

13  orders; and (4) <u>not</u> unlawfully deduct from commissions.

14  Last, Klune's Private Attorney General Act ("PAGA") claim is viable because

15  (1) Rule 23 is <u>not</u> applicable to a PAGA claim; (2) Defendants' policies and recent

16  production of punch and payroll data in late January establish that other employees

17  were similarly "aggrieved" as to multiple violations directly ascertainable from the

18  records; (3) Klune was not asked about PAGA during her deposition; and (4) Klune's

19  PAGA letter contains sufficient factual allegations, and a separate section citing an

20  explaining the violations of the Labor Code. Defendants did <u>not</u> change some of

21  these plainly unlawful policies and practices until late March 2014, a short few

22  months after Klune's late November 2013 PAGA letter.

23  **II.    <u>ARGUMENT RE: SUMMARY JUDGMENT STANDARD</u>**

24  Defendants improperly ignore Klune's allegations and evidence, including

25  pertinent portions of her deposition testimony.  Fed. R. Civ. P. 56(c).  Defendants fail

26  to meet their initial burden of showing the absence of a triable issue of material fact

27  by disingenuously parsing the record, and/or ignoring discovery responses and

28  documents.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Katz v. Children's*

*Hosp. of Orange Cnty.*, 28 F.3d 1520, 1534 (9th Cir. 1994); *Nissan Fire & Marine Ins. Co. v. Fritz Comp., Inc*., 210 F.3d 1009, 1105 (9 th Cir. 2000). Also, as to Defendants' defenses of overtime exemption, waiver, and good faith dispute, Defendants' must establish each and every element "***beyond controversy***." *S. California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).

### III.   STATEMENT OF FACTS

#### A.   Ashley & Stoneledge Are Employers Under Wage Order

Ashley is the <u>sole</u> member of Stoneledge, shares management with Stoneledge, and has unfettered "access to employment and time and wage records, including personnel files, and compensation records for Plaintiff." (SGD 1-2, 6, 118.) Further, Ashley management admits, and records establish, that Ashley's "payroll administrator" reviewed sales associate hours for the purposes of meal period clocking, and communicated with store management with e-mails from "Ashley Furniture Industries, Inc." (SGD 6.) Also, multiple documents evidence Ashley's direct (let alone indirect) involvement in employment, including both a "Pre-employment Consent" and "Expense Report Summary Worksheet" from "Ashley Furniture Industries, Inc." (SGD 109, 112); a "commission pay structure" from "Ashley Furniture Stoneledge" (SGD 116); payroll register from "The Ashley Companies" (SGD 113), and others (SGD 106-107, 110-111, 114-115, 117.)

#### B.   Defendants' Draw, Commission, & Compensation Policies/Practices

Defendants' draw, commission, and repayment plan were <u>not</u> compliant with the commission exemption because they required payback of the entire draw, in part, from commissions in future workweeks. (SGD 139-140.) Defendants also did <u>not</u> pay the required hourly minimum earnings for "each hour worked" during each draw pay period (and certain draw repayment periods equivalent to the draw). (SGD 141-146.) For example, Defendants did <u>not</u> treat short clocked out breaks of between 5 and 20 minutes as "hours worked." (SGD 146.) Store management were also aware of (and approved) Klune working outside of store hours without recording those

1    hours, including:  (1) making required customer loyalty phone calls from home on

2    her days off; (2) creating flyers, taking potential clients out to lunch, and visiting

3    potential clients on her days off; and (3) coming in early to make phone calls before

4    clocking in for her regular shift start time.  (SGD 145, 149-170.)

5         **C.      Defendants' Commission Pay Plan/Practice Was Not Lawful**

6         Defendants' commission plan reduced promised commissions on "total

7    delivered sales" by deducting "delivery charges," which are an employer cost of

8    doing business.  (SGD 136.)  The agreement signed by Klune does not set forth any

9    reduction for "delivery charges." (SGD 137-138.)  The "delivery charges" are not

10   detailed, nor are they tied to delivery charges paid by customers. (SGD 136.)

11        **D.      Defendants Failed to Authorize and Permit Lawful Rest Breaks**

12        Defendants only allowed two rest breaks per ten plus hour shift (instead of the

13   required three).  (SGD 176, 183.)  The Employee Handbook expressly stated there

14   are "two 10 minute break periods during each shift." (SGD 175.)  Also, rest breaks

15   were not duty free.  The Handbook requires employees "remain at your work place

16   until scheduled quitting time."  (SGD 172.)  The "Missed Punch" policy also

17   provided:  "If you leave the premises for any reason, you must get authorization from

18   your supervisor/manager and you must ensure that you have clocked out prior to

19   leaving the premises." (SGD 174.)  Klune and other sales associates could not leave

20   the store during any rest break without getting approval (SGD 173, 180-181, 184),

21   and clocking out for short rest breaks of between 5 and 20 minutes which were not

22   included in "hours worked." (SGD 179, 185, 186.)  Klune was also told by

23   management she could not take rest breaks.  (SGD 187-188.)  Not until sometime

24   after February 2014, did the Senior Regional Human Reosurce Manager distribute a

25   purported guideline to store managers (not even sales associates) as to when rest

26   periods must be given. (SGD 189.)  Klune's Office Manager testified she never saw

27   it.  (Blady Decl., ¶ 13, Exh. H [Aguilar Depo., 2/19/15, 84:3-84:18; Exh. 30].)

28

### E.    Defendants Failed to Provide Lawful Meal Breaks

Klune was <u>not</u> free to leave the premises during meal breaks without approval from management. (SGD 190.)  There were also times when Klune was not permitted to leave for a lunch.  (SGD 203.) Klune was also authorized to swipe out for lunch, and then continue with a customer to finish a sale.  (SGD 191.)  Even when authorized to stay with a customer, Klune still had to clock out for meal periods. (SGD 192-195.)  Klune's time records, when compared to her own retained time and date stamped sales invoices, show she continued to sell to customers at times she was clocked out during lunch. (SGD, 196-198.)  Klune also explained to management when she clocked out for late meal breaks *after* the fifth hour, she was with a working with a customer. (SGD 202.)  Klune never decided on her own she did not want a meal break.  (SGD 200.)

Klune's time records, when compared to her own retained sales invoices, show she completed sales after she was required to clock out at the *end of her scheduled day*, resulting in actual worked shifts of over twelve hours with <u>no</u> second meal period. (SGD 208.)  Defendants did <u>not</u> distribute guidelines to meal periods to store managers, let alone sales associates, until after February 2014.  (SGD 211.)

### F.    Policies Discouraged, or Encouraged Skipping, Meal & Rest Breaks

Defendants discouraged, or encouraged skipping, both meal and rest breaks. (SGD 216.)  Sales associates were subject to minimum sales goals of $48,000 per month and were subject to discipline or termination for <u>not</u> achieving minimum sales goals.  (SGD 217.)  Sales associates would also be returned to the bottom of the lineup for new customers, under sales floor rules, if they took a break.  (SGD 220-221.)  Klune stayed with customers "to make minimum sales of $48,000", and not loose sales because her "job was on the line."  (SGD 221.)

### G.    Defendants' Waiver Defense for Second Meal Periods

The waiver signed by Klune on or about August 2011 was a <u>prospective</u> waiver of future second meal periods.  The waiver fails to fully explain the statutory

1  rights being waived, including (1) to be "free to leave" the premises during a meal
2  period; (2) required timing of the start of second meal period [i.e., prior to end of the
3  10th hour]; and/or (3) one-hour premium pay.  (SGD 212-213.)

4  **H.     Defendants Failed to Reimburse Klune for Her Reasonable Sales**
5  **Related Expenses Incurred with Management's Knowledge**

6       Klune's expenses were related to achieving "necessary" minimum sales
7  standards, related to sales activities, were reasonable, and management was aware of
8  (and supported) the activities.  Klune was <u>not</u> reimbursed for use of her cell phone
9  for customer loyalty calls from home, work related driving to potential customers,
10 stamps to mail flyers showing her work dates and times after her days change, and
11 taking clients out to lunch.  All of these sales related expenses were reasonable, for
12 the purpose of increased sales, and communicated to management.  (SGD 224-229.)

13      Sales associates were responsible for customer loyalty follow up, and Klune
14 was required to make phone calls from home in order to be permitted to be on the
15 sales floor.  (SGD 153-157.)  Klune's managers encouraged her to make phone calls
16 from home, and she did so about two to three hours per week.  (SGD 156.)  When
17 Klune asked if she could make phone calls from home, she was told by management
18 "that's your job."  (SGD 159.)  Klune was also encouraged to create a flyer to bring
19 back customers to increase her sales after her shift was changed; so the flyer had her
20 new shift times and cell phone number.  (SGD 167-168.)  Klune was not reimbursed
21 for the cost of the flyer or stamps for mailing the flyer.  (SGD 226.) Management
22 was aware and encouraged Klune to increase sales by driving to potential clients and
23 by taking potential customers out ot lunch.  (SGD 227-228.)  Klune asked
24 management for reimbursement, but was <u>not</u> aware she needed to fill out any form.
25 (SGD 225.)  Management informed Klune that she would not get reimbursement
26 because it was not in the budget. (SGD 227.)

27 **I.     Defendants' Failed to Pay Reporting Time at the Regular Rate**
28      Klune was asked to go home early during her employment when she worked

1    an extra shift day.  Klune was not paid reporting time pay, even though she worked

2    less than half her shift (less than 5 hours).  During the week of October 30, 2011, to

3    November 5, 2011, Klune's time punch records show she worked a total of 46.22693

4    hours when she worked an extra fifth day during the week.  (SGD 230 - 231.)  On

5    November 4, 2011, Klune worked for 4.074722 hours, or less than half of her normal

6    10 hour plus shift. Klune's regular rate of hourly pay for the week should be

7    calculated by taking pay of $603.17 divided by 40 hours for $15.07925.  Klune was

8    not paid reporting time pay at the regular rate, but only received a draw.  (SGD 231.)

9           **J.      Defendants' Underpayment of All Vacation "Days"**

10          The Employee Handbook provides employees receive "ten (10) days of

11   vacation" and "will continue to receive ten (10) days of vacation on their anniversary

12   date."  (SGD234.)  Payroll records shows Klune was paid out 137.63 hours of

13   vacation during her employment of 1 year, 8 months and 20 days (628 days).  (SGD

14   234.)  Thus, she earned a pro rata amount of .0273972 days of vacation per day (10

15   days per year divided by 365 days in a year).  This would be 17.205441 <u>days</u> of

16   vacation for the 628 days she worked (628 days x .0273972).  As Klune's work day

17   was at least 10 hours, 17.205441 "<u>days</u> of vacation" would equate to 172.05441

18   hours of vacation due.  Klune was <u>only</u> paid 137.63 hours.  (SGD 234.)

19          **K.      Defendants' Underpayment of All Personal "Days"**

20          Defendants' policy is that, after "an employee's 90 days of employment and

21   on each year thereafter on their anniversary date, employee will be granted three (3)

22   paid personal days."  Klune was employed from August 2011 to May 2013 and, thus,

23   should have earned six paid personal days at shift of at least 10 hrs/day.  Payroll

24   records shows Klune was only paid out for 24 hours of personal time during her

25   entire employment.  Based on a "daily rate" calculation and an average day of at least

26   10 hours, Klune was entitled to receive 60 hours of personal leave pay.  (SGD 236.)

27          **L.      Defendants' Failure to Provide Facts for Good Faith Defense**

28          Defendant Stoneledge's Responses to Klune's Second Set of Special

Interrogatories, Set Two, provided <u>no</u> facts to support a good faith dispute, and in some instances <u>no</u> facts at all.  In response to Interrogatory No. 15 seeking all facts supporting any contention that PAGA Members are *not* due wages in this action, Stoneledge *conclusorily* asserted, "Defendant has a good faith belief that it has timely paid its employees all wages due."  (SGD 241.)  In response to Interrogatories Nos. 16 and 17 seeking all facts supporting Stoneledge's contention that its meal and rest period policies were legally compliant, Stoneledge **refused** to provide even one fact. (SGD 242.) In response to Interrogatory No. 20 seeking all facts in support of Stoneledge's contention that its sales associate were exempt under the "commission pay structure," Stoneledge simply asserted the following facts: associates were "primarily engaged in sales, at least half of their compensation represented commissions and/or draw on commissions and their earnings on average exceeding one half time the applicable minimum wage." (SGD 243.)

## M.   Klune's PAGA Letter Alleges Sufficient Facts, and Klune was Not Asked about PAGA During Her Deposition

Klune's PAGA letter alleges overtime claims for aggrieved "hourly, non-exempt salespersons," and the payment of "a base rate of $12.01 per hour against [a] commission schedule." (Lidman Decl., Exh. D, at pp. 189-190 of 295.)  The letter also alleges Defendants "maintained a policy and practice of . . . denying pay . . . for all hours worked, including overtime pay in its entirety . . . ." (*Id*., at 191.)  The letter also alleged facts supporting the alleged violations for meal and rest break law (*Id*., at 191, at ¶ 2.), and facts supporting other alleged violations.  (*Id*., at 190-191.) The letter also separately identifies alleged statutes and wage orders allegedly violated.  (*Id*., at 190-191.)   The letter also invited: "If you have any questions, please contact me." (*Id*., at p. 195.)  Shortly after the November PAGA letter, in or about Feburary 2014, Defendants asserts it distributed the guidelines on meal and rest breaks attached to Exhibit A of Virginia Pollock's declaration.  During Klune's deposition, she was not asked any questions about her PAGA claim.  Klune was also

1  not asked any questions about the letter sent to the California Workforce

2  Development Agency in late 2013 and copied to her. (Klune Decl., ¶ 39).

3  **IV.   ARGUMENT**

4  **A.   Summary Judgment Should Be Denied on the Exemption Defense**

5  **1.   Defendants Fail to Address the Elements of the Defense**

6  The Wage Order provides, in part, that the overtime provisions "shall *not*

7  apply to any employee whose *earnings* exceed one and one-half (1.5) times the

8  minimum wage if more than half of that employee's compensation represents

9  commissions." Wage Order No. 7, subd. 3(D). Cal. Lab. Code § 204(a) mandates

10  "[a]ll *wages ... earned* by any person in any employment are *due* and payable twice

11  during each calendar month...." (Emphasis added.) The California Supreme Court in

12  *Peabody v. Time Warner Cable, Inc.*, 59 Cal. 4th 662, 667 (2014) explained that the

13  commission exemption affirmative defense must be "*narrowly construed*" and its

14  "application is limited to those employees *plainly and unmistakably* within their

15  terms." (Emphasis added). In so doing, *Peabody* adopted the DLSE's analysis of the

16  defense under both Wage Order 7 and Cal. Lab. Code § 204. The *Peabody* Court,

17  citing the DLSE Manual, summarized the elements of the defense as follows:

18  [1] ... to comply with the requirements of the [commission] exemption and

19  of [section 204], for each workweek in the pay period the earnings of the

20  employee ... must exceed 1.5 times the minimum wage for each hour

21  worked during the pay period. [¶] [2] ... the payment of the earnings of

22  more than 1.5 times the minimum wage ... *must be made in each pay*

23  *period*. Therefore, it is not permissible to defer any part of the wages due

24  for one period until payment of the wages due for a later period. [¶] [3]

25  Compliance with the requirements of the exemption is determined on a

26  *workweek* basis. The minimum compensation component of the exemption

27  *must be satisfied in each workweek and paid in each pay period*.

28  *Peabody*, 59 Cal. 4th, 669-670 (italics in original), citing and adopting DLSE,

1    Enforcement Policies and Interpretations Manual (June 2002) ("DLSE Manual")

2    § 50.6.1, p. 50–5, attached to the Request for Judicial Notice ("RFJN"), as Exh. A.

3          The DLSE has explained – consistent with *Peabody* – that "[t]o satisfy the

4    exemption, however, for *each workweek* the employee must be paid a *guaranteed*

5    *draw* that exceeds 1.5 times the minimum wage and that can be recovered from

6    ***commissions earned in that workweek and <u>not</u> from commissions earned in future***

7    ***workweeks***.  This is so because every workweek must stand alone for purposes of

8    minimum wages and overtime computation."  (See, RFJN, Exh. A, DLSE Manual §§

9    50.6.4.1 and 50.6.1.)  Further, *Peabody* explained given the weekly test for the

10   exemption, it is impermissible for employer to have "attributed commission wages

11   paid in one period to other pay periods to satisfy California compensation

12   requirements."  *Peabody*, 59 Cal. 4th at 669.  This is entirely consistent with the

13   DLSE's analysis that the exemption prohibited the employer from recovering the

14   mandatory guaranteed hourly draw ***from commissions earned in future workweeks***.

15   Cf., *Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100, 1110 (S.D. Cal.

16   2006) (denying summary judgment on federal administrative exemption by

17   "construing 'draw' deduction as an impermissible offset that is taken from

18   guaranteed salary."); *Sciborski v. Pac. Bell Directory*, 205 Cal. App. 4th 1152, 1166-

19   1167 (2012) ("an employer cannot get an employee to agree to wage deduction in the

20   guise of recouping an advance" of commissions).

21         Here, Defendants cannot establish at least two elements of the defense:

22   (1) that "for *each workweek* in the pay period, the earnings, whether actual

23   commissions or a guaranteed draw for the workweek against commissions earned

24   within such workweek, must exceed 1.5 times the minimum wage for *each hour*

25   *worked* during the pay period"; and (2) that any "guaranteed draw" was <u>not</u>

26   recovered "*from commissions earned in future workweeks.*" (RFJN, Exh. A, DLSE

27   Manual, §§ 50.6.1 and 50.6.4.1).  *First*, Defendants <u>admit</u> that they – at a minimum –

28   would recover the minimum required earnings for "each hour worked" from

"*commissions earned in future workweeks*" (SUF, No. 20).  However, it is impermissible for an employer to have "attributed commission wages paid in one period to other pay periods to satisfy California compensation requirements." *Peabody*, 59 Cal. 4th at 669.  Moreover, if this was <u>not</u> enough, the draw was "subject to" repayment at the end of employment:  "if somebody terminates, it's sometimes difficult to recover the draw."  (SGD 139.)

*Second*, Defendants cannot establish that Klune's draw compensated her for "each hour worked."  "'Hours worked' means the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."  Wage Order 7-2001, § 2; *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 585 (2000) (employer must pay for "hours worked" when employer knows or should have known), citing *Forrester v. Roth's I. G. A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981).  Here, Defendants did not pay a draw for each hour worked, as follows:

(1) Rest period time "shall be counted as hours worked for which there shall be no deduction from wages."  Wage Order 7-2001, § 12.  At a minimum, periods of rest between five and twenty minutes are hours worked.  *Lillehagen v. Alorica, Inc.*, SACV 13-0092-DOC, 2014 WL 6989230, *10 (C.D. Cal. Dec. 10, 2014) ("hours worked" includes "all rest periods of short duration []about 5 to 20 minutes" with "only" two exceptions inapplicable here, and concluding short clock out during normal shifts was something the employer knew or should have known had to be paid.)  Defendants did <u>not</u> treat short clock outs as "hours worked".  (SGD 146.)

(2) Klune was affirmatively allowed by store management to continue to work with a customer but had to clock out for lunch, as evidenced by Klune's time and date stamped sales invoices after she clocked out. (SGD 147.)  This had to be recorded as hours worked.  (RFJN, Exh. A, DLSE Manual, § 45-4(a)).

(3) Klune was authorized by managers to continue to work with customers if she clocked out at the end of the day, as further evidenced by Klune's time and date

1    stamped invoices after she clocked out.  (SGD 148.)  *Morillion*, 22 Cal. 4th at 585.

2        (4) Klune's store management was <u>aware</u> she was working outside of store

3    hours:  making required customer loyalty phone calls from home as encouraged by

4    management; coming in early to make customer loyalty phone calls before clocking

5    in for her shift; creating flyers to increase sales, taking potential clients out to lunch,

6    and visiting potential clients. (SGD 145, 151-170.) *Morillion*, 22 Cal. 4th at 585.

7        (5) Klune payroll records indicate that Defendants rounded down Klune's

8    actual recorded time from her punch data on her checks.  For example, during the

9    week of October 30, 2011, to November 5, 2011, Klune hours are reported as 46.22

10   hours, instead of 46.22693 (or 46.23) due to rounding down hours.  (SGD 141.)

11               **2.      Defendants' Authority is Inapposite**

12       Defendants' argument that draw commission plans are generally permitted is

13   completely inapposite.  In *Muldrow v. Surrex Solutions Corp.*, 208 Cal. App. 4th

14   1381, 1397 (2012), there was <u>no</u> issue about whether the claimed exempt

15   commissioned employees were required to pay back "the guaranteed draw" from

16   future earned commissions.  In *Agnew v. Cameron*, 247 Cal. App. 2d 619 (1967),

17   there was <u>no</u> issue of the commission exemption at all.  As the DLSE Manual

18   explains, citing *Agnew*, "an advance or draw is recoverable during the employment

19   for future commissions." (DLSE Manual, §§ 50.6.4). "To satisfy the exemption,

20   *however*, for each workweek the employee must be paid a guaranteed draw that

21   exceeds 1.5 times the minimum wage and that can be recovered only from

22   commissions earned in that workweek and *not* from commissions earned in future

23   workweeks." (RFJN Exh A, DLSE Manual, § 50.6.5; emphasis added).

24       **B.      Summary Judgment Should Be Denied on the Rest Break Claims**

25       Under California's Wage Order 7-2001, § 12, rest periods must be authorized

26   and permitted "at the *rate* of ten (10) minutes *net rest time per four (4) hours* or

27   major fraction thereof."  "[A]uthorized rest period time *shall* be *counted as hours*

28   *worked* for which there shall be *no deduction* from wages."  (Empahsis added).

1    Employees are entitled to <u>three</u> rest periods for shifts of more than 10 hours.

2  *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012).  Rest periods <u>must</u>

3  be as "the language implies, **duty-free**." RFJN, Exh. D [DLSE Opinion Letter, Rest

4  Period Requirements (2/22/2002), at p.1; also see, Exh. F [IWC Public Hearing

5  Minutes, 6/30/2000, p. 27 (Commissioner explaining "[e]mployers are obligated to

6  provide rest periods **duty free** . . . and must pay for them.")].)  The DLSE letter is an

7  informed judgment to which courts may resort for guidance.  *Brinker*, at 1029 n. 11.

8  The "onus is on the employer to clearly communicate the authorization and

9  permision to [take rest periods to] its employees." *Bufil v. Dollar Fin. Grp., Inc.*, 162

10  Cal. App. 4th 1193, 1199 (2008).  Employees must at a "minimum" be informed in a

11  meaningful or consistent way" of their rest period rights.  *Godfrey v. Oakland Port*

12  *Servs. Corp.*, 230 Cal. App. 4th 1267, 1285 (2014).

13    Here, Defendants' Motion should be denied for multiple reasons.  *First*, the

14  Employee Handbook states there are "two 10 minute break periods during each

15  shift."  Defendants failed to inform Klune of her right to take a third rest break on

16  shifts over 10 hours. (SGD 175-176.)

17    *Second*, rest breaks were <u>not</u> "duty free." Employees could <u>not</u> leave the

18  premises without getting approval. (SGD 172-174, 179-181, 183-184.)  Cf., *Bono*

19  *Enterprises, Inc. v. Bradshaw*, 32 Cal. App. 4th 968, 974 (1995) (meal break case

20  explaining an "employee who has a duty or obligation to remain on the premises . . .

21  is not "free of all duty."), disapproved other grounds *Tidewater Marine W., Inc. v.*

22  *Bradshaw*, 14 Cal. 4th 557 (1996); *Delagarza v. Tesoro Ref. & Mktg. Co.*, C-09-

23  5803 EMC, 2011 WL 4017967, *6, 13 (N.D. Cal. Sept. 8, 2011) (Even if "some

24  workers can leave the premises with permission does not negate Plaintiff's assertion

25  that there is a general policy against leaving the premises.").

26    *Third*, since "authorized rest period time shall be ***counted*** *as hours worked*",

27  this is another violation of the Wage Order. (Wage Order 7-2001, § 2G; RFJN, Exh.

28  A, DLSE Manual, at § 45.3.2.) As explained above, Defendants failed to count

clocked out short rest periods as hours worked. Klune had multiple short clock out breaks between 5 and 20 minutes which must be considered "hours worked." (SGD 179, 185.)  *See, e.g., Morillion*, 22 Cal. 4th at 585 ("hours worked" when employer knows or should have known of "hours worked"); *Lillehagen*, 2014 WL 6989230, *10 ("hours worked" includes "all rest periods of short duration [] about 5 to 20 minutes" and concluding employer knew or should have known it had to be paid).

*Fourth*, there were times Klune desired to take a rest break and was told by management she could <u>not</u> have one. (SGD 181, 187-188.)  Defendants' citation to *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1086 (N.D. Cal. 2007) is inapposite. *White* is a pre-*Brinker* decision granting summary judgment because White testified it was his decision "not to take the rest period" and "nobody told him or instructed him not to take a rest break . . . ."

*Last,* Klune did <u>not</u> receive any premium pay when she was not provided a rest period and, as argued in section D below, Defendants' policies and sales rules encouraged the skipping of, or discouraged taking, legally compliant rest breaks.

## C.  Summary Judgment Should be denied On the Meal Break Claim

"[A]n employer's obligation is to provide an off duty meal period:  an uninterrupted 30 minute meal period during which the employee is relieved of all duty." *Brinker Rest. Corp.*, 53 Cal. 4th at 1036.  "[T]he meal period requirement is satisfied if the employee (1) has at least 30 minutes uninterrupted, (2) *is free to leave the premises*, and (3) is relieved of all duty for the entire period." *Id.* at 1036, (emphasis added).  (See, RFJN, Exh. A, DLSE Manual, § 45-4(a) ["employees must be free to come and go as they please."].) A first meal period must also begin "no later than the end of an employee's fifth hour of work." *Brinker*, at 1041. An employer does "not meet the *provide* standard" without showing employees were at a "minimum informed in a meaningful and consistent way that they could take a meal period, or the definition of [] such meal period." *Godfrey*, 230 Cal. App. 4th at 1285.

Here, there are multiple triable issues of facts on Klune's meal period claim.

1    *First*, Klune was <u>not</u> free to leave the premises during meal breaks. (SGD 190.)  Cf.,

2    *Delagarza*, 2011 WL 4017967 at , *6, 13 (Even if "some workers can leave the

3    premises with permission does not negate Plaintiff's assertion that there is a general

4    policy against leaving the premises.") *Second*, Klune also had to get authorized by

5    management to swipe out for lunch, and then continue with a customer to finish a

6    sale.  (SGD 191.)  Klune still had to clock out for meal periods even if she was

7    authorized to stay with a customer. (SGD 192, 194.)  Defendants' citation to *Porch v.*

8    *Masterfoods, USA, Inc.*, 685 F. Supp. 2d 1058, 1071-1073 (C.D. Cal. 2008) is clearly

9    inapposite.  *Porch* was a pre-*Brinker* case where plaintiff had admitted <u>no</u> manager

10   told plaintiff "not to go offsite for lunch," "he could and did leave the Masterfood

11   campus to eat his lunch," and he was "never told to work through his rest breaks."

12        *Third*, Klune explained to management when she clocked out for late meal

13   breaks *after* the fifth hour, it was because she was with a working with a customer.

14   (SGD 193, 201-202.)  This is similar to Defendants' citation to *Hurst v. Buczek*

15   *Enterprises, LLC*, 870 F. Supp. 2d 810, 828 (N.D. Cal. 2012).  In *Hurst*, summary

16   judgment was <u>denied</u> where Plaintiff claimed his "workload precluded him from

17   taking off duty breaks, and he typically ate while working or did not take a break at

18   all."

19        *Fourth*, Klune's time records, when compared to her own time and dates

20   stamped sales invoices, show shifts over twelve hours, when she was required to

21   clock out before she continued work to complete a sale.  There was <u>no</u> second meal

22   period. (SGD 205.)  Importantly, although multiple date and time stamped copies of

23   invoices are printed out from the computerized software at the time of sale (Aguilar

24   Dep., 50:6 – 51:20), Defendants have refused to provide <u>all</u> sales time and date data

25   for Klune, let alone other "aggrieved employees". See, *Cnty. of El Dorado v.*

26   *Schneider*, 191 Cal. App. 3d 1263, 1273 (Cal. Ct. App. 1987) (in **barring** affirmative

27   defense, court held "[t]he preservation of due process was secured by the

28   presumption that the refusal to produce evidence material to the administration of

1  due process was but an admission of the want of merit in the asserted defense").

2  *Fifth*, Klune did <u>not</u> receive any premium pay when she missed a meal period,

3  took a meal period that was less than 30 minutes, or started a meal period after the

4  fifth hour. (SGD 210.)  *Last*, as argued in section D below, Defendants' policies and

5  practices encouraged the skipping of legally protected meal breaks.

6  **D.   Summary Judgment Should Be Denied on the Meal/Rest Claims**

7  **Because Ashley Discouraged, or Encouraged Skipping Breaks**

8  The wage orders and governing statute do not countenance an employer's

9  exerting coercion against the taking of, *creating incentives to forgo, or otherwise*

10 *encouraging* the skipping of legally protected breaks." *Brinker Rest. Corp.*, 53 Cal.

11 4th, 1040 (emphasis added); *Cicairos v. Summit Logistics, Inc.*, 133 Cal. App. 4th

12 949, 961 (2005) ("management pressured drivers to make more than one daily trip,

13 making drivers feel that they should not stop for lunch"); *Soto v. Castlerock Farming*

14 *& Transp. Inc.*, CIV-F-09-0701 AWI, 2013 WL 1222055 (E.D. Cal. Mar. 25, 2013)

15 (citing *Brinker* for proposition that pressure to keep "working through meal and rest

16 periods 'to finish the quota' may . . . constitute a violation of the meal and rest period

17 regulations.").  Here, Defendants established minimum sales quotas and sales floor

18 rules which created incentives to forgo, or otherwise encouraged, the skipping of

19 legally protected breaks.  *Brinker Rest. Corp.*, 53 Cal. 4th, 1040.  Sales associates

20 were subject to minimum sales goals of $48,000 per month and were subject to

21 discipline or termination for <u>not</u> achieving minimum sales goals (SGD 215.)  Sales

22 associates would also be returned to the bottom of the lineup for new customers if

23 they took a break. (SGD 220.)  Klune stayed with customers because "she had to

24 make minimum sales of $48,000" and her "job is on the line."  (SGD 221.)

25 **E.   Summary Judgment Should Be Denied on Waiver Defense**

26 Defendants' twenty-second affirmative defense alleges that Klune waived her

27 right to a [second] meal break under Cal. Lab. Code § 512 for shifts between ten and

28 twelve hours. (Defendants' Answer, at ¶ 22.)  Waiver of a statutory right to a second

meal period is an affirmative defense which much be established "without controversy." A defendant has the burden of proving waiver "by *clear and convincing evidence* that does not leave the matter to speculation and 'doubtful cases will be decided against a waiver.' " *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.*, 30 Cal. App. 4th 54, 60 (1994); *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 33 (1995); Affirmative Defense-Waiver. CACI no. § 336.

Here, Defendants' affirmative defense of waiver fails because (1) there is no statutory or wage order authority for a ***prospective*** *mutual* waiver of a second meal period for shifts of between ten and twelve hours; (2) even if there were such authority, the waiver did not <u>fully</u> explain to employees all their meal period rights; and (3) even assuming there were a valid prospective *mutual* waiver, then any subsequent second clock outs would be considered hours worked (also defeating the commission exemption during draw/draw repayment weeks at draw level). *First*, California statutes and wage orders do <u>not</u> permit *prospective* written waivers of second meal periods. As discussed in *Brinker*, it is only **after** "the meal break obligation is triggered," the employee and employer may "consent to a mutually agreed upon waiver . . . ." *Brinker*, 1039; Wage Order 7-2001(B).

*Second*, where a statute provides "waivers may be enforced in some contracts," the statute "tells us that they may not be enforced in other contracts." *Embassy LLC v. City of Santa Monica*, 185 Cal. App. 4th 771, 776 (2010); *Mission Ins. Co. v. Brown*, 63 Cal. 2d 508, 510-511 (1965) ("where a legislature permits a particular, limited waiver of a right upon satisfaction of conditions, it intends <u>no</u> other related waivers be permitted.")  Here, the <u>only</u> prospective waiver permitted under Wage Order 7-2001 is a written waiver for an on-duty meal period. § 11(C).

*Third*, absent an express statutory provision permitting a *prospective* waiver of statutory right, a prospective waiver is against public policy. *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1109 (2007) ("hour of pay for meal and rest …

1  was being adopted in the same way overtime pay … is considered a wage … [I]t was
2  needed to help *force* employers to provide meal and rest periods.").

3  　　*Last*, a defense of waiver of a statutory right is ineffective "unless it appears
4  that the party executing it has been *fully* informed of the existence of that right, its
5  meaning, the effect of the 'waiver' presented to him, and his *full* understanding of the
6  'explanation.'" *Hittle v. Santa Barbara Cnty. Employees Ret. Assn.*, 39 Cal. 3d 374,
7  389 (1985).  Here, the waiver fails to *fully* explain the rights being *prospectively*
8  waived, including (1) the right to be "free to leave" the premises; (2) the required
9  timing of the start of second meal period; and/or (3) premium pay.  (SGD 212.)

10  **F.　Summary Judgment Should Be Denied on Expense Reimbursement**

11  　　Cal. Lab. Code § 2802(a) requires, in relevant part, that an employer
12  "indemnify his or her employee for all necessary expenditures or losses incurred by
13  the employee in direct consequence of the discharge of his or her duties, or of his or
14  her obedience to the directions of the employer." "[A]scertaining what was a
15  necessary expenditure will require an inquiry into what was *reasonable* under the
16  circumstances." *Grissom v. Vons Companies, Inc.*, 1 Cal. App. 4th 52, 58 (1991).
17  "Once an employer knows or has reason to know that the employee has incurred an
18  expense, then it has the duty to exercise due diligence and take any and all
19  reasonable steps to ensure that the employee is reimbursed for the expense." *Stuart*
20  *v. RadioShack Corp.*, 641 F. Supp. 2d 901, 905 (N.D. Cal. 2009) (rejecting argument
21  "that a duty to reimburse is not triggered until an employee makes a request for
22  reimbursement.")  "Any contract or agreement, express or implied, made by any
23  employee to waive the benefits of [§ 2802], is null and void." Cal. Lab. Code § 2804.

24  　　Here, Klune's expenses were related to achieving "necessary" minimum sales
25  standards, related to sales activities, were reasonable, and management was aware of
26  (and supported) the activities resulting in the expenses.  Klune was <u>not</u> reimbursed
27  for use of her cell phone for customer calls, work related driving, materials for flyers
28  showing her work dates and times, stamps to mail the flyers, and taking clients out to

lunch.  All of these sales related expenses were reasonable, for the purpose of sales, and communicated to her employer.  (See, SGD 226-229.)  Cf., *Aguilar v. Zep Inc.*, 13-CV-00563-WHO, 2014 WL 4245988, , *17-18 (N.D. Cal. Aug. 27, 2014) (denying summary judgment on salespersons claims for mileage and cell phone expenses when managers "knew that the plaintiffs were incurring these expenses to their benefit" and finding "precise amounts allocable may be determined at a later stage in this case.").

**G.**    **Summary Judgment Should Be Denied on Klune's Claims Alleging, In Part, Penalties under Cal. Lab. Code §§ 203, 226, and/or 1174**

Defendants have <u>not</u> established Klune's penalty claims under Cal. Lab. Code §§ 203, 226, 1174 are subject to an omnibus "good faith" defense, or that the defense applies to statutes or Wage Orders Defendants do not even address in their moving papers.  *First*, Defendants' Motion fails to address all of Klune's allegations for penalties in the 17th and 18th Claims, including under Wage Order 7-2001, § 7(A) and § 7(B) (Complaint, 18th Claim, at ¶¶ 259 and 260; and 19th Claim, at ¶¶ 265).  (RFJN, Exh. A, DLSE Manual, at §§ 14.1.2 and 41.2; Wage Order 7-2001, at § 20).  Moreover, Klune alleges relief under Cal. Lab. Code § 226(g) [formerly subdivision (f)], and there is <u>no</u> requirement of a "knowing and intentional" violation.

*Second*, Defendants' contention that there is a good faith defense to Cal. Lab. Code § 203 fails to consider that such a defense must be established "beyond controversy." (See, Defendants' Answer, at ¶ 7.)  "Whether Defendants can establish that nonpayment of wages was the result of a good faith belief is a question of fact." *Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 8-9 (1981); *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1201 (2008).  The issue raises "a factual question that must be resolved at trial." *McInteer v. Ashley Distribution Servs., Ltd.*, EDCV 13-0268 JGB, 2014 WL 4105262, *20, 23 (C.D. Cal. Aug. 19, 2014).

*Third*, a "knowing and intentional" failure is defined by Cal. Lab. Code § 226(e)(3): "In reviewing for compliance with this section, the factfinder may

consider as a relevant factor whether the employer, prior to an alleged violation, has adopted and is in compliance with a set of policies, procedures, and practices that fully comply with this section." *Willner v. Manpower Inc.*, 11-CV-02846-JST, 2014 WL 1303495 (N.D. Cal. Mar. 31, 2014), explained the phrase means "a knowledge that the facts exist which bring the act or omission within the provisions of a statute."

Here, summary judgment should be denied, in part, as follows:

(1)  Defendants have cited <u>no</u> authority or facts to show a good faith dispute that Klune was exempt from overtime.  There is <u>no</u> authority that permits the repayment of minimum required hourly draws from future commissions, or at the end of employment.  Further, Klune's managers were aware that she was working hours that were <u>not</u> recorded on the store's time clock. (SGD 145, 151.)  Defendants also did <u>not</u> treat short clock out rest periods as "time worked".  (SGD 141).  See, e.g., *Eddings v. Health Net, Inc.*, CV 10-1744-JST RZX, 2012 WL 994617 (C.D. Cal. Mar. 23, 2012) (Summary judgment on § 203 denied where evidence "suggests that Defendant [through supervisors] knew that it was under compensating [employees] but nonetheless failed to pay those wages."); *Rideway v. Walmart*, 2014 WL 26000325 (N.D. Cal.) (Summary judgment on § 203 was denied where "express policies" was <u>not </u>to consider certain time as "compensable activities.")

(2) Klune claims owed commissions. (SGD 136-140.)  *Maez v. Chevron Texaco Corp.*, C 04-00790 JSW, 2005 WL 1656908 (N.D. Cal. July 13, 2005) (Summary judgment on § 203 denied; plaintiff claimed "he was paid only a portion of commissions owed to him.")

(3) Klune has presented evidence that Defendants' policies do <u>not</u> comply with the legal requirements for meal and rest breaks.  Defendants failed their "obligation to accurately record all hours worked, including those worked during a meal period" and failed to "properly report all such time on wage statements, as required by Labor Code § 226(a)."  (RFJN, Exh. A, DLSE Manual, at § 45.2.1.1.)  Defendants also did <u>not</u> treat short clock out rest periods as "time worked".  (SGD 141).

(4) Klune was <u>not</u> properly paid for reporting time at the regular rate of pay. (SGD 230-231.) *Provine v. Office Depot, Inc.*, C 11-00903 SI, 2012 WL 2711085 (N.D. Cal. July 6, 2012) (Summary judgment denied on § 203; defendant "failed to present evidence regarding reasonableness" of decision as to "regular rate of pay.")

(5) Defendants' policies, procedures, and practices clearly failed to comply with Cal. Lab. Code § 226.  (SGD 234-239.)

(6) Klune's wage statement claim is viable because it is <u>not</u> duplicative of the *Vaquero* class action.  (See, Defendant's MSJ Facts; *Vaquero*, No. 64-2, Fact 108).

## H.   <u>Summary Judgment Should Be Denied on Unfair Competition</u>

Defendants' Motion should be denied on Klune's 21st claim for unfair competition claims.  *First*, to the extent Klune's 21st Claim for Violation of Cal. Bus. & Prof. Code § 17200 is derivative of Klune's 13th to 19th Claims for relief, Summary Judgment should be denied for the reasons above.  Waiver is also <u>not</u> a complete defense to an unfair competition claim.  *Stuart*, 641 F. Supp. 2d 901.

*Second*, Klune's unfair competition claim is *not* solely derivative of the 13th to 19th claims, but rather alleges - and incorporates - other allegd unlawful conduct, including failing to (1) pay commissions on total delivered sales, but instead improperly shifting employer expenses of delivery of furniture to the sales associates (*Sciborski*, at 1171); (2) deducting more than advanced draws from future commissions (Cal. Lab. Code § 200 et seq.); (3) failing to properly pay for all earned "days" of personal leave and vacation (Lab. Code § 227.3); (4) failing to pay reporting time at the regular rate of pay (Wage Order 7-2001, § 5); and (5) not properly paying her for promised paid leave, instead charging Klune's vacation time. (Comp., ¶¶ 49, 76, 77, 100, 271-284.)  Plaintiff has viable claims, as follows:

(1) Deductions from commissions are <u>not</u> plainly ulawful when they shift the employer's cost of doing business expenses to the employee.  *Sciborski*, 205 Cal. App. 4th, 1171 (conditions for commission on sale cannot "serve as a basis to shift the employer's cost of doing business to the employee."); *Aguilar*, 2014 WL 4245988

(unlawful to deduct form commissions for "credit card fees" and "phone orders" because they "are all routine costs of doing business."). Here, Klune was to be paid commissions on "total delivered sales," but the employer deducted its cost of doing business by deducting "delivery charges". (SGD 138.)

(2) If an employer offers time off which is <u>not</u> contingent on the happening of a specific event (i.e., sickness, a holiday, bereavement, etc.), the time will be treated as vacation and subject to the provisions of Cal. Lab. Code § 227.3. Cf., *Karrer v. Best Buy Co.*, LA CV 11-07697 JAK, 2012 WL 1957586, *7-9 (C.D. Cal. May 24, 2012); DLSE Manual, at § 15.1.12. Here, Defendants' policy was that, after "an employee's 90 days of employment and on each year thereafter on their anniversary date, employee will be granted three (3) paid personal days." (SGD 236.) Klune was employed from August 2011 to May 2013 and earned six paid personal days at least 10 hrs/day. Payroll records shows Klune was only paid out for 24 hours of personal time during her employment, despite being entitled to 60 hours based on a "daily rate" calculation of a normal 10 hour shift. (See, RFJN, Exh. E, DLSE Opinion re: "daily wage rate" for Cal. Lab. Code § 203, and Cal. Lab. Code § 227.3 requires vacation paid at "final rate of pay."). Thus, Klune was <u>not</u> paid all her personal days. (SGD 239.)

(3) The Employee Handbook also provides employees receive "ten (10) days of vacation" and "will continue to receive ten (10) days of vacation on their anniversary date." Payroll records show Klune was paid out <u>only</u> a total of 137.63 hours of vacation over her employment of 1 year, 8 months, and 20 days (628 days). Thus, she earned a *pro rata* amount of .0273972 days of vacation per day (10 days per year divided by 365 days in a year). (RFJN, Exh. A, DLSE Manual at § 15.1.1). This would be 17.205441 days of vacation for the 628 days she worked, equating to 172.05441 <u>hours</u> of vacation due over her employment, but she was <u>only</u> paid for 137.63 hours of vacation. Cal. Lab. Code § 227.3. (SGD 234.)

(4) Klune was <u>not</u> paid for reporting time pay at the regular rate. Payroll and

punch records show, when Klune worked a fifth day during the week for a shift of less than half the normal shift, she was <u>not</u> paid for four hours at the regular rate of pay. (SGD 231.) "Each workday an employee is required to report for work and does report but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's *regular rate of pay*, which shall not be less than the minimum wage." Cal. Code Regs. tit. 8, § 11040, subd. 5(A). California adopts the definition of "regular rate of pay" that "...the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee..." *Huntington Mem'l Hosp. v. Superior Court*, 131 Cal. App. 4th 893, 903 (2005). The regular hourly rate of pay includes *commission* pay. *Huntington Mem'l Hosp.*, 131 Cal. App. 4th at 905. *Here*, for example, during the week of October 30, 2011, to November 5, 2011, Klune's time punch records show she worked a total of 46.22693 hours over five (5) days. On November 4, 2011, Klune worked for 4.074722 hours, or less than half of her normal shift. Klune's regular rate of pay of pay should be calculated by taking pay of $603.17 divided by 40 hours for $15.07925. (SGD 231.) (See, RFJN, Exh. A, DLSE Manual, at §49.1.4.) Thus, Klune was entitled to four (4) hours at her regular rate of pay. (SGD139.)

(5) Klune was placed on a paid leave "pending investigation" from November 17, 2012, to her return to work on January 16, 2013. (SGD 232-233.) Klune's pay records show she was <u>only</u> paid leave of $1,036.18 for the weeks ending November 24 and December 8, 2012. Klune was docked 32 hours' vacation time and paid $922.28 in vacation for the leave time for the weeks ending January 5, 2013, and January 12, 2013. Defendants have presented <u>no</u> evidence Klune was notified or agreed to her vacation being used. At termination, Klune was <u>not</u> paid all vacation earned and accrued in violation of Cal. Lab. Code § 227.3. (SGD 233, 235, 239.)

PLAINTIFF KLUNE'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

## I.     <u>Summary Judgment Should Be Denied on Klune's PAGA Claim</u>

Klune has viable claims under PAGA. *First*, the vast majority of courts have held that PAGA claims do <u>not</u> require class certification under Rule 23. *Plaisted v. Dress Barn, Inc.*, 2:12-CV-01679-ODW, 2012 WL 4356158 (C.D. Cal. Sept. 20, 2012) ("This Court adheres to the majority position allowing representative PAGA claims to proceed without class certification under Rule 23."); *Alcantar v. Hobart Serv.*, ED CV 11-1600 PSG, 2013 WL 146323 (C.D. Cal. Jan. 14, 2013)(Because "PAGA is a law-enforcement mechanism . . . the Rule 23 requirements do not apply.").

*Second*, Defendants' common policies, and timekeeping and payroll data, demonstrate there are other similarly situated "aggrieved employees": (1) discovery responses assert the policies were applicable to all sales associates; (2) for overtime timekeeping and pay data show salesperson draw weeks, unpaid daily and weekly overtime, repayment of draws in future workweeks and unpaid hours worked for short rest breaks; (3) pay detail records and commission statements show sales persons were <u>not</u> paid all commission wages owed due to shifting costs of doing business to sales associates; (4) timekeeping and pay data also show short unpaid rest breaks; (5) policies establish employees were not free to leave premises during meal breaks; (6) the prospective meal period waivers are unenforceable, and do not fully describe the rights being waived; (7) time and pay records show when employees worked a fifth day during the week for a shift of less than half the normal shift and were not paid for four hours at the regular rate of pay; and (8) pay detail records from start of employment to separation (yet to be produced), would show former salespersons who were <u>not</u> properly paid all accrued vacation and/or personal.

*Third*, a PAGA representative plaintiff need not "specify each particular act or omission" in order to preserve a PAGA claim. "The case law does not support Defendants' stringent interpretation of the PAGA notice requirements." *Jasper v. C.R. England, Inc.*, CV 08-5266-GW CWX, 2012 WL 7051321, *16 (C.D. Cal. Aug.

PLAINTIFF KLUNE'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

30, 2012). Instead, an aggrieved employee need only state *some* factual support. *Gonzalez v. Millard Mall Servs., Inc.*, 09CV2076-AJB WVG, 2012 WL 3629056, *5-6 (S.D. Cal. Aug. 21, 2012); *Cardenas v. McLane FoodServices, Inc.*, 796 F. Supp. 2d 1246, 1260 (C.D. Cal. 2011); *Moua v. Int'l Bus. Machines Corp.*, 5:10-CV-01070 EJD, 2012 WL 5373401, *6-7 (N.D. Cal. Oct. 30, 2012); *Archila v. KFC U.S. Properties, Inc.*, 420 F. App'x 667 (9th Cir. 2011). Cf., *Stockett v. Ass'n of California Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 447 (2004) (for exhaustion claim "need not specify each particular act or omission later proven" and "need not contain the detail and specificity required of a pleading.") *Here*, Klune's PAGA letter plainly provides facts supporting alleged overtime, meal and rest break violations, and other claims. (Lidman Decl., Exh. D, at pp. 189-190, and 191 of 295.) The letter separately identifies the alleged staturoy violations. (*Id.*, at 190-191.) Thus, Klune's PAGA letter was sufficient for exhaustion.

**J.    Summary Judgment Should Be Denied as to Defendant *Ashley***

Wage Order 7-2001, § 2(F) provides: "'Employer' means any person defined in Section 18 of the Labor Code, who directly or indirectly controls, or through an agent or other person, employs or exercises control over the wages, hours or working conditions of any person." Klune signed multiple documents reflect Ashley's control over employment. (SGD, at 106, 107, 109-117.) Ashley's "payroll administrator" oversaw and communted with stores about sales associate hours and meal period clocking. (SGD 6.) Ashley had direct or indirect control. (SGD 1-2, 118.)

**V.    CONCLUSION**

For the reasons above, Defendants' Motion should be denied.

Dated: February 23, 2015          BLADY WEINREB LAW GROUP, LLP
                                  By: _____
                                      I. BENJAMIN BLADY, ESQ.
                                      Attorneys for Plaintiff, BOZENA KLUNE